UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:17-cr-00183-TWP-TAB |
| | ) |
| BUSTER HERNANDEZ, | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S NOTICE OF INTENT TO USE UNCHARGED CONDUCT EVIDENCE AS DIRECT EVIDENCE AND EVIDENCE ADMISSIBLE UNDER F.R.E. 414 AND 404**

The United States of America, by counsel, Josh J. Minkler, United States Attorney for the Southern District of Indiana, Tiffany J. Preston and Kristina Korobov, Assistant United States Attorneys, hereby files its notice of intent to introduce evidence of uncharged conduct as direct evidence and as evidence admissible pursuant to Federal Rules of Evidence 414 and 404(b).

**I.    Evidence of the extortion, coercion, and exploitation of uncharged persons is direct evidence of the crimes charged, and it is also is admissible pursuant to F.R.E. 414 and 404(b).**

In the instant case, the Government charged that the Defendant exploited, extorted and coerced seven female victims within the Southern District of Indiana.  In addition to those victims, as part of the Defendant's criminal conduct, Buster Hernandez also exploited Victim 2 (Venue:  Eastern District of Michigan and Eastern District of California) and another female identified herein as Victim 11 (Venue:  Florida and Eastern District of California).  Additionally the Defendant exploited, extorted, and coerced hundreds of victims in multiple jurisdictions

within the United States and in at least one foreign country. All of this conduct is part and parcel of the charged conduct and is direct evidence in the Government's case-in-chief. In addition to being direct evidence, the evidence is also admissible under Federal Rules 414 and 404(b).

The Defendant is charged with multiple counts of the sexual exploitation of a child, coercion and enticement, distribution and receipt of child pornography, and different charges alleging threatening communications. The Government has alleged that over a period of years, the Defendant reached out to multiple persons using social media and convinced them that he possessed sexually explicit photos of them. He then coerced the charged victims and other females into producing sexually explicit videos and images, threatening to disseminate the photos and videos that he claimed to already possess. The Defendant then coerced females to engage in various forms of sexually explicit conduct and to send him the videos of this conduct. The Defendant provided extremely explicit and detailed instructions as to exactly what he wanted from his victims. Hernandez would give the victim a time limit in which the victim had to comply with his orders or else the victim would face specific consequences. The Defendant often referred to the victims as "slaves" and his used other derogatory language when communicating with the victims. The period of victimization of each of the victims was lengthy.

### *Proffered Evidence*

A. <u>Victim 2 Proffer</u>: The conduct involving Victim 2 is referenced in part in the Superseding Indictment. The Government will elicit testimony from Victim 2 and her mother regarding the following matters:

1. Between in or about 2012 and on or about August 3, 2017, Victim 2 was a minor who resided in Michigan. Beginning sometime in 2012, and continuing until August 3, 2017, Hernandez, using the means and methods described in the Superseding

Indictment (Dkt. 57), coerced Victim 2 to produce and distribute images and videos depicting Victim 2 engaging in sexually explicit conduct. Hernandez continued to sexually extort Victim 2 after she turned 18 in 2015.

2.  Hernandez first contacted Victim 2 via the Internet after searching for publically available information regarding Victim 2, and falsely claimed to already possess sexually explicit images of Victim 2.  Hernandez then threatened to post the sexually explicit images of Victim 2 on the Internet if Victim 2 refused to produce additional child pornography of Victim 2 and distribute it to Hernandez.

3.  For nearly 5 years, Hernandez sexually extorted Victim 2.  Throughout that time period, Hernandez threatened to post Victim 2's child pornography or to murder, rape, or injure Victim 2 and her family if Victim 2 either refused or expressed reluctance or hesitation to comply with his demands.

4.  Between in or about 2012 and on or about August 3, 2017, Hernandez distributed images and videos of other minor victims to Victim 2, and agents of the Federal Bureau of Investigation acting in an undercover capacity as Victim 2, to coerce Victim 2 to produce child pornography of Victim 2.  Hernandez also sent the following messages to Victim 2:

> I know where you live.  I come at night.
> I come at night for all of my slaves eventually
> Have I ever made u cry?

