UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) Cause No. 1:17-cr-183-TWP-TAB |
| | ) |
| BUSTER HERNANDEZ, | ) |
| | ) |
| *Defendant*. | ) |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S SECOND MOTION *IN LIMINE* (Dkt. 82)

The United States, by counsel, Josh J. Minkler, United States Attorney for the Southern District of Indiana, and Tiffany J. Preston and Kristina M. Korobov, Assistant United States Attorneys, hereby responds to the Defendant's Second Motion *in Limine* (Dkt. 82):

1.      Defendant's Tattoo:   The Defendant, while incarcerated, got a tattoo on his neck. It is pictured below.   The defense is moving to exclude it on the basis that it is "irrelevant to the charges set forth in the Superseding Indictment." Dkt. 82, p. 1.



The Defendant told one of the Government's witnesses that he got the tattoo as a way to taunt law enforcement, and that the defendant intentionally used the letters "B" and "K" for "Brian Kil." Accordingly, the probative value of this evidence is that the tattoo is an homage to the defendant's moniker "Brian Kil" based on the appearance of the tattoo.

Proving that the defendant is "Brian Kil" is central to the Government's case as most of the counts in the Superseding Indictment require it to prove that the defendant is "Brian Kil." As set forth in the Superseding Indictment, the person identifying himself as "Brian Kil," sextorted Victim 1, Victim 2, and Victim 3, admitted to those Victims that he was "Brian Kil," and used that moniker when he threatened to use explosive devices on four locations (Counts 18-21), and threatened to kill, kidnap, and injure numerous victims identified in the Superseding Indictment.

Finally, the Government will introduce evidence through Facebook and other social media postings that the perpetrator of the charged offenses routinely taunted law enforcement officers who were investigating him. Those taunts were part of his criminal tradecraft. Indeed, and as set forth in Paragraph 37 of the Superseding Indictment:

37. "First responders arrived at the Shops of Perry Crossing and Walmart and evacuated the buildings, including the movie theater. Subsequently, HERNANDEZ used Facebook to post the following:



38. HERNANDEZ then posted a video of Victim 1 engaging in sexually explicit conduct that he obtained from Victim 1 via sextortion. HERNANDEZ commented on the video as follows: "I want a new rifle so I can catch (Victim 1) at Plainfield high School –brian."

The probative value is as high as it is apparent, and there is no danger of unfair prejudice. The evidence should be admitted.

2. The Defendant objects to the presentation of certain evidence from witness J.E. The Government does not intend to introduce evidence through J.E. about defendant's prior counsel, plea negotiations, or the potential penalties in this case (with the caveat that Defendant could open the door to such evidence if he testifies). The Government does intend to introduce evidence that the Defendant admitted to J.E. that he had blackmailed, extorted or threatened orders." (Dkt. 82, p. 2). This evidence is being offered to prove the conduct in question and is

3

consistent with the statements that the Defendant made to the charged victims.  Indeed, it is the exact nature of the charged conduct, and is, in essence, an admission of the charged offenses.  The probative value of the evidence – that the Defendant is "Brian Kil" who exploited, coerced, and extorted victims – both charged and uncharged – is not substantially outweighed by the danger of unfair prejudice.

    3.    The Defendant objects to the presentation of certain evidence from witness T.C.

    A.    The Government does not intend to present evidence that the Defendant was abusive or neglectful towards his girlfriend's grandmother or towards animals; however, the Government does intend to introduce evidence that the Defendant told T.C. that his computer activity interfered with other of the Defendant's responsibilities.  This evidence is probative of the amount of time that the Defendant was spending online, engaged in extortionate behavior.  The evidence obtained by the Government during the time period of the Pen Register Trap and Trace and the Title III Wiretap of the Defendant's Internet Protocol Address will show that the Defendant was online and using Tor to anonymize his activity day after day, and for sometimes 16 hours a day.  Additionally, most of the charged victims, as well as Victims 2 and 11, will testify that the Defendant's communication with them was often unrelenting and incessant.  This evidence is probative of the identity of the perpetrator and of the Defendant's opportunity to commit the charged offenses.  There is no danger of unfair prejudice.

    B.    The Government objects to the Defendant request to preclude testimony that the Defendant told T.C. that he had victims in Maine, Florida, and West Virginia.  This evidence is probative of the identity of the perpetrator in that the perpetrator indeed had victims in Maine, Florida, and West Virginia (some of which had not been made public),

and the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

      C.      The Government also intends to introduce evidence that the Defendant told T.C. that the Government had missed multiple electronic devices that belonged to him at his parents' home.  Defendant objects.  This evidence is relevant to T.C.'s credibility, which certainly the defense will challenge.  After T.C. told the Government about the missing electronics, the Court authorized a federal search warrant to obtain the missing devices from the Defendant's family's home in California.  Agents executed the search warrant and recovered devices that had been located at the Defendant's residence on August 3, 2017.  The evidence corroborates T.C.'s testimony as reliable.

      D.      The Government does not intend to present evidence about the Defendant's father manufacturing or storing methamphetamine.

      E.      The Government intends to admit testimony from T.C. that the Defendant said that he had evidence of his victimization of thousands of other victims.  As set forth in other responses, the perpetrator of this crime often bragged to the victims in the charged offenses that he had numerous or hundreds of "slaves" that he was sextorting.  This evidence connects the defendant to the charged offenses, and the victims in the charged offenses, and is probative of identity.

      F.      The Government intends to present evidence of the Defendant's tattoo and of his statements to T.C. that he chose the tattoo to taunt law enforcement for the same reasons set forth in Paragraph 1 above.

      G.      The Government has no objection to the Defendant's request that we not present testimony that the Defendant physically assaulted another inmate or that the

Defendant engaged in sexual activity (i.e. traded cupcakes for sexual intercourse) while in prison.

As to evidence that the Defendant had a fetish for transgendered individuals, this evidence would only become relevant as to the issue of the Defendant's searches on Tor.

    i.    During the time that the FBI was monitoring internet activity at the Defendant's residence, the FBI learned through the TIII wiretap that the Defendant was searching for pornography involving transsexual individuals.

    ii.    After the Government seized and searched the Defendant's cellular phone, investigators found pornographic images of transsexual persons that were the same or similar to those in the TIII evidence.   This evidence is proof that it was the Defendant who was using the IP address connected to his home during the same time period he was sextorting some of the victims in the charged offenses and that the NIT identified him, and thus, that he is the individual who committed the charged offenses.

iii. If the Defendant were to claim that he was not the person using Tor during the time that the FBI was monitoring his activity, the Government would offer the statements to show that the Defendant's professed interests are the same as his internet searching.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney

By:   s/ *Tiffany J. Preston*
Tiffany J. Preston
Assistant United States Attorney
Office of the United States Attorney
10 W. Market St., Suite 2100
Indianapolis, Indiana 46204-3048
Telephone: (317) 226-6333

CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2020, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system.   Parties may access this filing through the court's system.

                              s/ *Tiffany J. Preston*
                                Tiffany J. Preston
Assistant United States Attorney
Office of the United States Attorney
10 W. Market St., Suite 2100
Indianapolis, Indiana 46204-3048
Telephone: (317) 226-6333