# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BUSTER HERNANDEZ ) <br>  a/k/a BRIAN KIL ) <br>  a/k/a BRIANNA KILLIAN ) <br>  a/k/a BRIAN MIL ) <br>  a/k/a GREG MARTAIN ) <br>  a/k/a PURGE OF MAINE ) <br>  a/k/a UYGT9@HUSHMAIL.COM ) <br>  a/k/a JARE9302@HUSHMAIL.COM ) <br>  a/k/a DTVX1@HUSHMAIL.COM ) <br>  a/k/a LEAKED_HACKS1 ) <br>  a/k/a CLOSED DOOR ) <br>  a/k/a CLOSED COLOR ) <br>  a/k/a CLUTTER REMOVED ) <br>  a/k/a COLOR RAIN ) <br>  a/k/a PLOT DRAW ) <br>  a/k/a INVIL CABLE, ) <br> ) <br> Defendant. ) | Case No. 1:17-cr-00183-TWP-TAB |

## ENTRY ON MOTIONS IN *LIMINE*

This matter is before the Court on Plaintiff United States of America's ("the Government") Motions in *Limine* (Filing No. 70; Filing No. 71) as well as Defendant Buster Hernandez's ("Hernandez") Motions in *Limine* (Filing No. 74; Filing No. 82). Hernandez is set to be tried by a jury on February 10, 2020, on eight counts of Sexual Exploitation of a Child, three counts of Coercion and Enticement of a Minor, six counts of Distributing and Receiving Child Pornography, four counts of Threats to Use Explosive Devices, one count of Threats and Extortion, ten counts of Threats to Kill, Kidnap, and Injure, six counts of Witness Tampering, one count of Obstruction of Justice, and two counts of Retaliating Against a Witness or Victim. The parties' Motions in

*Limine* seek a preliminary, initial ruling from the Court concerning the admissibility of various evidence and testimony. For the following reasons, the Government's Motions are **granted** and Hernandez's Motions are **granted in part and denied in part**.

## I. LEGAL STANDARD

"[J]udges have broad discretion in ruling on evidentiary questions during trial or before on motions in *limine*." *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The Court excludes evidence on a motion in *limine* only if the evidence clearly is not admissible for any purpose. *See Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Unless evidence meets this exacting standard, evidentiary rulings must be deferred until trial so questions of foundation, relevancy, and prejudice may be resolved in context. *Id.* at 1400–01. Moreover, denial of a motion in *limine* does not necessarily mean that all evidence contemplated by the motion is admissible; rather, it only means that, at the pretrial stage, the Court is unable to determine whether the evidence should be excluded. *Id.* at 1401.

## II. DISCUSSION

### A. Docket No. 70

In its first Motion in *Limine*, the Government asks the Court to order Hernandez to provide notice of his intent to present evidence of an alternate perpetrator or his intent to argue that a specific alternate perpetrator or perpetrators committed the offenses charged in the Superseding Indictment. The Government believes Hernandez will raise the defense of identity and argue the Government cannot prove that he is the person who committed the charged offenses.

The Government contends that, to suggest a specific person is responsible for the criminal conduct, a defendant must establish a nexus between the charged conduct and the person accused by the defendant. They cite to an unpublished opinion from the Fourth Circuit;

> When determining whether evidence of an alternative perpetrator should be admitted at trial, other Courts of Appeals have found that such evidence "is relevant, but there must be evidence that there is a connection between the other perpetrators and the crime, not mere speculation on the part of the defendant." *DiBenedetto v. Hall*, 272 F.3d 1, 8 (1st Cir. 2001). *See Wade v. Mantello*, 333 F.3d 51, 60 (2d Cir. 2003) (finding that third-party animus did not establish sufficient connection); *United States v. Jordan*, 485 F.3d 1214, 1219 (10th Cir. 2007) (holding there must be a nexus between crime charged and alleged alternative perpetrator). In each of these cases, the courts balanced two evidentiary values: the admission of relevant evidence probative of defendant's guilt or innocence with "the exclusion of prejudicial, misleading, and confusing evidence." *Jordan*, 485 F.3d at 1218.

*United States v. Hicks*, 307 F. App'x 758, 761 (4th Cir. 2009).

