UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No.  1:17-cr-00183-TWP-TAB |
| | ) |
| BUSTER HERNANDEZ, | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S SUPPLEMENTAL SECOND NOTICE OF INTENT TO
USE UNCHARGED CONDUCT EVIDENCE AS DIRECT EVIDENCE AND
EVIDENCE ADMISSIBLE UNDER F.R.E. 414 AND 404**

The United States of America, by counsel, Josh J. Minkler, United States Attorney for the Southern District of Indiana, Tiffany J. Preston and Kristina Korobov, Assistant United States Attorneys, hereby files its Supplemental Second Notice of Intent to introduce evidence of uncharged conduct as direct evidence and as evidence admissible pursuant to Federal Rules of Evidence 414 and 404(b).[1]  Docket 111, filed on January 28, 2020, will be withdrawn as outdated.

I.    **Background**

In the instant case, the Government charged that the Defendant exploited, extorted and coerced several female victims within the Southern District of Indiana

---

[1] Since the January 29, 2020 filing, the United States has discovered additional evidence connecting the defendant to this victim, and includes that evidence here.  The United States has updated the defense in real time as it has received each piece of evidence.  The United States advised the defense after the Court's expedited briefing order that it intended to supplement its notice so that the defense would not have to engage in repeat filings.

to produce sexually explicit images constituting child pornography.  The United States recently uncovered newly discovered evidence from Government Exhibit 1012. Government Exhibit 1012 is the defendant's Motorola cellphone, model: XT875, S/N: 990000838180380, FBI 1B12 recovered from the defendant's home August 3, 2017. That newly discovered evidence has revealed that Buster Hernandez also exploited Victim 12, who was a 13 year-old minor (Venue:  Western District of Virginia and Eastern District of California).

By way of background, Government Exhibit 1012 has been an important item of evidence since its recovery from the defendant's home on August 3, 2017. As such, Government Exhibit 1012 has been available for inspection by the defense since Rule 16 disclosures were first made on September 25, 2017.  In that letter, the Government indicated that it intended to rely on all of data obtained from the phone, and that it was available for inspection.  Since the fall of 2017, the defense has been aware that the data from Government Exhibit 1012 was particularly important because agents had recovered nude images of the singer Rihanna from the phone that the defendant had downloaded and sent to Victim 3 stating that she (Victim 3) looked just like Rihanna.  Thus, the forensic data obtained from phone tied the defendant to Victim 3.  As a result, the defense examined the Rihanna data obtained from the phone in 2018 and 2019.

When the item was first extracted and examined, Sgt. Chris Cecil discovered an image of an unidentified female (now known as Victim 12) and marked that image as an "item of interest" in his report.  However, facial recognition software was not

available at the time, and the image was recovered separate and apart from the remaining series of images that were sexually explicit in nature (described below). Accordingly, even if the images had been sorted in the fall of 2017, and agents had matched the facial photograph with the sexually explicit images, there would have been no way to identify the victim or her date of birth.

In the spring of 2019, the Government first disclosed its expert witnesses, and advised that it intended to introduce expert testimony regarding the data that had been forensically extracted from Government Exhibit 1012. The Government then updated those disclosures on January 7, 2020, and advised again that it intended to rely on the data obtained from Government Exhibit 102.

In January 2020, the United States began preparing expert witnesses, including Sgt. Cecil for trial, and as such revisited the data obtained from Government Exhibit 1012. Given the important nature of the "Rihanna" evidence, United States Attorney Tiffany J. Preston asked Special Agent Andrew Willmann to obtain attribution data from Government Exhibit 1012.

Late in the evening on Saturday, January 25, 2020, in preparation for trial, Special Agent Willmann was reviewing the voluminous data obtained from Government Exhibit 1012. During that review, and as the agent was culling through the data looking for attribution information,2 he discovered seven images constituting child pornography of a young previously unidentified girl (now known as

---

2  Government Exhibit 1012 was recovered from the defendant's girlfriend's bedroom next to his shoes. It was cracked and appeared to be no longer in use. Accordingly, and because of its important regarding the Rihanna photographs, agents were looking for attribution evidence, such as "selfies" and contact data that would show that the defendant was the user of that phone. The United States was forwarding that information as it obtained it to the defense via E-mail, including several of the defendant's "selfies" that he saved on the phone.

