UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | CASE NO. 1:17-cr-0183-TWP-TAB |
| ) | |
| BUSTER HERNANDEZ, ) | |
| ) | |
| Defendant. ) | |

DEFENDANT BUSTER HERNANDEZ'S RESPONSE AND OBJECTION TO GOVERNMENT'S ADMISSION OF UNCHARGED CONDUCT EVIDENCE AS DIRECT EVIDENCE AND EVIDENCE ADMISSIBLE UNDER F.R.E. 404

The Defendant, Buster Hernandez, by counsel, Mario Garcia, hereby submits his written Response and Objection to the Government's Second Notice of Intent to Use Uncharged Conduct Evidence as Direct Evidence and Evidence Admissible Under F.R.E. 404[1] (Doc. #117), and in support argues the following.

Background

In this "eleventh" hour before trial, the Government has discovered evidence from a cellphone it seized at the Defendant's home which it believes is direct evidence of the Defendant's criminal activities and that which establishes the Defendant's identity or *modus operendi*. The evidence includes images of what it alleges is child pornography and data concerning social media accounts of the Defendant and a new victim, Victim 12. The Government has had this evidence in its possession for two and a half years, has thoroughly examined it and had previously prepared the evidence for trial. Although the Defense has previously had an opportunity to examine it, until this week, both the Government and Defense were under the understanding that there was no child

---

[1] The Government has elected to waive its argument of admissibility under FRE 414.

1

pornography found at the Defendant's residence.  The defense has been preparing for the jury trial based on this apparent lack of evidence and has been developing its strategy based on this belief. Now, the situation has significantly changed.   The Defense is actively working with the Government to have this new specific evidence forensically examined by its own expert but is unsure when funds will be appropriated for such a costly expense and when the examination can occur.  Regardless, this new evidence does not pass the test for admission under Federal Rules of Evidence (FRE) 404(b) as argued by the Government.  This new evidence does not have a tendency to make a fact more probable than it would be without this evidence, and thus is irrelevant under FRE 401.  Moreover, even if it were admissible under FRE 404 and 401, its minimal probative value is greatly outweighed by the prejudice the Defendant would suffer if it were admitted. Assuming this is a close call, the Court should deny the admission of this new evidence and sustain the Defendant's objection.

<u>Argument</u>

The Government is seeking to offer evidence from a new victim, "Victim 12", (nude photographs of her) and data concerning social media accounts it alleges belong to the Defendant and which was all allegedly found on Government's Exhibit 1012 (i.e. a "Droid" cellphone).  The Government seemingly intends to offer Victim 12's testimony concerning who she sent these images to, including someone named "Jimmy" who used the KIK software application to communicate with her.  The Government alleges they located data concerning a KIK account in the same area of data where the Victim 12's photographs were located in the cellphone.  While counsel for the defense would agree that such evidence might normally be admissible, here in this late hour before trial, its admission seems problematic and its admission would not pass the proverbial balancing test.

Character evidence is generally inadmissible under Rule 404.  This type of evidence, like the proffered evidence here involving other crimes or wrongs against other alleged victims is damaging. Therefore, evidence of other crimes or wrongs must be closely scrutinized. The evidence must be offered for a proper purpose, that is, to prove a material fact in issue and not to prove bad character or propensity. The test for admissibility under Rule 404(b) is whether the evidence is logically relevant under Rule 401 to the purpose for which it is offered, not whether the extrinsic bad conduct is "similar" to the crime being tried.  *See* FRE 404 and 401.

In *United States v. Smith*, 103 F.3d 600, 603 (7th Cir. 1996), the Court stated that "If defined broadly enough, modus operandi can easily become nothing more than the character evidence that Rule 404(b) prohibits." Further, the Court continued to say that "modus operandi evidence must bear a 'singular strong resemblance to the pattern of the offense charged,' and the similarities should be 'sufficiently idiosyncratic to permit an inference to pattern for purposes of proof,'" *Id*. quoting *United States v. Shackleford*, 884 F.2d 1016, 1021 (7th Cir. 1989)). Therefore, the focus should be "on whether the similarities between the other acts evidence and the charged crime ***clearly distinguish the defendant from other criminals committing the same crime***." *Id*.

