**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cr-00183-TWP-TAB |
| | ) | |
| BUSTER HERNANDEZ | ) | |
|   a/k/a BRIAN KIL | ) | |
|   a/k/a BRIANNA KILLIAN | ) | |
|   a/k/a BRIAN MIL | ) | |
|   a/k/a GREG MARTAIN | ) | |
|   a/k/a PURGE OF MAINE | ) | |
|   a/k/a UYGT9@HUSHMAIL.COM | ) | |
|   a/k/a JARE9302@HUSHMAIL.COM | ) | |
|   a/k/a DTVX1@HUSHMAIL.COM | ) | |
|   a/k/a LEAKED_HACKS1 | ) | |
|   a/k/a CLOSED DOOR | ) | |
|   a/k/a CLOSED COLOR | ) | |
|   a/k/a CLUTTER REMOVED | ) | |
|   a/k/a COLOR RAIN | ) | |
|   a/k/a PLOT DRAW | ) | |
|   a/k/a INVIL CABLE, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON GOVERNMENT'S MOTION *IN LIMINE*

This matter is before the Court on Plaintiff United States of America's ("the Government") Second Notice of Intent to Use Uncharged Conduct Evidence as Direct Evidence and Evidence Admissible Under F.R.E. 404 and Supplemental Second Notice (Filing No. 111; Filing No. 117). Defendant Buster Hernandez ("Hernandez") is set to be tried by a jury on February 10, 2020, on eight counts of Sexual Exploitation of a Child, three counts of Coercion and Enticement of a Minor, six counts of Distributing and Receiving Child Pornography, four counts of Threats to Use Explosive Devices, one count of Threats and Extortion, ten counts of Threats to Kill, Kidnap, and Injure, six counts of Witness Tampering, one count of Obstruction of Justice, and two counts of

Retaliating Against a Witness or Victim. The Government's Motion provides notice of its intent to use uncharged conduct as direct evidence and as evidence admissible under Federal Rule of Evidence 404(b). For the following reasons, the Government's Motion is **granted**.

## I. LEGAL STANDARD

"[J]udges have broad discretion in ruling on evidentiary questions during trial or before on motions in *limine*." *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The Court excludes evidence on a motion *in limine* only if the evidence clearly is not admissible for any purpose. *See Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Unless evidence meets this exacting standard, evidentiary rulings must be deferred until trial so questions of foundation, relevancy, and prejudice may be resolved in context. *Id.* at 1400–01. Moreover, denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion is admissible; rather, it only means that, at the pretrial stage, the court is unable to determine whether the evidence should be excluded. *Id.* at 1401.

## II. DISCUSSION

Federal Rule of Evidence 404(b)(1) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." F.R.E. 404(b)(1). Rule 404(b)(2) allows such evidence when it is used for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. F.R.E. 404(b)(2). The Seventh Circuit has provided a four-part test to be used in 404(b) determinations. Courts are to consider whether: (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter at issue; (3) the evidence is sufficient to support a jury finding

that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *See United States v. Howard,* 692 F.3d 697, 703 (7th Cir. 2012).

In its Motion, the Government provides notice of its intent to use uncharged conduct as direct evidence and as evidence admissible under Rule 404(b). Hernandez is charged with exploiting, extorting, and coercing several female victims within the Southern District of Indiana to produce child pornography. The Government seeks to offer "newly discovered" evidence that Hernandez also exploited Victim 12 of Virginia, who was thirteen years old at the time of the alleged exploitation.

On January 25, 2020, while preparing for trial, agents with the Federal Bureau of Investigation (FBI) were reviewing data from one of Hernandez's cellular telephones that had been recovered from his residence in California on August 3, 2017. While reviewing the data, the FBI agents discovered seven images of child pornography of Victim 12. The Government contends these images match the precise kinds of images that Hernandez obtained through coercion and extortion from Victims 1–6 and 11. The Government promptly notified defense counsel of the discovery of this new evidence, and defense counsel reviewed the evidence. That same day, facial recognition technology identified Victim 12 as a real child living in Virginia who was born in 2001. The Government argues that the conduct relating to Victim 12 is direct evidence of the charged offenses and "part and parcel" with the charged conduct. In the alternative, they contend the evidence is allowed under Rule 404(b) because it is offered only to show identity and admissible under Rule 414 because it is relevant and probative.

