UNITED STATES DISTRICT COURT.
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Cause No. |
| Plaintiff, | ) 1:17-cr-0183-TWP-TAB |
| | ) Indianapolis, Indiana |
| vs. | ) **January 21, 2020** |
| | ) 10:05 a.m. |
| BUSTER HERNANDEZ, | ) |
| | ) **EXCERPT (REDACTED)** |
| Defendant. | ) |

**Before the Honorable**
**TANYA WALTON PRATT**

OFFICIAL REPORTER'S TRANSCRIPT OF
EXCERPT OF FINAL PRETRIAL CONFERENCE

**For Plaintiff:**          Tiffany Jacqueline Preston, Esq.
                           Kristina M. Korobov, Esq.
                           Assistant U.S. Attorneys
                           United States Attorney's Office
                           Suite 2100
                           10 West Market Street
                           Indianapolis, IN  46204

**For Defendant:**          Mario Garcia, Esq.
                           Brattain Minnix Garcia
                           Suite 760
                           151 North Delaware
                           Indianapolis, IN  46204

Court Reporter:            David W. Moxley, RMR, CRR, CMRS
                           United States District Court
                           46 East Ohio Street, Room 340
                           Indianapolis, Indiana  46204

PROCEEDINGS TAKEN BY MACHINE SHORTHAND
TRANSCRIPT CREATED BY COMPUTER-AIDED TRANSCRIPTION

2

1               (In open court.)

2          THE COURT:  Good morning.  We are on the record.

3  This is the United States of America versus Buster Hernandez,

4  our case number is 1:17-cr-183, and we are here this morning

5  for a final pretrial conference.  We are scheduled for trial

6  by jury to begin on Monday, February 10th, 2020.

7          Mr. Hernandez is charged with several counts.  Let's

8  see, there are eight counts of sexual exploitation of a child;

9  three counts of coercion and enticement of a minor; six counts

10  of distributing and receiving child pornography; four counts

11  of threats to use explosive devices in violation of a federal

12  statute; one count of threats and extortion; ten counts of

13  threats to kill, kidnap, and injure; and six counts of witness

14  tampering; one count of obstruction of justice; and two counts

15  of retaliating against a witness or victim.

16          So we'll begin, lawyers, by having you state your

17  name and introduce those at your table, beginning with the

18  government's table.

19          MS. PRESTON:  Good morning, Your Honor.  Tiffany

20  Preston and Kristina Korobov on behalf of the United States.

21  With us today are the case agents from the Federal Bureau of

22  Investigation, and their names are Special Agent Andrew

23  Willmann and Special Agent Ryan Barrett.

24          THE COURT:  Good morning.

25          MR. WILLMANN:  Good morning, Your Honor.

3

1          MS. KOROBOV:  Good morning.

2          MR. GARCIA:  Good morning, Your Honor.  Mario Garcia

3    for the defendant, who is seated to my left, Buster Hernandez.

4          THE COURT:  Good morning.

5          All right, lawyers, first of all, we're currently

6    scheduled for a two-week trial, and we'll confirm that once

7    we've gone through the witness list to see exactly who will

8    testify.

9          We're going to follow the order in the Court's

10   Courtroom Practices and Procedures for today's hearing, so the

11   first thing we're going to talk about are the government's

12   witness list.  And your witness list is at docket 72.

13         MS. PRESTON:  Yes, Your Honor.

14         THE COURT:  So we're going to go through that list,

15   Counsel, and I need you to tell me exactly which witness will

16   testify and the nature of their testimony.  And you start with

17   the victims.  Have you identified their names?

18         MS. PRESTON:  Yes, Your Honor.  We filed under seal

19   a chart so that, both for appellate reasons as well as the

20   Court, that the real names and identities of the victims in

21   this case are provided.  We will be referring them -- to them,

22   excuse me, during the proceedings by their first name only.

23         THE COURT:  Okay.

24         MS. PRESTON:  And I can go down each victim if Your

25   Honor would like at this time.

4

1         THE COURT:  Yes.  And that's at -- the sealed

2    document is 89, and so 89 at page 4 are the names.  So if you

3    would start with Victim 1.

4         MS. PRESTON:  Yes, Your Honor.  Victim 1 has been

5    the subject of many of the charged offenses, in fact most of

6    them.  She will be referred to her first -- by her first name,

7    XXXXXX, and will be called to testify during the first week of

8    trial about her victimization in this case.