5.  Hernandez then sent Victim 2 images depicting several unknown victims, who appeared to be minors engaging in sexually explicit conduct as they cried. Hernandez messaged Victim 2 saying, "I make girls cry."  Hernandez then distributed a

sexually explicit image constituting child pornography of an unidentified victim, who is a minor, crying as she took a sexually explicit "selfie" in the mirror.  Victim 2 said, "stop I don't wanna see that," but Hernandez continued sending additional images depicting other minor victims nude or partially nude who were crying and said, "look at this one. She had a nervous breakdown knowing I would tell mommy and daddy."

6. In or about January of 2017, Hernandez began threatening Victim 2's family, including her mother, father, sisters and brother.  The Defendant also threatened to bomb Victim 2 and her siblings' schools. To emphasize the seriousness of his message, the Defendant admitted to Victim 2 that he was "Brian Kil" and he sent Victim 2 a hyperlink to a news story about the Plainfield bombing threats case.

7. On or about June 9, 2017, law enforcement interviewed Victim 2. Hernandez was still extorting Victim 2, and had been instructing Victim 2 to upload images and videos to a Dropbox.com account known to investigators.  The Dropbox.com account was not publicly accessible.

8. On or about June 9, 2017, with the consent of Victim 2, law enforcement began communicating with Hernandez as Victim 2 in an undercover capacity.  During law enforcement's undercover communications with Hernandez, and under the lawful authority given to them by the Court's order, the FBI uploaded a small piece of code to a video file produced by Victim 2, which did not contain any visual depictions of any minor engaged in sexually explicit activity.  As authorized, the FBI then uploaded the video file containing the code to the Dropbox.com account known only to Hernandez and Victim 2.  When Hernandez viewed the video containing the code on a computer, the code disclosed the true IP address associated with the computer used by Hernandez.

After receiving the video, and in retaliation for not sending Hernandez the desired sexually explicit images, Hernandez began sending messages to the family of Victim 2 stating that Hernandez was going to murder and rape them.

9. The Government alleges that the Defendant communicated with Minor Victim 2 using an email address jare9302@hushmail.com. The Defendant also used the Instagram handle "leaked_hacks1" to follow Victim 2 on Instagram.

B. <u>Victim 11 Proffer:</u>  On or between September of 2013 and August of 2017, the Government alleges that the Defendant communicated with Victim 11 using the Internet. Victim 11 was approximately 14 years old when the communication began and she lived in Florida. During these communications, the Defendant engaged in the same type of communication that he had with the victims charged in the Superseding Indictment.

1. The Defendant did sexually exploit Victim 11 (18 U.S.C. § 2251(a)) and he engaged in conduct with her that would constitute violations of Coercion / Enticement (18 U.S.C. § 2422(b)). Hernandez received sexually explicit images of her.

2. To communicate with Victim 11, Hernandez used the email address jare9302@hushmail.com (among others), which is the same email address that Hernandez used to communicate with Victim 2. Hernandez also used the "lacked_hacks1" Instagram account to follow Victim 11 on that platform. Hernandez used the same account to follow Victim 2 and Victim 3 on Instagram.

3. Hernandez also made a number of admissions about himself and his criminal tradecraft to Victim 11 during the course of his communications with her, which the Government believes show that Hernandez is jare9302@hushmail.com and "leaked_hacks1."

5

    C.    <u>Proffer Regarding Threats and Coercion / Enticement of Other Minor Females:</u>

As alleged in the Superseding Indictment (paragraphs 22-24), the Defendant is accused of having extorted hundreds of adult and minor victims throughout the United States and at least one foreign country. The Government alleges that the Defendant did this in order to coerce his victims to produce sexually explicit images and videos. This activity by the Defendant was discovered by reviewing the social media records of accounts that have been linked to known minor victims, as well as investigative leads received from other agencies. This conduct occurred during the same time period as the victimization of Victims 1, 2, 3, 4, 5, 6, 7 and 11.

## Law and Argument

.    The evidence of the exploitation, coercion / enticement, and extortion is direct evidence of the crimes charged and therefore admissible without resort to Fed R. Crim. P. 414 or 404(b). most specifically, the evidence of the victimization of Victim 2 and her family is direct evidence of the charged offenses. In the alternative, the evidence is allowed under Rule 414 as it is relevant and not more prejudicial than probative. Finally the proffered evidence is not offered for propensity purposes, but rather to show the identity of the person who created the charged images.