The Government further relies on a Tenth Circuit decision for the proposition that a defendant

> must show that his proffered evidence on the alleged alternative perpetrator is *sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the asserted "alternative perpetrator."* It is not sufficient for a defendant merely to offer up unsupported speculation that another person may have done the crime. Such speculative blaming intensifies the grave risk of jury confusion, and it invites the jury to render its findings based on emotion or prejudice.

*Jordan*, 485 F.3d at 1219 (emphasis in original).

The Government concedes that Hernandez is entitled to argue a specific alternative perpetrator, but contends that if he chooses to present such argument and evidence, he must first satisfy the nexus requirement. Thus, the Government argues Hernandez must provide early notice to it and the Court of his intent to present evidence of an alternate perpetrator.

Hernandez did not respond to the Government's Motion regarding the alternate perpetrator argument and presented no authority in opposition. The Court is persuaded that in order to establish innocence by showing that someone else did the crime, a defendant must provide sufficient evidence of the alternative perpetrator; speculative blaming is not enough. The Government's argument is well taken, and its Motion in *Limine,* Docket No. 70*,* is **granted**. If Hernandez intends

3

to present argument or evidence concerning an alternate perpetrator, he must provide Notice of the evidence that will show a nexus between the crimes charged and the asserted alternative perpetrator by no later than **January 28, 2020**.

### B. Docket No. 71

In its second Motion in *Limine*, the Government provides notice of its intent to use uncharged conduct as direct evidence and as evidence admissible under Federal Rules of Evidence 414 and 404(b) to show identity. Federal Rule of Evidence 404(b)(1) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." F.R.E. 404(b)(1). Rule 404(b)(2) allows such evidence when it is used for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. F.R.E. 404(b)(2). The Seventh Circuit has provided a four-part test to be used in 404(b) determinations. Courts are to consider whether: (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *See United States v. Howard,* 692 F.3d 697, 703 (7th Cir. 2012).

In Counts 1-11, Hernandez is charged with exploiting, extorting, and coercing seven female victims within the Southern District of Indiana. The Government alleges that Hernandez also exploited Victim 2 of Michigan and California and Victim 11 of Florida and California and exploited, extorted, and coerced hundreds of victims in multiple jurisdictions across the United

States and in at least one foreign country. The Government argues that all of this conduct is part and parcel of the charged conduct and is direct evidence in its case-in-chief.

In Counts 12-38, Hernandez is charged with multiple counts of sexual exploitation of a child, coercion and enticement, distribution and receipt of child pornography, and other charges alleging threatening communications. The Government alleges that, over a period of years, Hernandez contacted multiple people using social media and convinced them that he possessed sexually explicit photos of them. He then coerced the charged victims and other victims into producing sexually explicit videos and images by threatening to disseminate the photos and videos that he claimed to already possess. Hernandez also coerced females to engage in various forms of sexually explicit conduct and to send him the videos of this conduct. He gave explicit and detailed instructions as to exactly what he wanted from his victims. Hernandez would give the victims a time limit in which they had to comply with his orders or else the victim would face specific consequences. Hernandez often referred to the victims as "slaves" and used other derogatory language when communicating with the victims.

The Government proffers evidence from Victim 2 and her mother concerning Hernandez's means and methods of coercing Victim 2 to produce and distribute sexually explicit images and videos. He first contacted Victim 2 through the internet and claimed to have sexually explicit images of her. He threatened to post the images if she did not produce child pornography and send it to him. He threatened to murder, rape, and injure Victim 2 and her family if she did not comply with his demands. He also sent sexually explicit images and videos of other victims to Victim 2. Hernandez began threatening Victim 2's family and also threatened to bomb Victim 2's and her siblings' schools. Hernandez admitted to Victim 2 that he was "Brian Kil," and he sent Victim 2 a hyperlink to a news story about the Plainfield bombing threats case.