Victim 12) that matched the precise kinds of images the defendant obtained through coercion and extortion from Victims 1-6 and 11. As the agent used a new sorting method through the images, he discovered that they were a part of a series connected to the facial photograph of the unidentified young girl marked as an item of interest by the examiner, Sgt. Chris Cecil. The images were a part of a series of images recovered forensically through deleted cached data.

On Sunday morning, January 26, 2020, the agent drafted a description of the images and their location within the phone, and the United States forwarded that description to the defense via E-mail. The agent also noticed that the name "T.G." (known, but redacted) was written on the mirror in one of the images. At 10:53 a.m., the agent forwarded the images depicting the young girl to Indiana State Police Sergeant Chapman asking for assistance in identifying the girl through facial recognition software now in existence. That software was not available when the phone was first examined in 2017.

On Monday, January 27, 2020, the defense attorney examined Victim 12's images at the United States Attorney's Office. On the same day, and through the name and facial recognition software, Sgt. Chapman matched the photographs to Victim 12 from Danville, Virginia. Agents were then able to identify Victim 12 as being a real child, born in 2001, who lives in Virginia. As agents received these reports, the United States forwarded the information immediately to the defense in real time.

Agents contacted Task Force Officers for the Federal Bureau of Investigation in Lynchburg, Virginia, who began attempting to locate Victim 12.  On January 29, 2020, Task Force Officer Wright forwarded a police report authored on October 16, 2014.  Victim 12 was 13 years' old at the time the report was made.

In that report, Victim 12's mother advised officers in Virginia that her daughter had consensually shared nude pictures of herself via the application KIK online.  Subsequently, Victim 12's mother received messages from a Facebook account named "COLOR RED" stating he had pictures of her daughter (Victim 12) and if he didn`t receive more images, he was going to make the ones he had public.  Meanwhile, and according to Victim 12's mother, their son was receiving the same Facebook messages but told "Color Red" that he did not believe his threats.  In response to that message, "Color Red" sent a nude image of Victim 12 proving that he indeed possessed the image.  Victim 12's mother confronted Victim 12, who advised that although she had consensually shared images with several individuals via Kik whom she did not know, she had been sextorted by "Color Red" and that he was threatening to share her nude images via Facebook if she failed to produce more for him.  One of the Kik accounts to whom Victim 12 sent her nude images was "Jimmy."[3]

Victim 12 told law enforcement in 2014 that there was another young girl who attended her Middle School who was also receiving threats from "Color Red" via Facebook.  Agents have identified that second potential victim, and are attempting to establish contact.

---

[3] The defendant's name is Buster Jimmy Hernandez and his Kik profile uses the handle "Jimmy."

Agents looked at the data in Government Exhibit 1012 and discovered the following:

1. "Selfies" of the defendant recovered from deleted cached data (where the sexually explicit images of Victim 12 were recovered."

2. "Selfies" of the defendant that had not been deleted.

3. A non-nude image of Victim 12 in data that was not deleted.

4. Kik application data showing the defendant's face in the profile picture and his handle as "jimmy."



Importantly, the "Color Red" Facebook handle, or a version of it, has been used by this defendant to commit extortion and coercion offenses as disclosed in Government Exhibits 57, 58, 59, 62, and 63:

Color Red 100006074238315 Facebook

Color Red, color.red. 9678100009922507215 Facebook

Color Reds 100007740585546 Facebook

Colored Reds 100009960991125 Facebook

Coloring Red 5492100012457603935 Facebook

Indeed, the Government can connect the Color Red 100006074238315 account to the account "clutter removed," which was used to sextort Victim 3 (who attended the "Brian Kil" forum at the defendant's request) during the same time period the defendant contacted Victim 12. Moreover, Victim 3 received the nude Rhianna images in November 2014 (again, during the same time period that the defendant contacted Victim 12 via Color Red), and the Rihanna images were recovered from the same phone—Government Exhibit 1012.