While the Government contends that the uniqueness of Mr. Hernandez's precise poses requested from his victims is his signature, this does not so clearly distinguish him from other criminals committing the same crime. The pictures requested were photographs of the victim while they were standing nude in front of a mirror – this is commonplace in sextortion cases. Additionally, the Government claims that Defendant's "signature language, methods of coercion, demand for specific images, incessant volume of communications, and threats to harm others constitute a *modus operandi*." *See* Government's Second Notice of Intent at 12. However, after review of the discovery, Mr. Hernandez's alleged language is one that could be expected from

someone that was sexually extorting another. All sextortion cases follow the same scheme, they begin with an initial threat indicating that sensitive information is known about the victim. The initial threat is then followed by a demand for some sort of compensation such as pictures or money. After the demand, there is a final threat indicating what will happen should the victim not comply. The Defense asks that the Court find that Mr. Hernandez's alleged contact with "Victim 12" was the sort of contact that one would expect from other sextortion cases and therefore would not clearly distinguish him from other criminals committing the same crime. The Defense prays that the Court deny the admission of the proffered evidence as evidence of *modus operandi*.

Further, despite the Government's argument to the contrary, the Defendant sees this evidence for exactly what it could be seen as by the jury, i.e. "bad character" evidence. The Government alleges it is direct evidence of the Defendant's crimes as charged in the Superseeding Indictment. The Government maintains such evidence is direct evidence of the Defendant's identity and that it shows a pattern or conduct of this type of behavior, i.e. sextortion by use of the internet and social media accounts. *See* Government's Response, Doc. #117 page 12. It alleges this evidence shows it was the Defendant who was operating all of the other social media accounts used to sextort the other victims. Of course, Victim 12 is not one of the identified victims so far of the Defendant's conduct as charged. She falls into the scope of the dozens of other people the Defendant allegedly sextorted. The Government already intends to try and offer evidence of numerous other victims of uncharged conduct, social media account messages relating to this uncharged conduct, and testimony from these witnesses. Adding one more witness of this type seems unnecessarily cumulative and the piling on of additional extrinsic evidence too prejudicial to the Defendant. The defense has and will continue to object to this type of extrinsic evidence.

4

This late offering only further compounds the issue facing the Court which is whether to allow this bad evidence in under a permissible theory, like identity of *modus operendi*.

The Government has already provided the Court in several pleadings with a preview of the "litany of evidence" it has to establish the Defendant was the person behind all of the various social media accounts. *See* Government's Motion to Admit Exhibits, Doc. #95. A ruling on that Motion has not been issued yet, but for the same reasons as set forth in the Defendant's Objection to that Motion, this evidence should be inadmissible, too.

The Government will attempt to illicit testimony from Victim 12 that she sent these images to the "Jimmy" KIK account and that shortly thereafter, she and her brother began to be sextorted by a Facebook account called "COLOR RED". However, to date the Government has been unable to link or tie this "COLOR RED" Facebook account to one allegedly used to sextort other victims as part of the Government's theory of the case. Instead, the Government tries to tie this anticipated testimony about an unidentified "COLOR RED" Face book account and its theory of identification of the Defendant to count to similarly named "COLOR RED" Facebook handles it thinks were used by the Defendant. To be clear, the Government has not identified the "COLOR RED" Face book account that allegedly contacted Victim 12 to any other Facebook account it alleges was the Defendant. It glosses over this fact by arguing in its Supplemental Notice that there were other versions of the words "color red" associated with other Facebook accounts that were sextorting other girls. *See* Supplemental Notice, Doc#117, page 6-7. On information and belief, the Government has not connected this "COLOR RED" Facebook account with any of those that they have already investigated. The connection here between the testimony of some "COLOR RED" Facebook account from Victim 12 and the Defendant is too remote to try and establish identity or *modus operendi* through this late discovered evidence. Even if it were probative of these things,

the prejudice to the Defendant outweighs its probative value in light of all the other evidence the Government intends to offer at this point to try and prove the identity of the sextortionist.

WHEREFORE, the evidence in the Supplemental Notice should not be admitted and for all other just and proper relief.

> Respectfully submitted,
> BRATTAIN MINNIX GARCIA
>
> By: Mario Garcia
> Mario Garcia, #21638-49
> One Indiana Square, Suite 2625
> Indianapolis, IN 46204
> (317) 231-1750 x5
> mario@bmgindy.com
> Attorney for Buster Hernandez

CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of January, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

> /s/ Mario Garcia
> Mario Garcia