Hernandez is charged with multiple counts of sexual exploitation of a child, coercion and enticement, distribution and receipt of child pornography, and other charges alleging threatening

communications. The Government has alleged that, over a period of years, Hernandez contacted multiple people using social media and convinced them that he possessed sexually explicit photographs of them. He then coerced the charged victims and other victims into producing sexually explicit videos and images by threatening to disseminate the photographs and videos that he claimed to already possess. Hernandez coerced his victims to engage in various forms of sexually explicit conduct and to send him videos of this conduct. He gave explicit and detailed instructions as to exactly what he wanted from his victims. Hernandez would give the victims a time limit in which they had to comply with his orders or else the victims would face specific consequences. Hernandez often referred to the victims as "slaves" and used other derogatory language when communicating with the victims.

The Government proffers as follows.

Evidence of child pornography of Victim 12 was discovered in "cached" data from one of Hernandez's cellular telephones that was recovered from his residence on August 3, 2017, the date of his arrest. Other data obtained from the phone will establish that the phone was used by Hernandez. This includes "selfie" photographs of Hernandez that were saved on the phone.

During an earlier examination of the cellular phone, Government agents had recovered nude images of the singer Rihanna that Hernandez had downloaded and sent to Victim 3, explaining to Victim 3 that she looked like Rihanna. This forensic data from the phone connected Hernandez to Victim 3.

After learning the identity of Victim 12, Government agents obtained an October 2014 police report that recorded Victim 12's mother reporting to police officers in Virginia that her daughter had shared nude photographs of herself via the online application KIK. Victim 12's mother then received threatening messages from a Facebook account "Color Red," demanding more nude images. Victim 12's brother received similar threatening and demanding messages from Facebook account "Color Red," but he did not believe the threats. In response, "Color Red" sent a nude image of Victim 12 to prove that he had the images. After Victim 12's mother confronted her, Victim 12 acknowledged that she had sent nude images to several individuals via KIK, but she had been sextorted by "Color Red" to send more images. One of the KIK accounts to whom Victim 12 sent her nude images was "Jimmy."

4

The Defendant's name is Buster Jimmy Hernandez, and his KIK profile uses the handle "Jimmy." Forensic data from the cell phone retrieved from Hernandez's residence reveals "selfies" of Hernandez and KIK application data showing Hernandez's face in the profile picture and his handle as "Jimmy."

The Government asserts that it has additional evidence to connect Hernandez to the "Color Red" Facebook account, which was used to sextort Victim 3 during the same time period Hernandez contacted Victim 12. Victim 3 received the nude images of Rihanna in November 2014 during the same time that Hernandez contacted Victim 12 via "Color Red," and the Rihanna images were recovered from the same cell phone seized from Hernandez's residence.

In addition, the Government alleges "Color Red" is connected via "cookie" data to Victim 4, and Victim 6 reported that she was first sextorted by "Color Red" in November 2014, the same time period when Victim 12 reported the "Color Red" sextortion to police in Virginia. Victim 12 told law enforcement in 2014 that there was another young girl who attended her middle school who was also receiving threats from "Color Red" via Facebook. Government agents have identified this additional potential victim and are attempting to establish contact.

The Government asserts that sometimes Hernandez tricked his victims into believing that he possessed sexually explicit images of them while other times he actually possessed sexually explicit images of the victims (such as with Victim 6 and now in the case of Victim 12). The Government argues that the "Color Red" account, the KIK "Jimmy" handle, the types of images he possessed of Victim 12, the methods he used to sextort Victim 12, and the forensic data connecting the cell phone to Hernandez and Victim 3 is critical to establishing identity and *modus operandi* in the Government's case.

The Government argues Hernandez's conduct was patterned and continuous, all during the same time period. Hernandez had bragged to his victims that he had done "this" to other victims and had not been caught. The cell phone containing evidence of Victim 12 was used during the

5

same time period of the charged offenses, and evidence obtained from the phone is connected directly to Victim 3, one of the charged victims.  The Government believes Hernandez will argue the Government was unable to recover images and videos of the charged victims, and that because there is an absence of such images and videos, the Government has failed to meet its burden.  However, the fact that Hernandez possessed other images that matched his age and gender of attraction of the victims in the charged offenses and that matched the types of images he obtained from them via sextortion, makes it more likely than not that Hernandez is guilty of the charged offenses.  Thus, the Government argues, the evidence is relevant and admissible.