9         THE COURT:  All right.  Victim 2?

10        MS. PRESTON:  Victim 2, first name XXXXX, will be

11   called to testify about her victimization in this case and her

12   agreement to allow the FBI agents to operate through her

13   account in an undercover capacity, which is what allowed the

14   United States and the FBI to identify this defendant, Buster

15   Hernandez, through a network investigative technique.

16        THE COURT:  And are all of these victims now adults?

17        MS. PRESTON:  Yes.

18        THE COURT:  Okay.

19        MS. PRESTON:  Victim 3, first name "XXXX," will

20   testify about her victimization in this case.  She is the

21   subject matter of Count 22.

22        Victims 4, 5, and 6 we also identified by their

23   first names.  And, again, they are subject matters of the

24   charged offenses in this case and will also testify about

25   their victimization.

5

1            THE COURT:  Which counts, XXXXX?

2            MS. PRESTON:  Yes, and XXXXXX and XXXXXXXXX.

3            THE COURT:  All right.  XXXXX is Victim 4,

4    XXXXXXXXX is Victim 5?

5            MS. PRESTON:  Yes.

6            THE COURT:  And XXXXXX is Victim 6?

7            MS. PRESTON:  Yes.

8            THE COURT:  And what counts do they refer to?

9            MS. PRESTON:  One minute, Your Honor.

10           So Victim 4 is set forth in Counts 6 and 7, as

11   well as Count 10, as well as Counts 14 and 15 --

12           THE COURT:  Okay.

13           MS. PRESTON:  -- as well as Count 35.

14           Victim -- I'm sorry, Your Honor.   Victim 5 is the

15   subject matter of Count 8.  She is the subject matter of

16   Count 11.  She is the subject matter of Count -- let me make

17   sure I'm not missing her -- 36.

18           Victim 6, Your Honor --

19           THE COURT:  XXXXXX?

20           MS. PRESTON:  Yes, Your Honor.

21           THE COURT:  Okay.

22           MS. PRESTON:  She is not the subject matter of any

23   of the production counts nor of coercion and enticement.  She

24   is, however, the subject matter of Counts 16 and 17,

25   distribution and receipt of child pornography.

6

1                THE COURT:  Okay.

2                MS. PRESTON:  She is also the subject matter of

3    Count 37.

4                THE COURT:  Let's go back to XXXXXX, as Victim 1.

5    Is she the victim of which counts?

6                MS. PRESTON:  She is the subject matter of Counts 1

7    through 5, the subject matter of Count 9, the subject matter

8    of Counts 12 and 13.  She was part of the threats included to

9    use explosive devices at her school in Counts 18 through 21.

10   She is -- so the subject matter of Counts 23, 24, 25, 26, 27,

11   28, 29, 30, 31 -- and 31.  And, really, in 32, as well, Your

12   Honor, because it was her school board member.

13               THE COURT:  Okay.

14               MS. PRESTON:  I'm sorry.  She's also the subject

15   matter of Count 33, 40 -- and 40.

16               THE COURT:  What's the last one?

17               MS. PRESTON:  The last one?  I'm sorry.  40, Your

18   Honor.

19               THE COURT:  40, okay.  All right.  And XXXXX?

20               MS. PRESTON:  She is not the subject matter of any

21   specific counts in the indictment.  She was the NIT -- NIT

22   victim in this case whose identity and video were uploaded

23   using that network investigative technique.  She is located

24   in -- or was located in Michigan.

25               THE COURT:  Okay.  All right, Your Victim 7, that

1  is XXXXXX?

2          MS. PRESTON:  Yes, Your Honor.  That is Victim 1's

3  mother.  She is the subject matter of Count 23.  She is also

4  going to identify her child, Victim 8, who is Victim 1's

5  sister.  And Victim 8 is the subject matter of Count 24.

6  They are also the subject matter of Counts 38 and 41.

7          THE COURT:  All right.  So Count -- Victim 8 is

8  XXXXX, and she is in Counts 24 --

9          MS. PRESTON:  Uh-huh.

10         THE COURT:  -- 38 and 41?

11         MS. PRESTON:  Yes, Your Honor.  I'm sorry.  No.

12  Victim 8 is in 24 --

13         THE COURT:  Uh-huh.

14         MS. PRESTON:  -- and that is it for Victim 8.

15  Victim 7 is the subject matter of Counts 23, 24, 38, and 41.

16         THE COURT:  Okay.  And what is the mother going to

17  say?

18         MS. PRESTON:  The mother will testify that she

19  received certain threats from the defendant, Buster Hernandez,

20  not only to kill and injure her, meaning Victim 7, but also

21  her family members, including Victim 1 and Victim 8.  Your

22  Honor, at this time, because both Victim 1 and Victim 7

23  can readily identify Victim 8, the sister, XXXXX, we will

24  not be calling Victim 8 at this time.