    A.    <u>The proffered evidence is direct evidence of a matter the Government must prove.</u>

Rule 402 of the Federal Rules of Evidence states that "all relevant evidence is admissible." Fed. R. Evid. 402. Evidence is relevant if it has the "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Fed. R. Evid. 401. Relevant evidence should be admitted unless its "probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. Foundation or contextual evidence may be admissible as relevant evidence, and not "other acts" evidence under Rule

6

404(b) when it constitutes direct evidence of the crimes charged.  *See United States v. Vargas*, 689 F.3d 867, 874 (7th Cir. 2012).  Evidence is direct when it "tend[s] to prove the elements of the offense . . . actually charged."  *Id*; *see, e.g.*, *United States v. Miller*, 673 F.3d 688 (7th Cir. 2012) (holding that evidence of defendant's prior possession of a gun was admissible as direct evidence that the defendant possessed the same gun on the date charged); *United States v. McKibbins*, 656 F.3d 707 (7th Cir. 2011) (determining that it was not an abuse of discretion for the district court to admit child pornography and profile pictures as direct evidence of an obstruction charge).

The proffered evidence is proof that the Defendant is the person who committed these offenses. In addition to the other elements of each offense charged, the Government must prove that it is Buster Hernandez who committed the charged offenses.  Because the Defendant's conduct with these uncharged victims is part and parcel of the criminal conduct that is charged, it cannot truly be separated.  As the Superseding Indictment alleges, the Defendant's conduct was patterned and continuous.  The Defendant bragged to his victims that he had done "this" to others and had not been caught.

1. <u>The Defendant's communication with Victim 2 is direct evidence of the charged conduct – that is, proof that the person who committed the crimes is Buster Hernandez.</u>

- The Defendant admitted to Victim 2 that he was "Brian Kil."
- The Defendant's communications with Victim 2 continued up until the time that the Defendant was arrested.

- It was the Defendant's communication with Victim 2 that led to his identification when the Defendant opened a communication from Victim 2, allowing the Defendant's IP Address to be revealed to police through the use of the NIT.
- Even after the NIT had revealed the IP Address for the threatening communications with Victim 2, the Defendant continued to communicate with Victim 2.

  2. <u>The Defendant's communications with Victim 11 are proof of the charged conduct - that is, proof that the person who committed the crimes is Buster Hernandez.</u>

- The Defendant communicated with Victim 11 using the same email address that he used to communicate with Victim 2.
- The Defendant made substantial admissions to Victim 11 regarding his identity, such as living in California, living with a long-term girlfriend, and using untraceable forms of technology to communicate. These facts link Buster Hernandez to the victimization of other charged and uncharged victims.
- The Defendant communicated with Victim 11 even after the NIT had detected his IP Address. The Defendant had incessantly harassed, threatened, extorted, and exploited Victim 11 for years. Even after the Defendant was arrested, Victim 11 sent *unanswered* messages to the Defendant, believing that his absence of communication with her meant that he had done something with her images. The fact that all communication with Victim 11 stopped when the Defendant was arrested is proof that the Defendant is the person who committed the offenses in question.

  3. <u>The Defendant's extortionate communications with hundreds of uncharged victims is proof that the Defendant is the person who committed the</u>

<u>offenses in question.</u>  The exact script that the Defendant used to initiate communications with these uncharged victims is the same method he used to reach out to the charged victims.  The Defendant used the same threats, and requested the same type of images, demanded compliance in the same ways, and used the same untraceable accounts to extort these individuals.  The communications to all of these uncharged victims initiated from the accounts that the Government has linked to the Defendant from all of these accounts stopped when the Defendant was arrested.

B.      <u>The proffered evidence is also admissible pursuant to F.R.E. 414.</u>  The evidence of the Defendant's victimization of the uncharged victims is admissible not only as direct evidence of the offenses in the Superseding Indictment, but also as evidence admissible pursuant to F.R.E. 414.  The Rule governs the admission of evidence of similar crimes in child molestation cases, and reads in pertinent part:

> In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.