While Hernandez was still extorting Victim 2, law enforcement interviewed her and instructed her to upload images and videos to a Dropbox.com account known to investigators but not publicly accessible. Law enforcement began communicating with Hernandez as Victim 2 in an undercover capacity. They uploaded a small piece of code to a video file produced by Victim 2, which did not contain any visual depictions of any minor engaged in sexually explicit activity. They uploaded this video to the Dropbox.com account known only to Hernandez and Victim 2. When Hernandez viewed the video containing the code, the code disclosed the true IP address associated with the computer used by Hernandez. The Government further alleges that Hernandez communicated with Victim 2 using the email address "jare9302@hushmail.com" and used the Instagram handle "leaked_hacks1" to follow Victim 2 on Instagram.

The Government proffers evidence from Victim 11 concerning Hernandez's means and methods of coercing Victim 11 to produce and distribute sexually explicit images and videos, and those communications are the same type of communications that he used with the victims charged in the Superseding Indictment. Hernandez communicated with Victim 11 using the email address "jare9302@hushmail.com" and used the Instagram handle "leaked_hacks1" to follow Victim 11 on Instagram. This was the same account that Hernandez used to follow Victims 2 and 3. Hernandez also made a number of admissions about himself and his criminal tradecraft to Victim 11 during the course of his communications with her, which the Government contends show that Hernandez is the person who used "jare9302@hushmail.com" and "leaked_hacks1."

The Government additionally proffers evidence of Hernandez extorting hundreds of other adult and minor victims, which he did in order to coerce his victims to produce sexually explicit images and videos. His conduct occurred during the same time that he victimized Victims 1, 2, 3, 4, 5, 6, 7, and 11.

The Government argues that this evidence of exploitation, coercion, enticement, and extortion is direct evidence of the crimes charged in the Superseding Indictment, and thus, the evidence is admissible to prove that Hernandez is the person who committed the charged offenses. The Government asserts that Hernandez's conduct with the uncharged victims is "part and parcel" of the criminal conduct that is charged, and Hernandez's conduct was patterned and continuous, all during the same time period. They contend the evidence will show that Hernandez bragged to his victims that he had done "this" to other victims and had not been caught, and admitted to Victim 2 that he was "Brian Kil." The communications between Victim 2 and Hernandez revealed Hernandez's real IP address, and these communications continued until Hernandez was arrested. Hernandez used the same email address to communicate with Victim 11, and he admitted information about his identity to Victim 11 such as living in California, living with a long-term girlfriend, and using untraceable forms of technology to communicate. Each of these facts connect Hernandez to the victimization of other charged and uncharged victims. Hernandez communicated with Victim 11 for many years, but those communications stopped when Hernandez was arrested. Hernandez used the same script to initiate communications with and to continue threatening his numerous victims across the country. The online accounts the Government has associated with Hernandez have ceased communications after Hernandez was arrested. The Government argues that all of this evidence is direct, relevant evidence of Hernandez's identity as the perpetrator of the charged offenses. Thus, the Court should allow this evidence to be admitted during trial.

The Government additionally argues that evidence of Hernandez's victimization of uncharged victims is admissible under Rule 414, which states, "In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which

it is relevant." Rule 414(d) explains that a "child" is a person below the age of 14, and "child molestation" includes a crime involving any conduct prohibited by 18 U.S.C. chapter 110. The Government argues that child pornography and child sexual exploitation offenses clearly fall within this definition because they are part of Chapter 110. Hernandez is accused of a covered offense, and evidence of the commission of other covered offenses is admissible. Therefore, the Government asserts, it may be considered on any matter to which it is relevant—in this case, the identity of the person who committed the offenses. The uncharged conduct of Hernandez occurred during the same time period as the charged conduct, and all the conduct was substantially similar. The uncharged conduct and the charged conduct all ended when Hernandez was arrested. This all points to the identity of Hernandez. And the Government argues that the uncharged conduct presents no unfair prejudice because it will show the "sameness" of Hernandez's communications, and it is not unfairly shocking or emotional in light of all the other similar evidence that will be offered as to the charged offenses.

Finally, the Government argues the uncharged conduct is admissible under Rule 404(b) because it will not be offered as improper propensity evidence but rather to show identity and *modus operandi*. The Government asserts that the same method and manner of communications discussed in the Government's earlier arguments applies here and allows the evidence to be admitted under Rule 404(b) to prove identity.