Color Red 100007740585546 is connected via "cookie" data to Victim 4, and Victim 6 reported that she was first sextorted by the defendant using a "Color Red" handle in November 10, 2014 (just two weeks after Victim 12 reported the Color Red sextortion to police in Virginia. Given the Government must prove the identity of the individual who sextorted Victims 3, 4, and 6 as part of the pending charges, this evidence is particularly strong and critical to the Government's case.

Agents have located Victim 12 and have scheduled an interview with her in Virginia on January 31, 2020.

This newly discovered evidence is direct evidence of the defendant's guilt, and is also admissible under Federal Rules 414 and 404(b).

## II.   <u>Charges</u>

The Defendant is charged with multiple counts of the sexual exploitation of a child, coercion and enticement, distribution and receipt of child pornography, and different charges alleging threatening communications.  The Government has alleged that over a period of years, the Defendant reached out to multiple persons using social media and convinced them that he possessed sexually explicit photos of them.  He then coerced the charged victims and other females into producing sexually explicit videos and images, threatening to disseminate the photos and videos that he claimed to already possess.  The Defendant then coerced females to engage in various forms of sexually explicit conduct and to send him the videos of this conduct.  The Defendant provided extremely explicit and detailed instructions as to exactly what he wanted from his victims.  Hernandez would give the victim a time limit in which the victim had to comply with his orders or else the victim would face specific consequences.  The Defendant often referred to the victims as "slaves" and his used other derogatory language when communicating with the victims.

As set forth in the Superseding Indictment and other filings, sometimes the defendant tricked the victims into believing that he possessed sexually explicit images of them.  Other times, he actually did already possess sexually explicit images of the victim, as in the case of Victim 6, and now in the case of Victim 12.  Accordingly, the "Color Red" handle, the Kik "Jimmy" handle, the types of images he possessed of Victim 12, the method he used to sextort her (threatening her and her family with

dissemination and other threats), and the forensic data connecting the phone to the defendant and Victim 3 is critical to establishing identity in the Government's case.

### III. Evidence of the extortion, coercion, and exploitation of Victim 12 (an uncharged person) is direct evidence of the crimes charged, and it is also is admissible pursuant to F.R.E. 414 and 404(b).

#### *Proffered Evidence*

The images of Victim 12 were discovered in "cached" data obtained from Government Exhibit 1012, 1B12 Motorola XT875 Droid Bionic. Data obtained by the phone will establish that the phone was used by the defendant.

The following images were discovered in cached data:

1.      The cached image 4 depicts a minor female with blonde and blue hair standing in front of a mirror framed with a perfect attendance and citizenship award ribbons. The minor female appears to be between 11 and 14 years old. The minor female is shown wearing a black shirt and purple shorts. The minor female appears to be taking a picture of herself with her cellular telephone.

2.      The cached image depicts a minor female with blonde and blue hair standing with her arms crossed underneath her breasts. The minor female does not appear to be wearing a shirt, and her breasts are visible. The minor female is wearing a necklace with a decorative key hanging from it. The minor female appears to be between 11 and 14 years old.

---

4 Cached data are files, images and scripts automatically stored on your computer or phone

3.     The cached image depicts the same minor female with blonde and blue hair taking a "selfie" of herself. The minor female is seen wearing a crème colored shirt with a white bra. The white bra had triangle shapes printed on it.

4.     The cached image depicts the same minor female wearing the white bra with triangles printed on it. The minor female is also wearing a necklace with a decorative key hanging from it. The minor female's bra is shown to have been pulled down. Her breasts are visible and the focal point of the image.

5.     The cached image depicts the same minor female standing in front of the camera with her hands on her hips. The minor female does not appear to be wearing any clothing. She is wearing a necklace with a decorative key hanging from it. Her breasts and naval are clearly visible and the focal point of the image.

6.     The cached image depicts the same minor female with blonde and blue hair sitting on her knees, and facing away from the camera. The minor female is not wearing any pants or underwear. Her buttocks are clearly visible and her anus is partially obscured in the picture.