The Government seeks admission of the uncharged conduct under Rule 404(b), arguing it will not be offered as improper propensity evidence but rather to show identity and *modus operandi*.  The Government asserts that the commonalities between the charged conduct and the uncharged conduct are substantial, and the proffered evidence regarding the victimization of Victim 12 helps prove that the person who was identified by the NIT sent through Victim 2's account is the same person who victimized the other charged victims.  Hernandez's signature language, methods of coercion, demand for specific images, incessant volume of communications, and threats to harm others constitute a *modus operandi*.

Responding to the Motion, Hernandez argues that this "eleventh hour" discovery of new evidence should not be permitted.  He asserts that character evidence is generally inadmissible under Rule 404, and evidence of other crimes or wrongs is admissible only if it is logically relevant to a proper purpose under Rule 404(b).  Hernandez argues that, while identity or *modus operandi* are proper purposes, the evidence the Government seeks to admit regarding Victim 12 is not relevant and is not of a nature that would clearly distinguish Hernandez from other criminals committing the same crime; thus, the evidence cannot support *modus operandi*.  The threatening

communications and demands for specifically posed images from Victim 12 do not show identity or *modus operandi*. Hernandez asserts that there has been no connection made between the "Color Red" Facebook account and Hernandez, so that evidence cannot support an identity argument. Hernandez further argues that the Government already intends to introduce evidence of uncharged victims, and adding another uncharged victim is unnecessarily cumulative and prejudicial.

The Government must prove the identity of the perpetrator. The Court agrees that Hernandez's conduct with uncharged Victim 12 is "part and parcel" with the criminal conduct with which he is charged. Evidence is direct when it "tend[s] to prove the elements of the offense . . . actually charged." *United States v. Vargas*, 689 F.3d 867, 874 (7th Cir. 2012). Accordingly, the Victim 12 evidence is admissible, direct evidence.

However, even under Rule 404(b), the Court finds this evidence is admissible under the four prong test. The evidence is directed toward establishing identity – a matter at issue other than propensity. The central issue at trial will be identity, the evidence of uncharged conduct related to Victim 12 is relevant and admissible as it tends to prove the identity of the perpetrator of the charged offenses. In particular, the Government has proffered the "Victim 12 evidence" directed toward establishing identity. This is particularly true of the "selfie" photographs, KIK application data, and images of Victim 12, which were extracted from the cell phone seized from Hernandez's residence. In addition, the prior acts are similar enough and close enough in time to be relevant to the matters at issue in this trial. The evidence is sufficient to support a jury possibly finding that Hernandez committed the acts. As to the final prong, the Seventh Circuit has directed that district courts must assess whether the probative value of the "other act" evidence is substantially outweighed by the risk of unfair prejudice, and courts may exclude the evidence under Rule 403 if the risk of unfair prejudice is too great. *United States v. Gomez*, 763 F.3d 845, 856–60 (7th Cir.

2014). The Court finds the probative value of the proffered evidence is not substantially outweighed by the danger of unfair prejudice.

### III. CONCLUSION

Outside the context of trial, the Court cannot conclude that the proffered evidence is unfairly prejudicial as it appears the evidence will be very similar in nature to the evidence that will be introduced concerning the charged conduct and will support the Government's burden of proving identity. For the reasons stated above, the Court **GRANTS** the Government's Motion *in Limine* ([Filing No. 111](); [Filing No. 117]()) and will allow evidence to be introduced concerning Victim 12. An order *in limine* is not a final, appealable order. If the parties believe that specific evidence is inadmissible during the course of the trial, counsel may raise specific objections to that evidence.

**SO ORDERED.**

Date: 1/31/2020

*[Signature]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Mario Garcia
BRATTAIN MINNIX GARCIA
mario@bmgindy.com

Kristina M. Korobov
UNITED STATES ATTORNEY'S OFFICE
kristina.korobov@usdoj.gov

Tiffany Jacqueline Preston
UNITED STATES ATTORNEY'S OFFICE
tiffany.preston@usdoj.gov