25         THE COURT:  Okay.  Very good.

8

1           MS. PRESTON:  She is a -- I believe she is still a

2   minor, so we will not be calling her.

3           THE COURT:  All right.  Victim 9 is XXXXX?

4           MS. PRESTON:  Yes.  Victim 9 is XXXXX, Your Honor,

5   and he is the subject matter of Count 28.  At the time of the

6   alleged offenses when the defendant threatened to bomb Victim

7   1's school --

8           THE COURT:  Which school?

9           MS. PRESTON:  Plainfield High School, Your Honor.

10          THE COURT:  Okay.

11          MS. PRESTON:  -- Victim 9 was in a dating

12  relationship with Victim 1.  Victim 9 was specifically

13  mentioned by the defendant as being someone he wanted to kill,

14  injure, or kidnap, which is why he is the subject matter of

15  Count 28.

16          With respect to Victim 9, Your Honor, we do not

17  intend to call XXXXX at this time as a witness, because both

18  Victims 1 and 7 can identify him as being Victim 9 and the

19  person who is directly referenced in the defendant's posts

20  about killing Victim 9 and blowing up Victim 9 and Victim

21  1's school.

22          THE COURT:  So you'll just have what, a photograph?

23          MS. PRESTON:  Yes, ma'am.

24          THE COURT:  Okay.  All right.  Victim 10 is XXXX

25  XXXXXXX?

9

1          MS. PRESTON:  Yes, Your Honor.  He will be called to

2    testify, and is the subject matter of Count 32.

3          THE COURT:  And what will he testify about?

4          MS. PRESTON:  He will testify that during the time

5    period relevant in this case, that he was -- he received a

6    direct e-mail message from an account we can tie to the

7    defendant.  In that e-mail message, the defendant threatened

8    to kill XXXXXXXXXXX and XXXXXXXXXXX's wife.  He will further

9    testify that he was a board member and that his e-mail and his

10   wife's identity were publicly disclosed information.

11         THE COURT:  Victim 11 -- yeah, XXXXX XXXXXX -- I'm

12   sorry --

13         MS. PRESTON:  Yes, XXXXX.  Yes, Your Honor.  XXXXX

14   is another one of Buster Hernandez's victims.  At the time he

15   began victimizing her, she was a child.  She is now an adult.

16   She will also testify about the defendant's specific use of

17   threats against her, her production of child pornography as a

18   result.  And she will be able to identify specific messages

19   where the defendant truthfully told her information about

20   himself that was true, for example, that he was located in

21   California.

22         THE COURT:  All right.  And then you've got -- and

23   then you say Victim 2's mother?

24         MS. PRESTON:  Yes, Your Honor.  Victim 2's mother

25   resided at the time in Michigan and received, both before and

10

1 after the NIT was used, direct threats to herself as well as

2 to Victim 2's other family members, including Victim 2's

3 younger sisters and younger brother.  She will identify the

4 members of her family and identify what occurred both before

5 and after the NIT was used in this case.

6         THE COURT:  So what counts does that go to?

7         MS. PRESTON:  They do not go to counts, Your Honor.

8 They go to identity, similar with Victim 2.  She is located

9 in Michigan.

10         THE COURT:  But Victim 2 will be here?

11         MS. PRESTON:  Yes, Your Honor, she will.

12         THE COURT:  All right.  And what about Victim 2's

13 father?

14         MS. PRESTON:  He is on our witness list, Your Honor,

15 at this time, because he, too, is the subject matter of

16 certain threats, just as was the mother.  However, I don't

17 anticipate calling him as a witness at trial.

18         THE COURT:  All right.  All right.  Then you have

19 the Plainfield principal, XXXXXX XXXXXX.  What will be the

20 nature of his testimony?

21         MS. PRESTON:  XXXXXX XXXXXX was working as

22 Plainfield's principal at the time that the defendant

23 threatened to bomb Plainfield High School, Victim 1's and

24 Victim 9's high school, and to kill the occupants inside of

25 it, including the students.  XXXXXXXXXX will confirm that the

11

1  Plainfield High School is in the Southern District of Indiana

2  and that he was part of the decision-making process to close

3  that school as a result of the threats they received.

4  Those -- that count relates to Count 18 of the superceding

5  indictment, Your Honor --

6              THE COURT:  Okay.

7              MS. PRESTON:  -- as well as Count 26.

8              THE COURT:  The Danville superintendent,

9  XXXXXXXXXXX?

10             MS. PRESTON:  Similarly, Your Honor, when XXXXXXXXXX

11  and others decided to close Plainfield High School as a result

12  of the defendant's threats, the defendant posted a threat as

13  to Danville High School, which was the neighboring high

14  school, saying that, "Now that Plainfield is closed, I'll just

15  go ahead and bomb Danville High School."  XXXXXXXXXXX will

16  confirm that they received those threats and, as a result,

17  closed Danville High School.