Fed. R. Evid. 414.  Thus, in order to be admissible pursuant to Rule 414, the defendant must be accused of child molestation, *and* the evidence offered must be evidence that defendant committed a prior or different offense of child molestation.  An "offense of child molestation" is defined, in pertinent part as, *inter alia*, as a crime under federal or state law that involved conduct proscribed by Chapter 110 of Title 18 the U.S. Code.  *Id.*  Child pornography and child sexual exploitation offenses clearly fall within this definition, as they are part of Chapter 110.  *See* 18 U.S.C. §§ 2251(a), 2252(a)(1), 2252(a)(4)(B), and 2260A.  Attempts are also included.  Fed. R. Evid. 414(d)(2)(f).

9

In admitting evidence under Rule 414, the Court must conduct a two-part analysis: "First, it must decide whether the evidence falls under that rule. Then it must turn to Rule 403 and 'assess the risk of unfair prejudice' the evidence poses." *United States v. Resnick,* 823 F.3d 888, 894–95 (7th Cir. 2016). The proffered evidence falls within this category. The Defendant is accused of a covered offense and evidence of the commission of other covered offenses *is admissible*. It may be considered for its bearing on any matter for which it is relevant. In this case, that matter is identity of the person who committed the offenses.

Rule 403 requires the exclusion of relevant evidence when its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury . . . ." Fed. R. Evid. 403. "Unfair prejudice ... means an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." Advisory Committee's Notes on Fed. R. Evid. 403, *cited approvingly in Old Chief v. United States*, 519 U.S. 172, 184−85 (1997). Rule 414 constitutes an exception to the rule that evidence of prior bad acts is inadmissible to show a defendant's propensity to commit the offense charged. *See United States v. Rogers*, 587 F.3d 816, 822-23 (7th Cir. 2009) (discussing analogous Rule 413). Rules 413 and 414 effectively override the propensity bar in rule 404(a)(1) in sexual assault cases. *United States v. Stokes*, 726 F.3d 880,896 (7th Cir. 2013).

The evidence of exploitation and extortion of the uncharged victims by the Defendant proves the identity of the offender. The Government always must prove who committed the charged crime. The signature language used by the Defendant in his communication, the type of threats made, the communication platforms used, the technology involved in the communication – it is all proof of identity. The similarity of offenses and time period of the uncharged conduct is a consideration for the Court in determining the admissibility of the evidence under Rule 414.

The Sixth Circuit recently addressed F.R.E. 414 admissibility, holding that the admission of such evidence is proper when the "other acts" testimony related to uncharged conduct that occurred in the same time frame as the charged conduct and related to abuse of the charged victims' sibling. *United States v. Cox*, 871 F. 3d 479, 486 (6th Cir. 2017). In the instant case, the uncharged conduct attributable to the Defendant occurred during the same time period as the charged conduct and is substantially similar to the charged conduct. Additionally, the uncharged conduct all ended on the date of the Defendant's arrest. In this case, the Defendant's conduct has so many unique features that he replicated across the span of the individuals he victimized that his behaviors became a signature. The 7th Circuit has specifically held that "'a history of similar acts tends to be exceptionally probative because it shows an unusual disposition of the defendant ... that simply does not exist in ordinary people." *United States v. Hawpetoss,* 478 F.3d 820, 824 n. 7 (7th Cir.2007)." *Resnick at* 895. This rationale for admitting FRE 414 evidence is especially applicable to the Hernandez facts, where the Defendant's behaviors can certainly be characterized as "an unusual disposition . . . that simply does not exist in ordinary people."

The only other analysis is whether the probative value of the proffered evidence – the exploitation and extortion of the uncharged victims – is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Here, there is no danger of unfair prejudice, in part because the evidence shows *the sameness* of the Defendant's communications. The proffered evidence is not unfairly shocking or emotional – particularly in light of the other evidence of the charged allegations which the jury will see in this case. *United States v. Russell,* 662 F.3d 831, 847–48 (7th Cir.2011) (prior instances of inappropriate touching, by establishing defendant's sexual interest in his minor daughter, were probative of his motive to induce his daughter to

11

create sexually explicit photographs in violation of section 2251(a)); *United States v. Hawpetoss*, 478 F.3d 82, 824-827 (7th Cir. 2007)(admitting evidence under rule 403 of molestation of two uncharged minor victims); *United States v. Roux*, 715 F.3d 1019, 1024 (7th Cir. 2013). The proffered evidence simply helps to prove identity. As a result, the evidence is admissible pursuant to Fed. Rule Evid. 414.