Hernandez responds that any prior bad act that is not tied directly to an account or message sent or received by the Victims of each count in the Superseding Indictment, is inadmissible. (Filing No. 97-2). He contends that although the prior bad acts evidence in question could lean towards showing some identity, its probative value substantially outweighed by the danger of unfair prejudice that it poses. Additionally, in his first Motion in *Limine*, Hernandez asks the Court

to exclude all evidence of uncharged misconduct for which the Government has not provided notice of intent to use such evidence at trial and all evidence of uncharged misconduct not directly related to the crimes as charged in the Superseding Indictment, because that uncharged misconduct is irrelevant and unfairly prejudicial. *See* Filing No. 74.

At this pretrial stage, the Court cannot conclude that the evidence of uncharged conduct related to "Victim 2," "Victim 11," and "hundreds of victims in multiple jurisdictions across the United States and in at least one foreign country" is clearly not admissible for any purpose. *See Hawthorne Partners*, 831 F. Supp. at 1400. The Government has proffered evidence directed toward establishing identify, a matter in issue other than Hernandez propensity to commit the crime charged. The proffered evidence shows that the other acts are similar enough and close enough in time to be relevant to the matters in issue; the evidence is sufficient to support a jury finding that the defendant committed the similar act. The Government argues that considering the nature of other evidence that will be presented at trial, the probative value of the proffered evidence is not substantially outweighed by the danger of unfair prejudice. Hernandez points out that because this case deals with highly inflammatory and emotionally stirring allegations and evidence--the computer victimization of seven teen girls and their family members or acquaintances--introducing extrinsic evidence of other uncharged, prior bad acts allegedly committed by this Defendant presents a real possibility of unfair prejudice if presented evidence of *hundreds* of other uncharged victims. The Court agrees with Hernandez that the unbridled presentation of uncharged bad acts would be unduly prejudicial. Therefore, the Court will partially exclude this evidence in *limine*. The Government may present limited evidence of uncharged other bad act evidence to try and prove the identity. Moreover, some of the proffered evidence may also be admissible under Rule 414 if the Government can first establish that the victims were below the

age of 14. For these reasons, the Government's second Motion in *Limine,* Docket No. 71, is **granted in part and denied in part**. Because of the late filing of Hernandez motion in opposition, a ruling regarding the particular evidence to be excluded will be filed at a later date.[1]

### C. Docket No. 74

Hernandez asks the Court to exclude any evidence or testimony concerning his prior criminal history including charges, arrests, convictions, and any sentence, term, or status of probation or parole; all evidence of uncharged misconduct for which the Government has not provided notice of its intent to use such evidence at trial; all evidence of uncharged misconduct not directly related to the crimes as charged in the Superseding Indictment filed in this case; and all statements mentioning him where the maker of the statement will not be subject to cross-examination.

Hernandez explains that there are pending charges relating to allegations of sexual exploitation of a child and enticement, production of child pornography, and threats to injure persons filed via a criminal complaint against him on April 29, 2019, in the Eastern District of Michigan under case number 2:19-mj-30214. He acknowledges that if he testifies during the instant trial, the Government may present prior convictions (none are known at this time) under Rule 609 for impeachment purposes. Hernandez argues that any evidence or testimony of prior criminal history would be irrelevant and unfairly prejudicial.

The Government responded that it does not object to Hernandez's request that the Government abide by Rule 609 and it does not intend to mention or present evidence of the pending charges against Hernandez in the Eastern District of Michigan. However, as the Government argued in its second Motion in *Limine* (Filing No. 71), it does seek to present evidence of

---

[1] Hernandez's Response and Objection to Admission of Uncharged Conduct (Filing No. 71) was not filed until January 20, 2020, the Dr. Martin Luther King Jr. Holiday.

uncharged conduct to prove the identity of Hernandez as the perpetrator. With that understanding, the Court **grants** Hernandez's Motion in *limine* that the Government shall abide by Rule 609 and not mention or present evidence about the pending charges in the Eastern District of Michigan.