7.     The cached image depicts the same minor female sitting on her knees and facing away from the camera. She is shown wearing a light blue shirt and black and white underwear. A "Despicable Me 2" poster is shown in the background. The focus of the image is the juvenile female's buttocks.

As set forth above, the minor female has since been identified as Victim 12 from Virginia, who was born in 2001.  She was 13 years' old when she was sextorted by "Color Red" having recently shared nude images with the Kik user "Jimmy." The

Court, through other briefs, is well aware of the types of images the defendant demanded from his victims—and this series of images of Victim 12 matches his *modus operandi*.   More importantly, it is strong and direct evidence that the defendant is the perpetrator of the charged offenses.

### IV.    Law and Argument

The evidence of the exploitation, coercion / enticement, and extortion is direct evidence of the crimes charged and therefore admissible without resort to Fed R. Crim. P. 414 or 404(b).   The evidence of the victimization of Victim 12 is direct evidence of the charged offenses.   In the alternative, the evidence is allowed under Rule 414 as it is relevant and not more prejudicial than probative.   Finally the proffered evidence is not offered for propensity purposes, but rather to show the identity of the person who created the charged images.

    A.   The proffered evidence is direct evidence of a matter the Government must prove.

Rule 402 of the Federal Rules of Evidence states that "all relevant evidence is admissible." Fed. R. Evid. 402.  Evidence is relevant if it has the "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable."  Fed. R. Evid. 401.   Relevant evidence should be admitted unless its "probative value is substantially outweighed by the danger of unfair prejudice."   Fed. R. Evid. 403. Foundation or contextual evidence may be admissible as relevant evidence, and not "other acts" evidence under Rule 404(b) when it constitutes direct evidence of the crimes charged.  *See United States v.*

*Vargas*, 689 F.3d 867, 874 (7th Cir. 2012).  Evidence is direct when it "tend[s] to prove the elements of the offense . . . actually charged." *Id*; *see, e.g.*, *United States v. Miller*, 673 F.3d 688 (7th Cir. 2012) (holding that evidence of defendant's prior possession of a gun was admissible as direct evidence that the defendant possessed the same gun on the date charged); *United States v. McKibbins*, 656 F.3d 707 (7th Cir. 2011) (determining that it was not an abuse of discretion for the district court to admit child pornography and profile pictures as direct evidence of an obstruction charge).

The proffered evidence is proof that the Defendant is the person who committed these offenses. In addition to the other elements of each offense charged, the Government must prove that it is Buster Hernandez who committed the charged offenses.  Because the Defendant's conduct with this uncharged victim is part and parcel of the criminal conduct that is charged, it cannot truly be separated.  As the Superseding Indictment alleges, the Defendant's conduct was patterned and continuous.  The Defendant bragged to his victims that he had done "this" to others and had not been caught.  The phone was used during the same time period of the charged offenses.  Indeed, evidence obtained from the phone is connected directly to Victim 3.

Undoubtedly the defendant intends to argue that the Government was unable to recover images and videos of the charged victims at trial, and that because there was an absence of said images and videos, the Government has failed to meet its

burden.5   That the defendant possessed other images that matched his age and gender of attraction of the victims in the charged offenses, and that matched the types of image he obtained from them via sextortion, makes it more likely than not that the defendant is guilty of the charged offenses.  Indeed, this pattern fits the defendant's precise *modus operandi*.  This evidence should be admitted.