18             THE COURT:  Okay.  Detective Jeff Stevens?

19             MS. PRESTON:  If called to testify, Mr. Stevens will

20  confirm the closings of Walmart and The Shops of Perry

21  Crossing.  He was a detective in Plainfield Police Department

22  at the time and was involved in the decisions to close those

23  locations, which are the subject matter of Counts 20 and 21 of

24  the superceding indictment --

25             THE COURT:  And --

 1          MS. PRESTON:  -- as well as, I'm sorry, Your Honor,

 2   Counts 29 and 30, because when the defendant threatened to

 3   bomb those facilities, he also threatened their patrons.  And

 4   he will testify regarding that, as well, and identify those

 5   locations.

 6          THE COURT:  Okay.  So 20 and 21, threats to use

 7   explosive devices at the Walmart and The Shops of Perry

 8   Crossing?

 9          MS. PRESTON:  Yes, Your Honor.

10          THE COURT:  All right.  Now --

11          MS. PRESTON:  I'm sorry.  And 29 and 32, Your Honor.

12          THE COURT:  29 --

13          MS. PRESTON:  I'm sorry.  29 and 30.  Excuse me.  29

14   and 30.

15          THE COURT:  He was to kill, kidnap, and injure the

16   patrons?

17          MS. PRESTON:  Yes, Your Honor.

18          THE COURT:  And 30 is the same count, okay.

19          All right, Sergeant Nathan Nolan?

20          MS. PRESTON:  If called to testify, Mr. Nolan will

21   say that when Victim 1's mother discovered that Victim 1

22   had been a victim of sextortion for years of the defendant,

23   Victim 1's mother reached out to law enforcement.  And that

24   was, of course, the closest people to her, and that was

25   Sergeant Nathan Nolan.  And that subsequent to that, Mr. Nolan

13

1  began using those accounts to communicate with the defendant

2  in an effort to stop him from continuing his threats to kill,

3  injure, and kidnap.

4          That relates to not only the victimization of

5  Victim 1, but also the threats to kill, injure, and kidnap

6  Victims 7, 8, 9, 10, as well as the closing of Plainfield

7  High School, Your Honor.

8          THE COURT:  Okay.  You have a witness, Shops at

9  Perry Crossing Mall?

10         MS. PRESTON:  Your Honor, I believe that we'll be

11 able to lay the appropriate amount of evidence through the

12 witnesses I've already mentioned, so at this time we do not

13 intend to call witnesses at The Shops of Perry Crossing or the

14 movie theater or Walmart, who worked there at the time, to

15 verify that they were indeed closed.  We believe that the

16 detectives can do that.

17         THE COURT:  Okay.  And Special Agent Andrew Willmann

18 from the FBI?

19         MS. PRESTON:  Yes, Your Honor.  He is one of the

20 case agents.  He is sitting to my left.  He will be called

21 throughout the trial for a couple of reasons.  First, to lay

22 out the investigation in this case as a whole in order to give

23 the jury an idea, at the beginning of the case, the types of

24 evidence they will see, and to admit some of that evidence.

25 He will also testify as to the analysis he did of the many

14

1  accounts that we have connected to the defendant, to the

2  defendant's arrest, with which he was a direct participant,

3  and to the length, the amount of time he has analyzed the data

4  in this case.

5         In addition to that, Your Honor, because, as we'll

6  discuss later, we don't wish to introduce the images and

7  videos of child pornography through the victims themselves

8  while they are on the stand, Special Agent Willmann will

9  testify at some point during the trial to their identification

10  of themselves in these marked images that will be in a sealed

11  transcript binder or an envelope.

12         THE COURT:  Do you have any objection to that

13  process, Mr. Garcia?

14         MR. GARCIA:  No.  We've discussed it, Your Honor.

15         THE COURT:  Okay.  All right.

16         MS. PRESTON:  We will ask permission, because he is

17  the case agent, for Special Agent Willmann to sit with us

18  throughout the duration of the trial, even though he will be

19  called a few times as a witness during the trial.

20         THE COURT:  Do you have any objection to that

21  process, Mr. Garcia?

22         MR. GARCIA:  We would object for the record, Your

23  Honor, but I understand that that's standard protocol.

24         THE COURT:  Are you going to have Agent Barrett also

25  be an assisting witness?