    ***C.***    <u>*The Proffered evidence is also admissible pursuant to F.R.E. 404(b).*</u>  If this Court were to find that this evidence is subject to Fed. R. Crim. P. 404(b), there are multiple non-propensity uses for the evidence. In *United States v. Gomez*, the Seventh Circuit adopted "a more straightforward rules-based approach," which is summarized as follows:

> [T]o overcome an opponent's objection to the introduction of other-act evidence, the proponent of the evidence must first establish that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way. *See* Fed.R.Evid. 401, 402, 404(b). Other-act evidence need not be excluded whenever a propensity inference can be drawn. But its relevance to "another purpose" must be established through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case. If the proponent can make this initial showing, the district court must in every case assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice and may exclude the evidence under Rule 403 if the risk is too great. The court's Rule 403 balancing should take account of the extent to which the non-propensity fact for which the evidence is offered actually is at issue in the case.

*Gomez,* 763 F.3d 845, 853, 860 (7th Cir. 2014).

### *Identity/ Modus Operandi*

The Government proffers that the evidence is admissible to prove identity and *modus operandi*. The Government always must prove who it was that committed the charged crime.

12

The Seventh Circuit has held that "In evaluating the probative value of modus operandi evidence, we focus on the commonalities between the charged crime and the other act—not on their differences. *United States v. Vaughn,* 267 F.3d 653, 659 (7th Cir.2001)." *United States v. Price,* 516 F.3d 597, 604 (7th Cir. 2008).

In this case, the commonalities between the charged conduct and the uncharged conduct are substantial, as is alleged directly in the Superseding Indictment in paragraphs 22-24. The proffered evidence regarding the victimization of uncharged individuals proves that the person who was identified by the NIT sent through Victim 2's account is the same person who victimized the other charged persons. It is the Defendant's signature language, methods of coercion, demand for specific images, incessant volume of communications, and threats to harm others that constitute a *modus operandi*. The Government's position is that the uniqueness of the Defendant's communications with his victims is his signature. The fact that the person identified through the NIT – Buster Hernandez – communicated in the same ways with Victims 1, 3, 4, 5, 6, and 7 – as well as Victim 11 and the other uncharged victims is proof that the person who extorted Victim 2 also committed the charged offenses. The fact that the extortionate communications with *all* of the known accounts ceased when Buster Hernandez was arrested is proof of identity. The fact that jare9302@gmail.com sent identifying details about himself to Victim 11 is proof that the person who was communicating with Victim 11 is Buster Hernandez. The fact that the Defendant communicated with Victim 11 in the same ways that he communicated with Victim 2 is proof of identity. Further, that chain of reasoning does not contain a prohibited hidden propensity reason. The Government does not allege that the defendant is a bad person and because he is a bad person, he must be the person who committed the acts of extortion. The Government instead contends that Buster Hernandez – the person

identified with the NIT - is the same person who coerced, extorted, and exploited the charged victims and the uncharged victims.  Finally, Federal Rule 403 does not preclude the admissions for the same reasons that the evidence is not barred under F.R.E. 414. Therefore the evidence is admissible to prove identity and the Defendant's *modus operandi*.

      WHEREFORE the Government requests this Court issue a ruling that the evidence from the uncharged victims (provided by the witnesses themselves and through Special Agent Willmann) is admissible in the Government's case-in-chief.

      Respectfully submitted,

      JOSH J. MINKLER
      United States Attorney

By:   *s/ Tiffany J. Preston*
      Tiffany J. Preston
      Assistant United States Attorney

      *s/ Kristina M. Korobov*
      Kristina M. Korobov
      Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 7, 2020, a copy of the foregoing Government's Notice of Intent to Use Evidence under F.R.E. 414 and 404 was filed electronically.  Notice of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Date: <u>January 7, 2020</u>

Respectfully submitted,

JOSH J. MINKLER
United States Attorney

By: <u>*s/ Tiffany J. Preston*</u>
Tiffany J. Preston
Assistant United States Attorney
10 West Market Street, Suite 2100
Indianapolis, IN  46204-3048
Telephone:  317-226-6333
Fax:  317-229-6125
Email:  tiffany.preston@usdoj.gov