Next, Hernandez asks the Court to exclude evidence (1) that Hernandez used the internet to "sexually extort hundreds of adult and minor victims throughout the United States and at least one foreign Country," (2) that "hundreds of victims" have complied with Hernandez's demands and sent him images and videos depicting themselves engaging in sexually explicit conduct, (3) that Hernandez opened "hundreds" of email and social media accounts using numerous alleged aliases and used "multiple" email service providers located outside of the United States to evade detection, and (4) that Hernandez used multiple encrypted hard disc drives and created encrypted containers on external storage media in an effort to prevent law enforcement from accessing or discovering evidence of child pornography he had received through extortion. Hernandez argues that this evidence concerns uncharged misconduct that does not relate to the charged victims and charged conduct in the Superseding Indictment. As such, Hernandez argues, this evidence is irrelevant and is unfairly prejudicial.

As discussed above, the Government seeks to present evidence concerning "hundreds of adult and minor victims throughout the United States and at least one foreign Country" to show the identity of Hernandez and to show that the online accounts used to communicate with the victims were no longer used after Hernandez was arrested. The Government asserts that Hernandez himself made statements to the charged victims, Victim 2, and Victim 11 that he had "hundreds of slaves" and the ways that he exposed his "slaves" who did not comply with his demands as a means to coerce them. Additionally, because this case charges sexual exploitation of a child and coercion and enticement, the Government asserts that it is required to produce evidence of Hernandez's

11

threats and the victims' responses. Although this evidence is relevant, the cumulative effect of presenting evidence of "hundreds of slaves" is unduly prejudicial. The Court cannot conclude at this pretrial stage that some evidence of this nature is clearly not admissible for any purpose. As explained in the section above, the Government may present limited evidence to show the identity of Hernandez and to show that the online accounts used to communicate with the victims were no longer used after he was arrested. The Court limits, but will not exclude this evidence in *limine*.

Concerning evidence of "hundreds" of email and social media accounts and using multiple aliases and email service providers, the Government contends that this evidence shows Hernandez's "criminal tradecraft" and provides evidence of his identity. The Government asserts there is no unfair prejudice in this evidence because there is nothing inherently wrong or illegal about having multiple email accounts or using different online aliases. This argument is well taken, and the Court declines to exclude this evidence in *limine*.

Concerning Hernandez's use of encryption, the Government responded that this evidence is relevant to the issue of identity, and there is no unfair prejudice in this evidence because there is nothing inherently wrong or illegal about having encrypted devices. The Court is unable to conclude at this pretrial stage that this evidence is clearly not admissible for any purpose, and thus, the Court will not exclude this evidence in *limine* but rather will wait to make its determination in the context of trial.

Lastly, Hernandez asks the Court to exclude all statements mentioning Hernandez where the maker of the statement will not be subject to cross-examination pursuant to *Bruton v. United States*, 391 U.S. 123 (1968). The Government responded that it "does not object to the Defendant's request that 'all statements mentioning Defendant where the maker of the statement will not be subject to cross-examination' be precluded in accordance with the precedent in *Bruton v. U.S.*, 391

U.S. 123 (1968), unless the statement is otherwise admissible." (Filing No. 84 at 7.) The Court agrees that this request is well taken and **grants** the request.

### D. Docket No. 82

In his second Motion in *Limine*, Hernandez asks the Court to exclude any evidence, testimony, or argument concerning a tattoo that he obtained on his neck after he was detained by law enforcement which reads "Buster Kim." Hernandez believes the Government may seek to offer evidence from a cooperating witness who will testify that Hernandez chose this tattoo to "taunt law enforcement." He argues that the picture of the tattoo and any reasons behind it are irrelevant to the charges set forth in the Superseding Indictment, and it would be unfairly prejudicial.

Specifically, on the basis of unfair prejudice, Hernandez also asks the Court to exclude:

Testimonial evidence from cooperating witness Jason Entwhistle that the Defendant had engaged in certain conduct, including:
    (i) that he had blackmailed, extorted or threated others;
    (ii) testimonial evidence about whether the Defendant had maintained his innocence;
    (iii) testimonial evidence that the Defendant had terminated prior counsel or conducted himself in any manner during plea negotiations to prolong his trial and cost the prosecution time and money;
    (iv) the Defendant's potential penalty range or punishment if convicted.

(Filing No. 82 at 2.)