## B. <u>The proffered evidence is also admissible pursuant to F.R.E. 414.</u>

The evidence of the Defendant's victimization of the uncharged victim (Victim 12) is admissible not only as direct evidence of the offenses in the Superseding Indictment, but also as evidence admissible pursuant to F.R.E. 414.   The Rule governs the admission of evidence of similar crimes in child molestation cases, and reads in pertinent part:

In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant. Fed. R. Evid. 414.  Thus, in order to be admissible pursuant to Rule 414, the defendant must be accused of child molestation, *and* the evidence offered must be evidence that defendant committed a prior or different offense of child molestation.  An "offense of child molestation" is defined, in pertinent part as, *inter alia*, as a crime under federal or state law that involved conduct proscribed by Chapter 110 of Title 18 the U.S. Code.  *Id.*   Child pornography and child sexual

---

5  Many of the defendant's devices were encrypted.

exploitation offenses clearly fall within this definition, as they are part of Chapter 110. *See* 18 U.S.C. §§ 2251(a), 2252(a)(1), 2252(a)(4)(B), and 2260A. Attempts are also included. Fed. R. Evid. 414(d)(2)(f).

In admitting evidence under Rule 414, the Court must conduct a two-part analysis: "First, it must decide whether the evidence falls under that rule. Then it must turn to Rule 403 and 'assess the risk of unfair prejudice' the evidence poses." *United States v. Resnick,* 823 F.3d 888, 894–95 (7th Cir. 2016). The proffered evidence falls within this category. The Defendant is accused of a covered offense and evidence of the commission of other covered offenses *is admissible.* It may be considered for its bearing on any matter for which it is relevant. In this case, that matter is identity of the person who committed the offenses.

Rule 403 requires the exclusion of relevant evidence when its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury . . . ." Fed. R. Evid. 403. "Unfair prejudice ... means an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." Advisory Committee's Notes on Fed. R. Evid. 403, *cited approvingly in Old Chief v. United States*, 519 U.S. 172, 184−85 (1997). Rule 414 constitutes an exception to the rule that evidence of prior bad acts is inadmissible to show a defendant's propensity to commit the offense charged. *See United States v. Rogers*, 587 F.3d 816, 822-23 (7th Cir. 2009) (discussing analogous Rule 413). Rules

413 and 414 effectively override the propensity bar in rule 404(a)(1) in sexual assault cases. *United States v. Stokes*, 726 F.3d 880,896 (7th Cir. 2013).

The evidence of exploitation and extortion of the uncharged victim by the Defendant proves the identity of the offender. The Government always must prove who committed the charged crime. The signature language used by the Defendant in his communication, the type of threats made, the communication platforms used, the technology involved in the communication – it is all proof of identity. The similarity of offenses and time period of the uncharged conduct is a consideration for the Court in determining the admissibility of the evidence under Rule 414. The Sixth Circuit recently addressed F.R.E. 414 admissibility, holding that the admission of such evidence is proper when the "other acts" testimony related to uncharged conduct that occurred in the same time frame as the charged conduct and related to abuse of the charged victims' sibling. *United States v. Cox*, 871 F. 3d 479, 486 (6th Cir. 2017). In the instant case, the uncharged conduct attributable to the Defendant occurred during the same time period as the charged conduct and is substantially similar to the charged conduct. Additionally, the uncharged conduct all ended on the date of the Defendant's arrest. In this case, the Defendant's conduct has so many unique features that he replicated across the span of the individuals he victimized that his behaviors became a signature. The 7th Circuit has specifically held that "'a history of similar acts tends to be exceptionally probative because it shows an unusual disposition of the defendant ... that simply does not exist in ordinary people." *United States v. Hawpetoss,* 478 F.3d 820, 824 n. 7 (7th Cir.2007)." *Resnick* at 895. This

rationale for admitting FRE 414 evidence is especially applicable to the Hernandez facts, where the Defendant's behaviors can certainly be characterized as "an unusual disposition . . . that simply does not exist in ordinary people."

The only other analysis is whether the probative value of the proffered evidence – the exploitation and extortion of the uncharged victim – is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Here, there is no danger of unfair prejudice. The proffered evidence is not unfairly shocking or emotional – particularly in light of the other evidence of the charged allegations which the jury will see in this case. *United States v. Russell,* 662 F.3d 831, 847–48 (7th Cir.2011) (prior instances of inappropriate touching, by establishing defendant's sexual interest in his minor daughter, were probative of his motive to induce his daughter to create sexually explicit photographs in violation of section 2251(a)); *United States v. Hawpetoss*, 478 F.3d 82, 824-827 (7th Cir. 2007)(admitting evidence under rule 403 of molestation of two uncharged minor victims); *United States v. Roux*, 715 F.3d 1019, 1024 (7th Cir. 2013). The proffered evidence simply helps to prove identity. As a result, the evidence is admissible pursuant to Fed. Rule Evid. 414.