1          MS. PRESTON:  Yes, Your Honor.  He is the co-case

2   agent in this case and has been involved since its inception,

3   as well.  He will only be called once during this trial, Your

4   Honor, and he will be admitting certain evidence, such as pole

5   cam -- pole camera surveillance evidence, as well as the

6   introduction of the events that took place leading up to the

7   defendant's arrest and during the defendant's arrest.

8          THE COURT:  Do you object to Agent Barrett remaining

9   in the courtroom as an assisting witness and as an evidentiary

10  witness?

11         MR. GARCIA:  We'd object to that, as well, Your

12  Honor.

13         THE COURT:  All right.  Over the defendant's

14  objection, the Court will allow Special Agent Willmann and

15  Special Agent Barrett to remain in the courtroom as assisting

16  witnesses.

17         MS. PRESTON:  Thank you, Your Honor.

18         THE COURT:  Okay.  And we can admonish them not to

19  discuss their testimony with the other witnesses.  So they'll

20  do that.  Okay.

21         MS. PRESTON:  Thank you, Your Honor.

22         THE COURT:  All right.  And then you have Jonathan

23  Sweeney from the FBI?

24         MS. PRESTON:  Yes, Your Honor.  He is a computer

25  scientist and has been disclosed as an expert, timely

1  disclosed as an expert, in this case.  And he will be

2  testifying to his opinions regarding several matters,

3  including the defendant's encryption of his devices and the

4  network investigative technique that was used to link the

5  defendant directly to Victim 2 and revealed his true IP

6  address at the defendant's residence.

7        THE COURT:  Do you have any pretrial objections to

8  the expert's qualifications?  We know that on the stand, he'll

9  have to testify regarding his qualifications, but do you have

10 any pretrial objections?

11       MR. GARCIA:  No.

12       THE COURT:  Okay.  Very good.

13       All right, Colonel Richard Hendricks?

14       MS. PRESTON:  He will testify, Your Honor, that the

15 defendant was housed with particular inmates to whom he made

16 various admissions.  He will also testify to a search of the

17 defendant's jail cell in which we recovered several items that

18 are disclosed as evidence, including poems that the defendant

19 wrote in which he admitted to the charged offenses, which is

20 the government's theory.

21       THE COURT:  Okay.  So which -- which jail is he

22 with?

23       MS. PRESTON:  Right now he is in the Henderson

24 County Jail, and that is where Colonel Richard Hendricks is

25 employed.

1           THE COURT:  Okay.  All right.  Your next witness?

2           MS. PRESTON:  Special Agents Jack Shiner and Brian

3    M. Mine -- Myers, excuse me, were the arresting -- or, excuse

4    me, some of the arresting agents in this case.  They will

5    testify about their participation in the defendant's arrest.

6    And what they will say is, upon entry into the defendant's

7    home, they were responsible for not only securing the

8    defendant, but attempting to secure the very volatile evidence

9    that they knew would be in the defendant's room.  They will

10   say that when they entered the defendant's room, that he was

11   in possession of a specific laptop that was used to commit

12   these offenses, Your Honor, and that they secured that

13   evidence and the defendant.

14          They will also testify, as disclosed to the defense,

15   what they saw on that laptop as they arrested the defendant.

16   And that is very important in this case, Your Honor, because

17   it was the unique operating software that we knew the

18   defendant was using, because it was what was exploited by the

19   network investigative technique.  That is called TAILS, the

20   TAILS operating software.

21          THE COURT:  Okay.  All right.  So that's Shiner and

22   Myers?

23          MS. PRESTON:  Shiner and Myers, yes, Your Honor.

24          THE COURT:  What about Special Agent Kevin

25   Schneider?

1          MS. PRESTON:  Based on the defendant's stipulation

2    in this case, we do not intend to call Kevin Schneider at this

3    time.  It was -- his testimony was going to be used purely for

4    the admission of the devices that were collected at the

5    residence.  The defendant has since stipulated that those

6    items were properly placed into evidence and that the chain of

7    custody had been met.

8          THE COURT:  All right.  Captain Jennifer Barrett?

9          MS. PRESTON:  She will not be called as a witness in

10   this case, Your Honor, for -- as a result of that stipulation

11   and others.

12         THE COURT:  Sergeant Christopher Cecil?

13         MS. PRESTON:  He will be called and was disclosed

14   timely as an expert in this case, Your Honor.  Sergeant Cecil

15   is a forensic analyst and examined several of the important

16   items of evidence that were seized directly from the defendant

17   at his residence.

18         THE COURT:  Okay.  Sergeant Jennifer Barnes?

19         MS. PRESTON:  She will also be called and was timely

20   disclosed as an expert in this case.  She, too, will testify,

21   as disclosed in her expert report, that she forensically

22   examined several items that were collected from the defendant

23   upon his arrest.