He similarly asks the Court to exclude:

Testimonial evidence from cooperating witness Tavares Clay that the Defendant had engaged in certain conduct, including:
    (i) That the Defendant forgot to take care of or feed his girlfriend, Kimmie's grandmother, with whom he lived and took care of;
    (ii) That the Defendant failed to assist Kimmie's grandmother after she fell and that he did not like to touch her because she was "squishy";
    (iii) That the Defendant failed to regularly feed horses boarded at the house because he was on the computer;
    (iv) That the Defendant had victims in Maine, Florida, and West Virginia;

13

>   (v) That the Government missed multiple electronic devices that belonged to him at his parents' home;
>   (vi) That the Defendant's father may be using his residence to produce and store methamphetamine;
>   (vii) That the Defendant had evidence of his victimization of thousands of other victims;
>   (viii) That the Defendant told Clay he had chosen certain words for a tattoo (i.e. "Buster Kim") on his neck in order to "taunt law enforcement".
>   (ix) That the Defendant physically assaulted another inmate named Joshua Duffy while on pretrial detention.
>   (x) That the Defendant had a "fetish" for transgendered individuals.
>   (xi) That the Defendant had traded cupcakes for sexual intercourse or engaged in other sexual acts with inmates while in pretrial detention.

*Id.* at 2–3.

In response, the Government asserts that Hernandez's tattoo and the reasons for it is relevant and addresses Hernandez's criminal tradecraft and identity. The Government represents that Hernandez told a Government witness that he got the tattoo as a way to taunt law enforcement, and he intentionally used the letters "B" and "K" for "Brian Kil" as an homage to his moniker "Brian Kil." The Government asserts that it must prove Hernandez is "Brian Kil," and as alleged in the Superseding Indictment, the person identifying himself as "Brian Kil" sextorted Victims 1, 2, and 3, admitted to those victims that he was "Brian Kil," and used that moniker when he threatened to use explosive devices on four locations and threatened to kill, kidnap, and injure numerous victims. The Government seeks to introduce evidence from Facebook and other social media postings that the perpetrator of the charged offenses routinely taunted law enforcement officers who were investigating him, and those taunts were part of his criminal tradecraft.

The Government has presented relevant and admissible purposes for the evidence of Hernandez's tattoo and the reasons for the tattoo, and therefore, the Court will not exclude this evidence at this pretrial stage of the litigation.

Concerning the possible testimony from Jason Entwhistle, the Government replied that it does not intend to introduce evidence through this witness about Hernandez's prior counsel, plea negotiations, or the potential penalties in this case. However, the Government does seek to introduce evidence that Hernandez admitted to Jason Entwhistle that Hernandez had blackmailed, extorted, and threatened others. The Government argues this evidence directly concerns the issues in the case and tends to prove the conduct in question. The Government asserts that the statements are consistent with the statements that Hernandez made to the charged victims and is essentially an admission of the charged offenses.

The Court concludes that testimony concerning Hernandez's prior counsel, plea negotiations, and the potential penalties in this case is irrelevant and would be unduly prejudicial. Therefore, the Court prohibits the Government from introducing such evidence. With respect to testimony concerning blackmailing, extorting, or threatening *others*, the Court finds this line of questioning to be overly broad and as presented, unduly prejudicial. The Government may present evidence if Hernandez admitted to Jason Entwhistle that he had blackmailed, extorted, and threatened specific persons or at a specific time in close proximity to the acts charged, but threats to *others* in general is too broad and unduly prejudicial. Therefore, the Court excludes such testimony from Entwhistle regarding blackmail, extortion, and threats to *others*.

With regard to the possible testimony from Tavares Clay, the Government does not intend to present evidence that Hernandez was abusive or neglectful towards his girlfriend's grandmother or towards animals. However, the Government does seek to introduce evidence that Hernandez told Tavares Clay that Hernandez's computer activity interfered with his other responsibilities, which is probative of the amount of time that Hernandez was spending online engaged in extortionate behavior. The Government explains that the evidence will show Hernandez was online

and using Tor to anonymize his activity day after day, sometimes sixteen hours a day. Most of the charged victims and Victims 2 and 11 will testify that Hernandez's communications with them were often unrelenting and incessant. This evidence, the Government argues, is probative of the identity of the perpetrator and of the opportunity to commit the charged offenses. The Court agrees with the Government's argument and determines that the evidence is not clearly inadmissible at this stage. Thus, the Court will not exclude this testimony prior to trial.