C.  <u>The proffered evidence is also admissible pursuant to F.R.E. 404(b).</u>

If this Court were to find that this evidence is subject to Fed. R. Crim. P. 404(b), there are multiple non-propensity uses for the evidence. In *United States v. Gomez*,

the Seventh Circuit adopted "a more straightforward rules-based approach," which is summarized as follows:

[T]o overcome an opponent's objection to the introduction of other-act evidence, the proponent of the evidence must first establish that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way. *See* Fed.R.Evid. 401, 402, 404(b). Other-act evidence need not be excluded whenever a propensity inference can be drawn. But its relevance to "another purpose" must be established through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case. If the proponent can make this initial showing, the district court must in every case assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice and may exclude the evidence under Rule 403 if the risk is too great. The court's Rule 403 balancing should take account of the extent to which the non-propensity fact for which the evidence is offered actually is at issue in the case. *Gomez,* 763 F.3d 845, 853, 860 (7th Cir. 2014).

### *Identity/ Modus Operandi*

The Government proffers that the evidence is admissible to prove identity and *modus operandi*.  The Government always must prove who it was that committed the charged crime.  The Seventh Circuit has held that "In evaluating the probative value of modus operandi evidence, we focus on the commonalities between the charged

crime and the other act—not on their differences. *United States v. Vaughn,* 267 F.3d 653, 659 (7th Cir.2001)." *United States v. Price,* 516 F.3d 597, 604 (7th Cir. 2008).

In this case, the commonalities between the charged conduct and the uncharged conduct are substantial, as is alleged directly in the Superseding Indictment in paragraphs 22-24. The proffered evidence regarding the victimization of uncharged individual proves that the person who was identified by the NIT sent through Victim 2's account is the same person who victimized the other charged persons, including Victims 1, 3, 4, and 6.6 It is the Defendant's signature language, methods of coercion, demand for specific images, incessant volume of communications, and threats to harm others that constitute a *modus operandi*. The Government's position is that the uniqueness of the Defendant's precise poses he requested from his victims is, among other things, his signature.

The Government does not allege that the defendant is a bad person and because he is a bad person, he must be the person who committed the acts of extortion. The Government instead contends that Buster Hernandez – the person identified with the NIT - is the same person who coerced, extorted, and exploited the charged victims and the uncharged victim (Victim 12). That he was caught with the precise type of child pornographic images he sextorted from Victim 1-6 and 11 is direct evidence of his identity and should be admitted.

---

6 As set forth in previous filings, those victims are not only connected by the defendant's modus operandi, but by forensic data—"cookies" connecting the accounts to the same machine and common victims.

Finally, Federal Rule 403 does not preclude the admissions for the same reasons that the evidence is not barred under F.R.E. 414. Therefore the evidence is admissible to prove identity and the Defendant's *modus operandi*.

WHEREFORE the Government requests this Court issue a ruling that the evidence from the uncharged victim is admissible in the Government's case-in-chief.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney

By:  *s/ Tiffany J. Preston*
Tiffany J. Preston
Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2020, a copy of the foregoing Government's

Notice of Intent to Use Evidence under F.R.E. 414 and 404 was filed electronically.

Notice of this filing will be sent to the parties by operation of the Court's electronic

filing system. Parties may access this filing through the Court's system.

Date:   January 29, 2020                Respectfully submitted,

                                        JOSH J. MINKLER
                                        United States Attorney


                           By:   s/  Tiffany J. Preston
                                 Tiffany J. Preston
                                 Assistant United States Attorney
                                 10 West Market Street, Suite 2100
                                 Indianapolis, IN  46204-3048
                                 Telephone:  317-226-6333
                                 Fax:  317-229-6125
                                 Email:  tiffany.preston@usdoj.gov