24         She will also talk about the use of Facebook machine

25   cookies, as disclosed in our expert disclosure of her, and

19

1    what those Facebook machine cookies are, namely that they are

2    bits of text that when you use a Facebook account, we can use

3    those bits of text to directly connect those accounts to the

4    defendant himself.  And that is part of our evidence, that it

5    is the defendant who was behind the use of all of these

6    accounts in this case, Your Honor.

7              THE COURT:  Detective Jeff Catt?

8              MS. PRESTON:  Detective Jeff Catt also did a

9    forensic analysis of items collected by the defendant on

10   August 3rd, 2017.

11             THE COURT:  He's an expert, also?

12             MS. PRESTON:  Yes, Your Honor, as disclosed.

13             THE COURT:  Jonathan Sweeney?

14             MS. PRESTON:  I'm sorry.  He was in there twice, so

15   we will correct that.

16             THE COURT:  Okay.

17             MS. PRESTON:  He is a computer scientist, Your

18   Honor.

19             THE COURT:  Oh, okay.  Jonathan Sweeney?

20             MS. PRESTON:  He is the computer scientist we spoke

21   about earlier.  I just have his name in there twice.  I

22   apologize.

23             THE COURT:  Okay.

24             MS. PRESTON:  I'll correct that before trial.

25             THE COURT:  Jared Barnhart?

20

1          MS. PRESTON:  He is also disclosed as an expert and

2     was an on-scene forensic triage analyst at the time of the

3     defendant's arrest.

4          THE COURT:  Special Agent Michael Easter?

5          MS. PRESTON:  The remainder, the balance of all of

6     those names on the witness list, Your Honor, because of

7     stipulation, will not be called to testify.  So, to be clear,

8     Special Agent Michael Easter, Special Agent Kevin Horan,

9     Special Agents Duane Jackson, Nancy Shroka, Matthew Montana,

10    Elizabeth Watson, Damarys Tellado, Andrew Kanetzke, and David

11    Hunter, they are all out-of-state FBI agents and, because of

12    the defendant's stipulations, will not be called to testify in

13    this case.

14         THE COURT:  Very good.  You have XXXXXX XXXXXXX?

15         MS. PRESTON:  Yes, Your Honor.  XXXXXX XXXXXXX was

16    the defendant's girlfriend -- still is the defendant's

17    girlfriend -- at the time of his arrest and resided with him

18    on Eucalyptus.  She will testify -- and we are trying to

19    locate her, Your Honor -- as to what areas of the house they

20    occupied, the use of certain devices, who else was an occupant

21    of that house, her relationship with the defendant, his level

22    of computer expertise, and to other matters germane to

23    identification of the defendant and his devices.

24         Your Honor, I should note for the record that we

25    have been in the process of making several attempts to serve

1  Ms. XXXXXXX with a second trial subpoena.  She was served last

2  year when this case was set to go to trial in the spring.  We

3  have been contacting her over and over.  She has not

4  responded, so we have dispatched California-based agents to

5  make proper service and to make sure that Ms. XXXXXXX knows

6  that if she fails to appear, we will be filing a material

7  witness warrant.

8          THE COURT:  Okay.

9          MR. GARCIA:  Your Honor, just also for the record,

10  Ms. XXXXXXX contacted me last week and inquired if I knew why

11  agents were calling her.  I told her I couldn't discuss the

12  matter as I believe, as is evidenced from the witness list,

13  that she is a witness, and told her to seek her own counsel to

14  discuss it.  I promptly notified the government of that

15  contact.

16          THE COURT:  All right.  So she is around, because

17  you talked to her last week?

18          MR. GARCIA:  I talked to her by phone, yes.

19          THE COURT:  Okay.

20          MS. PRESTON:  And Mr. Garcia did timely disclose

21  that to us.  We actually, I believe, did get in contact once

22  with Ms. XXXXXXX and let her know that we were in the process

23  of doing this.  It's just that our attempt to follow up on

24  that conversation with her, she has since sent us into

25  voicemail.  So she does know that she's been subpoenaed, she

22

1  does know that we've been trying to contact her to arrange for

2  her to come to Indianapolis.  It's -- we just haven't been

3  able to get in touch with her since that initial conversation,

4  so --

5          THE COURT:  Okay.  Well, you've got several weeks --

6          MS. PRESTON:  We do.

7          THE COURT:  -- so I'm sure you'll get her.

8          MS. PRESTON:  Yes, Your Honor.

9          THE COURT:  All right.  XXXXXXXXXXXXXXXXXXX  Who is

10  this person?