The Government asserts that Hernandez's statement to Tavares Clay that he had victims in Maine, Florida, and West Virginia is probative of the identity of the perpetrator and should be admitted. Furthermore, Hernandez's statement to Tavares Clay that the Government "missed multiple electronic devices" that belonged to him and that were at his parents' home is relevant to the credibility of Tavares Clay. The Government argues that Hernandez will likely challenge the credibility of Tavares Clay, and this evidence supports his credibility because the Government obtained a search warrant for Hernandez's parents' home and then searched the home and found additional electronic devices, thereby corroborating the testimony of Tavares Clay and supporting his credibility. The Court concludes that this evidence is probative and the probative value outweighs any unfair prejudice.

\The Government argues that Hernandez's statement to Tavares Clay regarding evidence of victimization of thousands of other individuals connects Hernandez to the charged offenses and the victims in the charged offenses and also is probative of identity. Hernandez often bragged to his victims that he had many other victims. Although this evidence may have some relevance, as presented, the probative value is outweighed by the prejudicial impact. Accordingly, the Court will exclude evidence that Hernandez told Clay that he victimized *thousands* of other individuals. However, Clay may testify that Hernandez told him he had victimized other individuals.

The Government repeats its argument concerning the relevance and admissibility of evidence of Hernandez's tattoo, even as testimonial evidence from Tavares Clay. At this pretrial stage, it appears that this testimony and evidence is relevant to the issues for trial and is admissible; therefore, the Court will not exclude this evidence in *limine*.

The Government explains that it does not intend to present evidence about Hernandez's father manufacturing or storing methamphetamine and that it has no objection to Hernandez's request to exclude testimony that he physically assaulted another inmate and he engaged in sexual activity while in prison, such as trading cupcakes for sexual intercourse. The Court concludes that testimony concerning Hernandez's father manufacturing or storing methamphetamine and testimony concerning Hernandez physically assaulting another inmate and engaging in sexual activity while in prison is irrelevant and would be unduly prejudicial. Therefore, the Court prohibits the Government from introducing such evidence during trial.

Lastly, concerning the possible testimony that Hernandez had a "fetish" for transgendered individuals, the Government explains this evidence would become relevant if Hernandez were to claim that he was not the person using Tor during the time that the FBI was monitoring his activity. When the FBI was monitoring internet activity at Hernandez's residence, the FBI's wiretap revealed that Hernandez was searching for pornography involving transsexual individuals. When the Government seized and searched Hernandez's cell phone, pornographic images of transsexual individuals that were the same of similar to the wiretap evidence were found. This evidence tends to show that Hernandez was using the IP address connected to his residence when he was extorting the charged victims and connects Hernandez to the charged offenses. Because the Court cannot conclude at this stage that this evidence is clearly not admissible for any purpose, the Court declines to exclude the evidence in *limine*.

### III. CONCLUSION

For the foregoing reasons, the Court **grants** the Government's Motions in *Limine* ([Filing No. 70](); [Filing No. 71]()) and **grants in part and denies in part** Hernandez's Motions in *Limine* ([Filing No. 74](); [Filing No. 82]()). An order in *limine* is not a final, appealable order. If the parties believe that evidence excluded by this Order becomes relevant or otherwise admissible during the course of the trial, counsel may approach the bench and request a hearing outside the presence of the jury. Likewise, if the parties believe that specific evidence is inadmissible during the course of the trial, counsel may raise specific objections to that evidence.

**SO ORDERED.**

Date: 1/21/2020

*Tanya Walton Pratt*
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Mario Garcia
BRATTAIN MINNIX GARCIA
mario@bmgindy.com

Kristina M. Korobov
UNITED STATES ATTORNEY'S OFFICE
kristina.korobov@usdoj.gov

Tiffany Jacqueline Preston
UNITED STATES ATTORNEY'S OFFICE
tiffany.preston@usdoj.gov