11          MS. PRESTON:  We do not intend to call XXXXX

12  XXXXXXXXXXXXXX, or XXXXXXXXXXXXXXXXXX, XXXXXX XXXXXX, or

13  XXXXX XXXXXX.  They are relatives of the defendant.  Because

14  of his agreement that he does not intend to blame his criminal

15  offenses on any members of his family and has stipulated to

16  that, we do not intend to call them as witnesses now.

17          If he does change his mind and asserts that defense,

18  then they are certainly -- they certainly qualify as rebuttal

19  witnesses.  But Mr. Garcia was kind enough to work that out in

20  advance, because they are from Bakersfield, so getting them

21  here requires some advance notice.

22          THE COURT:  Is that correct, Mr. Garcia?

23          MR. GARCIA:  That's correct.

24          THE COURT:  You do not intend to assert that any of

25  these persons are the perpetrator of any of these criminal

23

1  offenses charged?

2          MR. GARCIA:  Correct.

3          THE COURT:  Okay.  All righty.  You've got some --

4  cooperating witness number 1.

5          MS. PRESTON:  Yes, Your Honor.  We do intend to call

6  cooperating witness number 1, whose identity has been

7  disclosed to the defense.  He was an inmate with the

8  defendant, and the defendant admitted to him his participation

9  in these offenses.

10          THE COURT:  Now, which -- which one is that?

11  Because they're all in -- these names -- are these one of the

12  names that are in the motions in limine?

13          MS. PRESTON:  I believe that we --

14          THE COURT:  There are some people in there --

15          MS. PRESTON:  There are XXX, I believe -- is that

16  how you referred to him, Mr. Garcia?

17          THE COURT:  He referred to him by his actual name.

18          MS. PRESTON:  Okay.

19          MR. GARCIA:  His name.

20          THE COURT:  But -- so there's no secret --

21          MS. PRESTON:  There's no secret now --

22          THE COURT:  -- because it's on the docket.

23          MS. PRESTON:  They are in the docket.  And

24  cooperating witness 1, his initials are XXXX, last name, the

25  first name XXXXXXX.

24

1              THE COURT:  All right.  And what's he going to talk

2    about?

3              MS. PRESTON:  He's going to talk about several

4    conversations that he had with the defendant, about the

5    defendant's admissions to these crimes to him, as well as the

6    defendant's choice to tattoo his neck, as Your Honor can

7    observe today, and that the purpose of tattooing his neck with

8    the initials "B.K." was to do what he has done in this case,

9    both during the investigation and after, which is to taunt law

10   enforcement.

11             "B.K.," it's our theory that he put that on his neck

12   because he is Brian Kil, the person who committed many of the

13   charged offenses.  And I should say that this defendant

14   obtained that tattoo while incarcerated.

15             THE COURT:  Okay.  And the Court has ruled on that.

16   The motions in limine, most of them we have a ruling on.

17   There's --

18             Are they docketed?

19             (Off the record.)

20             THE COURT:  Okay.  So they've been docketed, and the

21   surplusage also has been docketed.  And we're going to take a

22   break after we do witnesses and exhibits so that you guys can

23   look at those, the rulings; okay?

24             MS. PRESTON:  Yes, Your Honor.

25             THE COURT:  All right.  And then cooperating witness

25

1  number 2.  Who is -- which one is this?

2          MS. PRESTON:  That is Mr. XXXXXXXXXX, and I'll have

3  Ms. Korobov discuss Mr. XXXXXXXXXX.

4          THE COURT:  Okay.

5          MS. KOROBOV:  Your Honor, Mr. XXXXXXXXXX will, if

6  called to testify -- and we're making a determination as to

7  whether he will be called.  He may not be needed based on the

8  information that he has to provide, which is pretty limited.

9  But he would indicate that in his conversations with the

10 defendant, they were locked up together, that the defendant

11 expressed a sophisticated knowledge of computers, that he

12 talked about having a lot of money, and that he had

13 blackmailed people for money, and that he had victims all

14 over.

15         Other than that, I don't -- to Special Agent

16 Willmann.

17         He also -- he is the one who actually drew out the

18 tattoo in this case, and so he would testify that it was not

19 the defendant who asked him to draw the tattoo, but rather the

20 individual who actually put the tattoo on the defendant's

21 neck.  So a man named Austin Cates, who is also locked up with

22 the defendant, is the one who did the tattoo.  And so the

23 defendant wrote out what it is that he wanted tattooed on him.

24 Austin Cates is the tattoo artist, sought some guidance as to

25 different kinds of scripts or fonts to use, and Mr. XXXXXXXXXX

1  did that.

2  And then Mr. XXXXXXXXXX could also testify about the

3  defendant's admissions that he had evidence that was encrypted

4  somewhere on a hard drive and that we would not be able to get

5  into it.

6  THE COURT:  Okay.  All right.  Cooperating witness

7  3?

8  MS. PRESTON:  Your Honor, we do not at this time

9  intend to call cooperating witness 3.

10  THE COURT:  All right.  XXXXXX XXXXXXX and XXXXX

11  XXXXXXX?

12  MS. PRESTON:  Your Honor, we believe that we will

13  not -- they will remain on the witness list as of today, but,

14  in writing, Mr. Garcia has confirmed that their defense will

15  not include pointing to either of the XXXXXXXX or the XXXXX,

16  who were Mr. Hernandez's immediate neighbors to the east and

17  to the west of his residence, that he will not be articulating

18  as a defense that it was any of the XXXXX or the XXXXXXXX who

19  committed these offenses.

20  They are from Bakersfield, California.  So, again,

21  we've been attempting to resolve this matter well in advance

22  of trial.  We have presented Mr. Garcia with a factual

23  stipulation as to what they would testify to if called, but he

24  is considering it at this time.  I'd like to keep them on the

25  witness list for now, but my expectation is that we will not

1  be calling them as witnesses.

2          THE COURT:  And, Mr. Garcia, you do not intend to,

3  as part of your defense, assert that either of the XXXXXXXX or

4  the three XXXXX were the perpetrators; is that correct?

5          MR. GARCIA:  That's correct, Your Honor.

6          THE COURT:  Okay.  All right.  Hushmail business

7  records custodian.

8          MS. PRESTON:  Your Honor, we will not be calling any

9  of the business record custodians, because as of this morning,

10  the defense has stipulated as to their testimony in this case,

11  Your Honor, and we will file that stipulation immediately

12  after court.

13          And in short, Your Honor, they would testify that

14  Government's Exhibits 1 through 99 were authentic records

15  generated by an electronic process or system that produced an

16  accurate result under Federal Rule of Evidence 902(13).  So,

17  in essence, the defense has indicated -- does not attempt --

18  it is not intending to say these weren't Facebook records,

19  that these weren't generated as a result of a reliable

20  electronic process, that, indeed, law enforcement officers

21  requested them pursuant to lawful process, and they returned a

22  result that was reliable and compliant with that.  With that,

23  we don't think we will need to call any of those

24  representatives or those witnesses, and so greatly shortening

25  our witness list.

1          THE COURT:  So that's 56 through 66; correct?

2   They're all excluded?  You're not going to call any of them?

3          MS. PRESTON:  Yes, Your Honor.

4          THE COURT:  Very good.  Okay.  Thank you,

5   Government.

6          MS. PRESTON:  Thank you, Your Honor.

7          THE COURT:  That concludes your witness --

8          MS. PRESTON:  Yes, Your Honor.

9          THE COURT:  All right.  Defendant's witness list.

10  You've only named your client, who may or may not testify.

11  You have no other witnesses?

12         MR. GARCIA:  There's one possible other witness,

13  other than the defendant, who would be called for purposes of

14  rebuttal.  I've briefly discussed that with the government.

15  And that is, I believe, the individual named Cates.  Yeah,

16  Cates.  But I need to talk to the government a little bit

17  further about that.

18         THE COURT:  Is that the prisoner?

19         MR. GARCIA:  That's the individual who the

20  government, I believe, will have testify, or may testify,

21  about the inking of the tattoo, the actual person that did the

22  tattoo.

23         THE COURT:  Okay.  The tattoo artist?

24         MR. GARCIA:  Right.  No other witnesses.

25         THE COURT:  Okay.  All right.  Okay, lawyers, let's

29

1  go through your exhibit lists.  The government's last exhibit

2  list is 96?

3          MS. PRESTON:  Yes, Your Honor.

4                        * * *

5                    END OF EXCERPT

6                        * * *

7          (Proceedings adjourned at 11:36 a.m.)

8

9              CERTIFICATE OF COURT REPORTER

10

11     I, David W. Moxley, hereby certify that the

12  foregoing is a true and correct copy of the

13  transcript originally filed with the clerk of court

14  on January 28, 2020, and incorporating redactions of

15  personal identifiers requested by the following

16  attorney of record: Tiffany J. Preston, in

17  accordance with Judicial Conference.  Redacted

18  characters appear as X's in the transcript.

19

20

21  /S/ David W. Moxley              April 27, 2020

22  DAVID W. MOXLEY, RMR/CRR/CMRS
    Official Court Reporter
23  Southern District of Indiana
    Indianapolis Division
24

25