UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Cause No. |
| Plaintiff, | ) | 1:17-cr-0183-TWP-TAB-01 |
| | ) | Indianapolis, Indiana |
| vs. | ) | **February 6, 2020** |
| | ) | 4:05 a.m. |
| BUSTER HERNANDEZ | ) | |
| a/k/a BRIAN KIL | ) | |
| a/k/a BRIANNA KILLIAN | ) | |
| a/k/a BRIAN MIL | ) | |
| a/k/a GREG MARTAIN | ) | |
| a/k/a PURGE OF MAINE | ) | |
| a/k/a UYGT9@HUSHMAIL.COM | ) | |
| a/k/a JARE9302@HUSHMAIL.COM | ) | |
| a/k/a DTVX1@HUSHMAIL.COM | ) | |
| a/k/a LEAKED_HACKS1 | ) | |
| a/k/a CLOSED DOOR | ) | |
| a/k/a CLOSED COLOR | ) | |
| a/k/a CLUTTER REMOVED | ) | |
| a/k/a COLOR RAIN | ) | |
| a/k/a PLOT DRAW | ) | |
| a/k/a INVIL CABLE, | ) | |
| | ) | |
| Defendant. | ) | |

**Before the Honorable**
**TANYA WALTON PRATT**

OFFICIAL REPORTER'S TRANSCRIPT OF
CHANGE OF PLEA HEARING



Court Reporter:                    David W. Moxley, RMR, CRR, CMRS
                                   United States District Court
                                   46 East Ohio Street, Room 340
                                   Indianapolis, Indiana  46204

PROCEEDINGS TAKEN BY MACHINE SHORTHAND
TRANSCRIPT CREATED BY COMPUTER-AIDED TRANSCRIPTION

**Government Exhibit B**

**APPEARANCES:**


**For Plaintiff:**                     Tiffany McCormick, Esq.
                                       Assistant U.S. Attorney
                                       United States Attorney's Office
                                       Suite 2100
                                       10 West Market Street
                                       Indianapolis, IN  46204


**For Defendant:**                     Mario Garcia, Esq.
                                       Brattain Minnix Garcia
                                       Suite 760
                                       151 North Delaware
                                       Indianapolis, IN  46204

3

1                        (In open court.)

2             THE COURT:  Good afternoon.  We are on the record.

3  This is the United States of America versus Buster Hernandez,

4  our case number is 1:17-cr-183, and we are here, Mr. Garcia,

5  because you filed a petition just a few moments ago that your

6  client wishes to enter a plea of guilty; is that correct?

7             MR. GARCIA:  That is correct, Your Honor.

8  Obviously, I've been representing him for a while, and he has

9  made this decision, and so we're here to proceed on that.

10            THE COURT:  Okay.  Well, come on up to the lectern,

11 you and your client.

12            And while they are doing that, Ms. Preston, there

13 are several victims.  Have they been notified and do any wish

14 to be heard?

15            MS. PRESTON:  They do not wish to be heard.  They

16 have been notified.

17            THE COURT:  Okay.

18            (Counsel and defendant approach the podium.)

19            THE COURT:  All right, Mr. Hernandez, your attorney

20 has indicated that you wish to enter a plea of guilty; is that

21 correct?

22            THE DEFENDANT:  That's correct.

23            THE COURT:  Okay.  I'm going to put you under oath.

24 I need you to raise your right hand as best you're able.

25            (The defendant is sworn.)

1          THE COURT:  All right.  You may put your hand down.

2          Lawyers, would you state your names for the record

3 and introduce those at your table, beginning with the

4 government.

5          MS. PRESTON:  On behalf of the United States,

6 Tiffany J. Preston.  Sitting next to me, from the FBI, is

7 Special Agent Andrew Willmann and Special Agent Ryan Barrett.

8          THE COURT:  Okay.

9          MR. GARCIA:  And Mario Garcia, the pleasure of

10 serving as defense counsel for Mr. Hernandez.

11          THE COURT:  All right.  Our court reporter this

12 afternoon is David Moxley.

13          So, Mr. Garcia, it's my understanding that

14 Mr. Hernandez is going to plead guilty to Counts 1 through 41

15 of the superceding indictment --

16          MR. GARCIA:  Yes.

17          THE COURT:  -- without the benefit of a plea

18 agreement; is that correct?

19          MR. GARCIA:  That's correct.

20          THE COURT:  All right.  Mr. Hernandez, do you

21 understand that you're now under oath, and if you answer any

22 of my questions falsely, those answers could later be used

23 against you in another prosecution for either perjury or

24 making a false statement?

25          THE DEFENDANT:  Yes.

5

1          THE COURT:  What is your full name?

2          THE DEFENDANT:  Buster Jimmy Hernandez.

3          THE COURT:  And is Jimmy spelled J-I-M-M-Y?

4          THE DEFENDANT:  Yeah.

5          THE COURT:  And how old are you, sir?

6          THE DEFENDANT:  Twenty-nine years old.

7          THE COURT:  How far did you go in school?

8          THE DEFENDANT:  Grade 12.

9          THE COURT:  Are you a high school graduate?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Have you been treated recently for any

12    mental illness or addiction to narcotics?

13         THE DEFENDANT:  No.

14         THE COURT:  Are you currently under the influence of

15    any medication or other substance that might affect your

16    ability to understand today's proceedings?

17         THE DEFENDANT:  No.

18         THE COURT:  Have you received a copy of the

19    superceding indictment?  That's the document with the written

20    charges that have been made against you in this case.

21         THE DEFENDANT:  Yeah.

22         THE COURT:  And have you had an opportunity to fully

23    discuss the charges and this case in general with Mr. Garcia?

24         THE DEFENDANT:  I have.

25         THE COURT:  Now, you've agreed to plead guilty to

1  Counts 1 through 41 of the superceding indictment without a

2  plea agreement; is that correct?

3          THE DEFENDANT:  That's correct.

4          THE COURT:  These are all very serious felony

5  charges, and I'm going to go through them, the penalty range

6  for each of the charges.  All right, you're pleading guilty to

7  Counts 1 through 8, and those are each a count of sexual

8  exploitation of a child -- well, on here it says production of

9  child pornography.

10          MS. PRESTON:  Your Honor, it's referred to different

11  ways, but sexual exploitation of a child, as defined by

12  2251(a), is also producing child pornography.

13          THE COURT:  All right.  So Counts 1 through 8 each

14  carry a penalty range of 15 to 30 years' imprisonment, each

15  carry a fine of up to $250,000, and each carry a period of

16  five years to life of supervised release.

17          Counts 9 through 11, those are each a count of

18  coercion and enticement of a minor.  Each of those counts

19  carries a statutory penalty of 10 years to life, each count

20  carries a fine of up to $250,000, and each count carries a

21  term of five years to life on supervised release.

22          Counts 12 through 17 are each a count of

23  distributing and receiving child pornography.  Each of these

24  counts carries a penalty, pursuant to statute, of five years

25  up to 20 years' imprisonment, up to a $250,000 fine on each

1  count, and from five years to life on supervised release for

2  each count.

3         Counts 8 -- 18 through 21, these are each a count of

4  threat to use explosive device.  Each of the counts carries a

5  penalty range up to 10 years, each count carries a fine of

6  up to $250,000, and each carries a term of supervised release

7  not more than three years.

8         Count 22, you're pleading guilty to a count of

9  threats and extortion.  This count carries a statutory penalty

10 of up to 20 years' imprisonment, up to a $250,000 fine, and

11 not more than three years of supervised release.

12        Counts 23 through 32, inclusive, each are a count of

13 threats to kill, kidnap, and injure.  Each count carries a

14 penalty from zero up to five years' imprisonment, each carries

15 a fine of up to $250,000, and each count carries a term of

16 supervised release not more than three years.

17        Counts 33 through 38 each are a count of witness

18 tampering.  Each of those counts carries a penalty of up to 20

19 years' imprisonment, each count carries a fine of up to

20 $250,000, and each count carries a term of supervised release

21 not more than three years.

22        Count 39 is obstruction of justice.  This count

23 carries a penalty of up to 10 years' imprisonment, up to a

24 $250,000 fine, and not more than three years of supervised

25 release.

1          And Counts 40 and 41 are each a count of retaliation

2    against a witness or victim.  Each count carries a penalty of

3    up to 20 years' imprisonment, a fine of up to $250,000, and

4    not more than three years of supervised release.

5          Do you understand the penalty range for each of

6    these counts?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And, Mr. Garcia, you have previously

9    gone through the penalty ranges on each count; is that

10   correct?

11         MR. GARCIA:  Correct, Your Honor.

12         THE COURT:  All right.  When I talk about supervised

13   release, Mr. Hernandez, once you've completed serving your

14   executed sentence in prison, you will be placed on what's

15   called supervised release, where you will be subject to

16   supervision by a federal probation officer.  You will have to

17   comply with a number of conditions, such as no new arrests, no

18   new convictions.  If it was alleged that you had violated the

19   conditions of your release, you would have a hearing and, if

20   found in violation, you could be ordered to return to prison

21   on these exact same charges; do you understand?

22         THE DEFENDANT:  Yes.

23         THE COURT:  In addition to being fined up to several

24   million dollars -- I haven't totaled it, but several million

25   dollars -- you could also be ordered to pay restitution to any

1  of the known victims.  And you also will have to pay a

2  mandatory special assessment fee of $100 on each count, for a

3  total of $4,100, for the special assessment; do you

4  understand?

5            THE DEFENDANT:  Yes.

6            THE COURT:  Ms. Korobov, are there any other -- I'm

7  sorry.  Ms. Preston, are there any other penalties that need

8  to be mentioned on this count --

9            MS. PRESTON:  No, Your Honor.

10            THE COURT:  -- counts?

11            MS. PRESTON:  No, Your Honor.

12            THE COURT:  Mr. Hernandez, Mr. Garcia is your

13  attorney, and as we probably have been talking about the last

14  few weeks, you are scheduled for trial by jury on Monday, and

15  we're all prepared.  The panel has been ordered, all of the

16  pretrial rulings have been made.  Have you talked with your

17  lawyer about all of the government's evidence against you in

18  this case?

19            THE DEFENDANT:  Yes.

20            THE COURT:  And have you talked with your lawyers

21  about ways in which you might defend yourself when you were

22  making the decision whether you would go ahead and proceed

23  with your jury trial on Monday or you would plead guilty?

24            THE DEFENDANT:  Yes.

25            THE COURT:  Are you fully satisfied with the

1 counsel, representation, and advice that's been given to you

2 by Mr. Garcia?

3        THE DEFENDANT:  Yes.

4        THE COURT:  Mr. Hernandez, you're pleading guilty

5 without a plea agreement.  Has anyone made any promises or

6 assurances about the outcome to persuade you to accept this

7 plea agreement?

8        THE DEFENDANT:  No.

9        THE COURT:  Has anyone threatened you or used any

10 force to get you to plead guilty?

11        THE DEFENDANT:  No.

12        THE COURT:  Sir, you're pleading guilty of your own

13 free will and because you are, in fact, guilty?

14        THE DEFENDANT:  Yes.

15        THE COURT:  The offenses that you're pleading to are

16 all felony offenses.  If your plea is accepted, you'll be

17 adjudged guilty.  And a federal felony adjudication may

18 deprive you of very valuable civil rights, such as the right

19 to vote, the right to hold public office, the right to serve

20 on a jury, and the right to possess any kind of firearms; do

21 you understand?

22        THE DEFENDANT:  Yes.

23        THE COURT:  And knowing all of these facts, do you

24 still wish to plead guilty?

25        THE DEFENDANT:  Yes.

1     THE COURT:  Sir, you do have a right to plead not

2  guilty to any offense charged against you and to maintain your

3  innocence, but by pleading guilty, you're giving up that

4  right; do you understand?

5     THE DEFENDANT:  Yes.

6     THE COURT:  Mr. Hernandez, you do have a right to a

7  trial by jury, and we're ready for that trial, but if you

8  plead guilty, you're giving up that right and you will not

9  have a trial; do you understand?

10     THE DEFENDANT:  Yes.

11     THE COURT:  If you had proceeded to trial, you would

12  be presumed innocent, and the government alone would have the

13  burden of proof.  Ms. Preston and Ms. Korobov would have to

14  prove your guilt beyond a reasonable doubt.  But, because

15  you're pleading guilty and admitting your guilt, you give up

16  that right; do you understand?

17     THE DEFENDANT:  Yes.

18     THE COURT:  Sir, you do have a right to the

19  assistance of counsel for your defense and a right to have an

20  attorney furnished free of charge if you could not afford to

21  hire your own lawyer.

22     And, Mr. Garcia, you are appointed; correct?

23     MR. GARCIA:  Yes.  I took over for the Federal

24  Defenders office.  Previously, Mr. Collins and Cleary

25  represented Mr. Hernandez.

1        THE COURT:  Sir, you do have a right to have an

2   attorney at all stages of a criminal proceeding; do you

3   understand?

4        THE DEFENDANT:  Yes.

5        THE COURT:  You have a right to see and hear all of

6   the witnesses against you.  If you had proceeded to trial, the

7   government lawyers would have called all of the witnesses

8   right up here to the witness stand and then Mr. Garcia would

9   have an opportunity to cross-examine all of the witnesses in

10  your defense, but because you're pleading guilty, you give up

11  that right; do you understand?

12       THE DEFENDANT:  Yes.

13       THE COURT:  You, sir, have a right to testify on

14  your own behalf and in your own defense, but you also have a

15  right to decline to testify, and you could not be made or

16  compelled to testify unless you voluntarily elected to do so,

17  but when you plead guilty, you give up that right; do you

18  understand?

19       THE DEFENDANT:  Yes.

20       THE COURT:  You have a right to use the court's

21  power of subpoena to compel witnesses to come in and testify

22  or provide evidence in your defense, but when you plead

23  guilty, you give up that right; do you understand?

24       THE DEFENDANT:  Yes.

25       THE COURT:  If you had gone to trial on Monday and

1  you and Mr. Garcia made the decision that you would not

2  testify at your trial, or if Mr. Garcia made the strategic

3  decision not to present any evidence at that trial, I would

4  have admonished the jury and instructed them that they could

5  not discuss that fact or hold it against you in any way, but

6  when you plead guilty, you give up that right; do you

7  understand?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you further understand that by

10 entering a plea of guilty, if the plea is accepted by the

11 Court, there will be no trial and you will have waived, or

12 given up, your right to trial, as well as all of the rights

13 associated with trial that I've just described?

14         THE DEFENDANT:  Yes.

15         THE COURT:  All right.  We're going to talk about

16 the elements of each of these offenses.  And the elements

17 are -- they're in this plea agreement.  Okay.

18         These elements, sir, are what the government would

19 have to prove beyond a reasonable doubt if you proceeded to

20 trial, and because you're pleading guilty, you're admitting

21 that they could prove each of these elements.

22         All right, with respect to Counts 1 through 8 -- and

23 Counts 1 through 8 are the counts -- let's see.  1 through 8

24 are production of child pornography.  The elements would be:

25 One, that you, the defendant, did knowingly employ, use,

1  persuade, induce, entice, and coerce a minor; two, to engage

2  in any sexually explicit conduct as such conduct is defined by

3  Title 18 United States Code, Section 2256(2); three, for the

4  purpose of producing any visual depictions of such conduct;

5  and, four, while knowing or having reason to know that such

6  visual depictions would be transported or transmitted using

7  any means or facility of interstate or foreign commerce or in

8  or affecting interstate or foreign commerce or mailed, or such

9  visual depictions were produced or transmitted using materials

10  that have been mailed, shipped, or transported in or affecting

11  interstate or foreign commerce by any means, including a

12  computer, or such visual depictions were actually transported

13  or transmitted using any means or facility of interstate or

14  foreign commerce in or affecting interstate or foreign

15  commerce or mail.  Do you understand?

16          THE DEFENDANT:  Yes.

17          THE COURT:  All right.  That was very confusing.

18          MR. GARCIA:  And just for the record, it wasn't

19  child pornography production.  That's that same statute that's

20  actually an exploitation charge as charged in the indictment

21  for those counts.

22          THE COURT:  Okay.  Well, see, on your stipulated

23  plea agreement, you all have it titled, "Child Production."

24          MR. GARCIA:  And that's just because that's --

25          THE COURT:  The statute?

1    MR. GARCIA:  -- the heading of the statute, correct.

2    THE COURT:  Okay.

3    MR. GARCIA:  But the offense, as charged, is

4  exploitation.

5    THE COURT:  All right.  So, why don't we do the --

6    MR. GARCIA:  The elements --

7    THE COURT:  -- factual -- let's do the --

8    MR. GARCIA:  The elements you read were correct for

9  that charge.

10    THE COURT:  Yeah.  Let's do the factual basis for

11  Counts 1 through 8, let's do it that way, so it won't be so

12  confusing, because that was a very confusing read of elements.

13  Can you do it that way?  What happened in 1 through 8?  Don't

14  you have --

15    MS. PRESTON:  Your Honor, we do.  Do you want me --

16    THE COURT:  I want you to --

17    MR. GARCIA:  Maybe the government can read --

18    THE COURT:  Yeah.  No, the government is going to

19  give us the factual basis.

20    MR. GARCIA:  Yeah.

21    THE COURT:  Go, sit down.  We'll hear 1 through 8 --

22    MR. GARCIA:  Okay.

23    THE COURT:  -- and then we'll go through all,

24  because there's 41 of them.

25    MR. GARCIA:  Yeah.  It's going to be easier.

1          THE COURT:  And we want Mr. Hernandez to understand

2  what he's pleading to.

3          MS. PRESTON:  Yes, Your Honor.  As --

4          THE COURT:  Come on up.

5          MS. PRESTON:  You want me to come up?  Thank you.

6          THE COURT:  Come on up so I can get a good look at

7  you.

8          MS. PRESTON:  Thank you, Your Honor.  With respect

9  to Counts 1 through 8 of the superceding indictment, the

10  United States would have proven, beyond a reasonable doubt,

11  the following facts pursuant to the evidence, and these facts

12  are stipulated.  Again, for the record, the charge is

13  2251(a)(2), which the technical term in the statute is sexual

14  exploitation of a child.

15          What we would have proven is that the defendant,

16  Buster Hernandez, was a resident of Bakersfield, California,

17  who was born in 1990, that Victim 1 was a girl living in

18  Plainfield, Indiana, who was born in 19 -- May 1998.  Victim

19  2 was a girl living in Brownstown Charter Township, Michigan,

20  who was born in September 1997.  Victim 3 was an 18-year-old

21  girl living in Indianapolis, Indiana, who was born in

22  April 1996.  Victim -- excuse me, Victim 3.  Victim 4 was a

23  girl living in Monrovia, Indiana, who was born in March 1999.

24  Victim 5 was a girl living in the Southern District of

25  Indiana, who was born in April 1999.  Victim 6 was a girl

1  living in Fortville, Indiana, who was born in March 1999.

2  Victim 11 was a girl living in Florida, who was born in 1998.

3  Victim 12 was a girl living in Virginia, who was born in

4  2001.

5          Regarding the defendant's sexual exploitations of

6  victims through extortion, the United States would have

7  proven, and it is stipulated, that from at least 2012 and

8  through and including August 3rd, 2017, Buster Hernandez used

9  the following means and methods to coerce his victims to

10 produce sexually explicit images and videos of themselves

11 through extortion.

12         Using various social media accounts, Hernandez

13 contacted individuals, typically minors, by sending a private

14 message and saying, for example, "Hi," insert the victim's

15 name, "I have to ask you something.  Kinda important."

16 Hernandez then told the prospective victim, "How many guys

17 have you sent dirty pics to cause I have some of you?"  The

18 prospective victim either ignored Hernandez or engaged in

19 further conversation.

20         If the potential victim responded, Hernandez

21 demanded that they send him sexually explicit images or videos

22 of themselves, or else Hernandez would send the sexually

23 explicit images or videos that he claimed were in his

24 possession to the potential victim's friends and family, also

25 known as sextortion.

1       Hernandez also threatened to murder, rape, kidnap,

2  and injure the victim and the victim's friends and family if

3  the victim refused to comply or if the victim was unable to

4  send the images and videos as quickly as Hernandez demanded.

5       Hernandez sent victims specific instructions on

6  precisely what kind of images and videos he wanted them to

7  produce against their will.  Hernandez typically sent his

8  instructions via the Internet using several screenshots,

9  including the following instructions -- instruction, excuse

10 me:

11      "K 2 vids.  One, strip vid first.  Wear a suggestive

12 outfit.  Two, a long vid of you," F word, "every hole.  Use a

13 nice fat brush.  I wanna see everything there is to see in

14 this one vid.  Make it extra graphic and extra long.  Leave

15 nothing for me to want to see ever again.

16      "You have to talk dirty in it as well.  Don't care

17 how much trouble you could get in if you get heard.

18      "And do a bunch of positions in it.  Lay on side and

19 spread that ass and pussy.  Also lean back on your elbow and

20 lift your legs up and back so you can get deep with the brush.

21 Spread pussy in that position so I can get a good view.  Tons

22 of spreading.  Tons of," F word, "and pulling out brush" --

23 sorry, "pulling out brush out."  F "yourself really close to

24 the camera.  Move back and," F "yourself from afar so your

25 face is in it."  F "yourself slow.  Fast.  Hard.  Soft.

1       "Basically just doing everything.  And back camera

2   or I'll make you redo."

3       Hernandez typically began extorting victims when

4   they were between the ages of 12 to 15 years old.

5       Once Hernandez received the sexually explicit images

6   and videos from his victims, he continued to extort them until

7   they refused to comply.  If victims refused to comply,

8   Hernandez frequently posted the sexually explicit images and

9   videos of the victims on-line or sent them to the victim's

10  friends and family via the Internet.  Hernandez also

11  threatened to murder, rape, and injure the victim and the

12  victim's friends and family if the victim continued to refuse

13  to comply with Hernandez's demands.

14      If a victim failed to comply with his precise

15  demands within the time period set forth, Hernandez frequently

16  told his victims, "What a shame," or, "It's a shame," and

17  falsely claimed that he was getting ready to stop extorting

18  them after that one last demand.

19      Hernandez sexually exploited some of his victims for

20  years and continued to extort them even after they turned 18

21  years old.

22      Hernandez also encouraged some of his victims to

23  kill themselves.  In some instances, Hernandez promised that

24  he would disseminate their sexually explicit images at their

25  funeral and trash their Facebook memorial page if they

1  committed suicide.

2      We would also have proven that in order to commit

3  these offenses, namely the sexual exploitation of children,

4  Hernandez used various methods of tradecraft to evade

5  detection by law enforcement.  Namely, Hernandez used the

6  following sophisticated methods of tradecraft to mass and

7  obfuscate his true identity and the true location of his

8  Internet protocol address in an intentional effort to evade

9  detection by law enforcement and to obstruct justice:

10      Hernandez used aliases, such as the following, to

11  hide his true identity:  Brian Kil, Brianna Killian, Brian

12  Mil, Greg Martain, Purge of Maine, uygt9@hushmail.com,

13  jare9302@hushmail.com, Dtvx1@hushmail.com, Leaked__hacks1,

14  Closed Door, Closed Color, Clutter Removed, Color Rain, Plot

15  Draw, and Invil Cable.

16      Hernandez opened hundreds of e-mail and social media

17  accounts using numerous aliases, then quickly ceased using

18  those accounts in an intentional effort to impede or delay law

19  enforcement investigation action on those accounts.

20      Hernandez used multiple e-mail service providers

21  located outside the United States that are commonly discussed

22  in on-line communities as not having records readily available

23  to United States law enforcement during the course of criminal

24  investigations, and as a method of tradecraft for obfuscation.

25      Hernandez intentionally removed the password

1  protection on his router to create an open Wi-Fi connection,

2  which is commonly discussed in on-line communities as a method

3  of tradecraft designed to create disassociation and

4  obfuscation of identity during the course of a criminal

5  investigation.

6        Hernandez removed the hard drive from his computer

7  to impede the success of commonly used law enforcement

8  investigative techniques when used on that computer.

9        Hernandez used an operating system that runs in

10 temporary volatile memory such that it can run from external

11 storage media, such as a USB drive.  As such, the data in the

12 memory is lost as soon as the operating system is shut down or

13 the computer is powered off.  It is not necessary for a hard

14 drive disk to be -- excuse me, a hard disk drive to be

15 installed in a computer when running this system.

16       Using this system allowed Hernandez to remove the

17 hard disk drive from his computer, which is commonly discussed

18 in on-line communities as a method of tradecraft to protect

19 against the accidental retention of metadata and forensic

20 artifacts that could reveal to law enforcement evidence of

21 criminal activities.  Hernandez did this from a thumb drive

22 recovered by criminal investigators from his residence.

23       On multiple separate instances over a period of

24 eight months, Hernandez engaged in the overt act of updating

25 the operating system designed -- excuse me, described.

1   Hernandez did this from a computer recovered by criminal

2   investigators from his residence.

3           Hernandez used the Tor network to mask his true IP

4   addresses and his location.  The Tor network is an anonymity

5   network that intentionally masks the user's true IP address

6   and other forensic artifacts that are normally accessible to

7   Web sites, electronic service providers, and someone

8   monitoring network traffic, by directing Internet traffic

9   through a circuit of several of more than 6,000 relay

10  services -- servers.  The operating system Hernandez used has

11  several anonymity programs pre-installed, including the Tor

12  network.

13          During his arrest on August 3rd, 2017, and just as

14  law enforcement officers entered his room, Hernandez

15  intentionally removed a USB thumb drive -- excuse me, a USB

16  drive containing the operating system described above from his

17  computer, thereby intentionally destroying metadata or

18  forensic artifacts associated with use of this operating

19  system that constituted evidence of his criminality.

20          Hernandez encrypted multiple hard drives and created

21  encryption containers on external storage media in an

22  intentional effort to prevent law enforcement from accessing

23  evidence such as the child pornography and pornography he

24  received through extortion.

25          Hernandez acknowledges that the attached addendum

1  was used by Hernandez in the commission of these offenses.

2           The list, okay.  And we're going to omit that.

3  Okay.

4           Hernandez obtained child pornography from Victim 1

5  through coercion.  In 2001 (sic), Victim 1 was a minor who

6  resided in Plainfield, which is in the Southern District of

7  Indiana.  Beginning in September of 2014 and continuing until

8  August 3rd, 2017, Hernandez, using the means and methods

9  described above, coerced Victim 1 to produce and distribute

10 images and videos of child pornography of Victim 1, knowing

11 that Victim 1 was a minor.

12          THE COURT:  He did this for three years?

13          MS. PRESTON:  Yes, Your Honor.

14          THE COURT:  Okay.

15          MS. PRESTON:  I'm sorry.  With Victim 1, the

16 continuing nature of the offense was until his arrest, because

17 there was the concealment part of it.  With respect to Victim

18 1, what the evidence would have showed is that beginning in

19 September of 2014 and continuing until just after law

20 enforcement interceded in mid-2016, he was in the process of

21 sextorting her --

22          THE COURT:  Okay.

23          MS. PRESTON:  -- just to be clear.

24          THE COURT:  All right.

25          MS. PRESTON:  Hernandez first contacted Victim 1

24

1  via the Internet after searching for publicly available

2  information regarding Victim 1 and falsely claiming to

3  already possess sexually explicit images of Victim 1.

4  Hernandez then threatened to post the sexually explicit images

5  of Victim 1 on the Internet if she refused to produce

6  additional child pornography of Victim 1 and distribute it

7  to Hernandez.

8          For at least 16 months, Hernandez sexually extorted

9  Victim 1, and obtained child pornography of Victim 1 as a

10  result.  Throughout said time period, Hernandez threatened to

11  post Victim 1's child pornography on social media.  Hernandez

12  also threatened to murder, rape, and injure Victim 1 and her

13  family if she either refused or expressed reluctance or

14  hesitation to comply with his demands.

15          Through the same means and methods described above,

16  Hernandez produced child pornography of Victims 2 through 6

17  and 11 and 12.  As set forth in Counts 1 through 8 of the

18  superceding indictment, the United States would have shown

19  that between on or about 2014, and on or about November 15,

20  2014, and within the Southern District of Indiana and

21  elsewhere, this defendant did employ, use, persuade, induce,

22  entice, and coerce Victims 1, 4, and 5, who were minors, to

23  engage in sexually explicit conduct for the purpose of

24  producing any visual depiction of such conduct and did aid and

25  abet such conduct, and such visual depiction was produced

1  using materials that had been mailed, shipped, or transported

2  by interstate or foreign commerce by any means, including the

3  Internet, as more particularly described below.

4          Your Honor, then the Counts 1 through 8 are set

5  forward in the stipulated factual basis, and I can summarize

6  those, as well.

7          THE COURT:  Okay.  Why don't you summarize.

8          MS. PRESTON:  Count 1 states that on

9  September 5th, 2014, Hernandez produced -- coerced Victim 1

10  to produce an image of child pornography as described in the

11  stipulated factual basis.  The image constitutes child

12  pornography under the statute as described therein.

13          THE COURT:  All right.  Mr. Garcia, do you have that

14  in front of you?  She's on page 8 of docket 131.

15          MR. GARCIA:  We do, Your Honor.

16          THE COURT:  Okay.  I want you to take a look at

17  that, Mr. -- show it to your client, Count 1.

18          MR. GARCIA:  And I believe they're right from the

19  superceding indictment.

20          THE COURT:  Okay.  Do you see -- do you see that,

21  Mr. Hernandez?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Tanesa, do we have a mic for him?

24          MR. GARCIA:  I've got one here, Your Honor.

25          THE COURT:  Well, you might need yours, Mr. Garcia.

1          MR. GARCIA:  I got one for him.

2          THE COURT:  You have two over there?  Okay.

3          THE DEFENDANT:  Yeah, I see it.

4          THE COURT:  All right.  And is what she stated

5    accurate?  Did you send that one?

6          THE DEFENDANT:  I'm sorry.  Say that again.

7          THE COURT:  Look at the -- look at where it says,

8    "Count 1."

9          THE DEFENDANT:  All right.

10         THE COURT:  And then there's the description.

11   "Victim 1 using a cellular phone to take a picture of herself

12   in a bathroom mirror."

13         THE DEFENDANT:  All right.

14         THE COURT:  Did you send that?

15         THE DEFENDANT:  Yes.

16         MS. PRESTON:  He received it, and she produced it

17   for him, because he coerced her.

18         THE COURT:  Is that correct?

19         THE DEFENDANT:  Yes, that's right.

20         THE COURT:  Okay.  All right.  Go ahead and

21   summarize Count 2.

22         MS. PRESTON:  As set forth in Count 2, October 9th,

23   2014, Victim 1 produced an image described in Count 2 of the

24   superceding indictment and the stipulated factual basis that

25   constitutes child pornography.  She produced this image, which

1  depicted her vagina and anus, because of the defendant's

2  coercion.

3          THE COURT:  Do you agree with Count 2?

4          THE DEFENDANT:  Yes.

5          MS. PRESTON:  Count 3, October 31st, 2014, an image

6  described in the superceding indictment and stipulated factual

7  basis, depicting Victim 1 lying on her back, with her legs

8  spread apart and her vagina and anus clearly visible.  She

9  produced this image because of the defendant's coercion.

10         THE COURT:  Do you agree, Mr. Hernandez?

11         THE DEFENDANT:  Yes.

12         MS. PRESTON:  Count 4, October 1, 2014, an image

13 described in the stipulated factual basis and superceding

14 indictment, depicting Victim 1, who was completely nude and

15 her vagina was visible.  She produced this image as a result

16 of the defendant's coercion.

17         THE COURT:  Do you agree?

18         THE DEFENDANT:  Yes.

19         MS. PRESTON:  Count 5, September 12, 2014, an image

20 described in the superceding indictment and the stipulated

21 factual basis, again, depicting Victim 1's face, breasts,

22 and vagina.  She produced this image as a result of the

23 defendant's coercion.

24         THE COURT:  Do you agree, Mr. Hernandez?

25         THE DEFENDANT:  Yes.

1           MS. PRESTON:  Count 6, October 8, 2014, a video file

2    depicting Victim 4, showing and revealing her breasts and

3    vagina.  Victim 4 produced this as a result of the

4    defendant's coercion.

5           THE COURT:  Do you agree, Mr. Hernandez?

6           MR. GARCIA:  Yes.

7           MS. PRESTON:  Count 7, again Victim 4, this time

8    sitting with her legs spread apart and using her hand to

9    insert a hairbrush into her exposed vagina.  Victim 4

10   produced this image as a result of the defendant's coercion.

11          THE COURT:  Do you agree, Mr. Hernandez?

12          THE DEFENDANT:  Yes.

13          MS. PRESTON:  Count 8, November 15, 2014, an image

14   depicting Victim 5 posed with her hand on her hip, and she

15   is completely nude, with her breasts and vagina visible.

16   Victim 5 produced this as a result of the defendant's

17   coercion.

18          THE COURT:  Do you agree, Mr. Hernandez?

19          THE DEFENDANT:  Yes.

20          MS. PRESTON:  I would also say, Your Honor, that

21   further in the factual basis, but it is part of the proof, is

22   that the defendant used the Internet to commit these offenses,

23   as well as items manufactured outside of the state of Indiana,

24   and, therefore, the interstate commerce provision of the

25   elements of Counts 1 through 8 would have been proven.

```
 1            THE COURT:  Okay.  All right.  So let's do -- here's
 2   the Counts 9 through 11.  I'm going to read you the elements,
 3   Mr. Hernandez.
 4            And, Counsel, you can sit down, because -- everybody
 5   can sit down, because this is going to take a long time.  We
 6   have 41 counts to go through.  Okay.  And after Russell
 7   Thomas -- is that his name?  Russell Taylor -- this is what we
 8   have to do.
 9            MS. PRESTON:  Yes, Your Honor.
10            THE COURT:  Okay.  All right.  Counts 9 through 11,
11   these are coercion and enticement of a minor.  And the
12   elements of these counts are:  One, that you, the defendant,
13   used a facility or means of interstate commerce to knowingly
14   persuade, induce, entice, coerce the victim identified in each
15   count of the superceding indictment to engage in sexual
16   activity for which any person could be charged with a criminal
17   offense, specifically production of child pornography as
18   defined in Indiana Code, Title 35, Section 42-4-4, and CE, and
19   sexual exploitation of a child as defined by Title 18 United
20   States Code, Section 2251(a); two, that the victim identified
21   in the superceding indictment was less than 18 years of age;
22   and, three, that you, the defendant, believed the victim
23   identified in the superceding indictment was less than 18
24   years of age.  Do you understand the elements of Counts 9, 10,
25   and 11, coercion and enticement of a minor?
```

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.  So you want to do the

3    factual basis on those?

4          MS. PRESTON:  Yes, Your Honor.

5          THE COURT:  Okay.

6          MS. PRESTON:  As set forth in Counts 9, 10, and 11,

7    the United States would have proven, in addition to the facts

8    that I already read, Your Honor, that are stipulated in this

9    case, that beginning in or at least -- or, excuse me, in at

10   least or about 2014, and continuing until at least on or about

11   August 3rd, 2017, the defendant, Buster Hernandez, did use a

12   facility or means of interstate or foreign commerce to

13   knowingly persuade, induce, entice, and coerce, and attempt to

14   knowingly persuade, induce, entice, and coerce --

15         THE REPORTER:  I'm sorry.  I lost you.

16         MS. PRESTON:  I'm sorry.  I'll back up.

17         Did use -- I'm sorry.  Did use a facility or means

18   of interstate or foreign commerce to knowingly persuade,

19   induce, entice, and coerce, and attempt to knowingly persuade,

20   induce, entice, and coerce Victims 1, 4, and 5, who had not

21   attained the age of 18 years, to engage in sexual activity for

22   any -- for which any person could be charged with a criminal

23   offense, namely production of child pornography as defined by

24   Indiana Code, as well as sexual exploitation of a child as

25   defined by Federal Code, namely 18 U.S.C. 6 -- 2251(a).  We

1  would have shown that, through the means and methods that I

2  already read, Your Honor, that between 2014 to August 3rd,

3  2017, he coerced and enticed Victims 1, 4, and 5.

4          THE COURT:  Okay.  Count 9 is Victim 1 --

5          MS. PRESTON:  Yes.

6          THE COURT:  -- Count 10 is Victim 4, and Count 11

7  is Victim 5.  And each victim was a minor?

8          MS. PRESTON:  Yes, Your Honor.

9          THE COURT:  Okay.  Do -- did you hear -- did you --

10 do you see those three counts, Mr. Hernandez?

11         THE DEFENDANT:  Yes.

12         THE COURT:  And do you agree that you did entice,

13 coerce, and entice Victims 1, 4, and 5, as charged in those

14 three counts?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Okay.

17         MS. PRESTON:  And, Your Honor, I neglected to say

18 that, again, through the coercion methods that we read

19 previously, the defendant, Buster Hernandez, also admits that

20 he used the same means and methods to coerce Victims 2 through

21 6 and 11 and 12 to produce images and videos of child

22 pornography of Victim -- Victims 2 through 6, and 11 and 12,

23 knowing that they also were minors.

24         THE COURT:  Do you agree?

25         THE DEFENDANT:  Yes.

32

1          THE COURT:  All right.  And we're talking about

2    victims -- these victims by numbers.  And, Mr. Garcia, your

3    client is aware who each victim is, correct, and correlates to

4    those numbers?

5          MR. GARCIA:  Yes.  I provided him with a list and

6    identity.

7          THE COURT:  Okay.  All right.  Okay.  So now we're

8    going to Counts 12 through 17, and those are each counts of

9    distributing and receiving child pornography.

10         And the elements of 12 through 17, Mr. Hernandez,

11   are:  One, that you, the defendant, knowingly distributed

12   images and videos constituting child pornography as identified

13   in Counts 7, 8, and 9 of the indictment --

14         MS. PRESTON:  Sorry, Your Honor.  That's a mistype.

15   It's actually, "as defined in Counts 12 through 17."

16         THE COURT:  Okay.  As defined in Counts 12 through

17   17 of the indictment; the images and videos contain child

18   pornography; you, the defendant, knew that one or more persons

19   depicted in the images and videos was under the age of 18

20   years; and, four, the images and videos were transported in

21   interstate or foreign commerce.  Do you understand the

22   elements of Counts 12 through 17?

23         THE DEFENDANT:  Yes.

24         THE COURT:  All right.  Let's go to the factual

25   basis for 12 through 17.

1          MS. PRESTON:  Yes, Your Honor.  Using the same means

2     and methods as previously described, as set forth in Counts 12

3     through 17 of the superceding indictment, and as stipulated by

4     in the factual basis, between on or about November 7, 2014,

5     and on or about December 10th, 2014, within the Southern

6     District of Indiana and elsewhere, the defendant did knowingly

7     distribute and receive child pornography of Victims 1, 4,

8     and 6, who were minors, using a means or facility of

9     interstate commerce, namely the Internet, and that was

10    transported in or affecting interstate commerce by any means,

11    including computer, as more particularly described now.

12          As set forth in the superceding indictment,

13    Count 12, the United States would have proven, and it is

14    stipulated, that on December 10th, 2014, the defendant

15    distributed the image described therein to Victim 1, and

16    that image constituted child pornography as it depicted Victim

17    1's face, breasts and vagina.

18          THE COURT:  Did you hear what Ms. Preston just

19    stated with respect to Count 12?

20          THE DEFENDANT:  Yes.

21          THE COURT:  And is that the true --

22          THE DEFENDANT:  Yes.

23          THE COURT:  -- is that what happened?

24          Okay.  Next count.

25          MS. PRESTON:  As set forth on the same day,

34

1  December 10th, and as part of Count 13, in 2014 the defendant

2  distributed an image of Victim 1.  She was lying on her back

3  on the floor, wearing only a bra, and it depicted her vagina

4  and anus, thereby constituting child pornography, knowing

5  Victim 1 to be under the age of 18 and a minor.

6            THE COURT:  Did you hear the factual basis on

7  Count 13?

8            THE DEFENDANT:  Yes.

9            THE COURT:  And is that accurate and the truth?

10            THE DEFENDANT:  Yes.

11            THE COURT:  Okay.  Next count.

12            MS. PRESTON:  As set forth in Count 14, through the

13  same means and methods we've described already today, on

14  November 7, 2014, the defendant received or distributed the

15  image described in the superceding indictment and in the

16  factual basis.  Victim 4 was seen in that image inserting a

17  hairbrush into her exposed vagina, constituting child

18  pornography.  She was under the age of 18 at the time.

19            THE COURT:  And, Mr. Hernandez, did you hear the

20  factual basis for Count 14?

21            THE DEFENDANT:  Yes.

22            THE COURT:  And is that the truth?

23            THE DEFENDANT:  Yes.

24            THE COURT:  Count 15?

25            MS. PRESTON:  As set forth in Count 15 of the

1  superceding indictment, and as stipulated in the factual

2  basis, the defendant received or distributed an image

3  depicting Victim 4.  Again, that image showed Victim 4's

4  vagina and her hand inserting a hairbrush into her vagina.

5  Victim 4 was under the age of 18 at the time.

6           THE COURT:  Mr. Hernandez, is that accurate?

7           THE DEFENDANT:  Yes.

8           THE COURT:  With respect to Count 16, Government?

9           MS. PRESTON:  Yes, Your Honor.  With respect to

10 Count 16, November 7th of 2014, the defendant distributed or

11 received a video described therein, which depicted Victim 6

12 using her hand to masturbate by running her fingers on her

13 vagina.  The defendant, using the same means and methods we've

14 discussed therein, distributed or received that image, and

15 the Victim 6, at the time, was under the age of 18, so it

16 constituted child pornography.

17           THE COURT:  And, Mr. Hernandez, did you hear the

18 factual basis for Count 16?

19           THE DEFENDANT:  Yes.

20           THE COURT:  And is it the truth?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Count 17?

23           MS. PRESTON:  With respect to November 7th of 2014,

24 the defendant distributed or received a video, which depicted

25 Victim 6 using her hand to masturbate by rubbing her fingers

1  on her vagina.  Victim 6 was under the age of 18, and thus it

2  constituted child pornography.

3          THE COURT:  And did you hear the factual basis for

4  Count 17?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And is it accurate, Mr. Hernandez?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Okay.

9          MS. PRESTON:  And, again, Your Honor, we would have

10  shown that through the facility or means of interstate

11  commerce with the Internet, as well as the devices that were

12  used to distribute and receive these images; and we would have

13  proved, with each count, that the defendant did so knowingly.

14          THE COURT:  Okay.  All right.  Let's get the

15  factual -- let's get the elements of the next counts.  That

16  would be Counts 18, 19, 20, and 21, and those are each a count

17  of threats to use explosive devices.

18          With respect to Counts 18 through 21, the elements

19  are:  One, that you, the defendant, used an instrument of

20  interstate or foreign commerce to make threats or maliciously

21  convey false information, knowing the same to be false as

22  described in Counts 10 through 13 of the indictment; two, you

23  acted willfully; and, three, you, the defendant, your threats

24  or -- your threat or threats concerned an attempt or alleged

25  attempt being made or to be made to kill, injure, or

1  intimidate any individual or unlawfully to damage or destroy

2  any building, vehicle, and other real or personal property by

3  means of fire or an explosive.

4          And if you would give us the factual basis for

5  Counts 18 through 21.

6          MS. PRESTON:  Yes, Your Honor.  It is stipulated

7  that on December 12, 2015, Victim 1's mother, who is

8  identified as Victim 7 in the superceding indictment,

9  discovered some of Hernandez's messages to Victim 1 on her

10  phone.  Victim 1's mother used Victim 1's cellular phone to

11  tell Hernandez to stop extorting Victim 1, and advised she

12  intended to call the police.

13          In response, Hernandez retaliated against Victim 1

14  and Victim 7 and threatened to kill and injure Victim 1

15  and Victim 7 and threatened to post Victim 1's sexually

16  explicit images and videos on social media.

17          On December 17th, 2015, and in retaliation for

18  Victim 7's messages, Hernandez, using the name Brian Kil,

19  posted on his Facebook account multiple images of Victim 1

20  that Hernandez had obtained through extortion, including an

21  image depicting Victim 1 wearing black pants and a pink bra,

22  Victim 1 was holding onto her breasts with both hands.  An

23  image depicting Victim 1 nude from the waist up in a bedroom.

24  Victim 1's breasts were blocked out using photo editing

25  software.  An image depicting Victim 1 wearing pink shorts and

1   a multi-colored shirt, standing in a bathroom.  One hand is on

2   her hip while the other hand lifted up her skirt, exposing her

3   shirt, exposing her breasts.

4           Hernandez, using the name Brian Kil, also posted the

5   following messages.  "Your time is running out.  You thought

6   the police would find me by now but they didn't.  They have no

7   clue.  The police are useless.  Some of you went and reported

8   this and nothing happened.  The time is nearly here I'm

9   shaking in excitement.  I want to leave a trail of death and

10  fire in Plainfield.

11          "I will simply walk right in undetected tomorrow.

12  Once in I will wait a few classes before I start my assault.

13  I'm coming for you," insert Victim 1's name.  "You're F'ing

14  dead, you slutty bitch.  I will slaughter your entire class

15  and save you for last.  I will lean over you as you scream and

16  cry and beg for mercy right before I slit your F'ing throat

17  ear," to, "ear.  The rest of you will be picked off as you try

18  and run away.  I'm coming.  Believe that.  I'd love to see the

19  police try and intervene if they," ever, "have the nuts to

20  enter.  I'll add a dozen dead police to my tally.  F'ing try

21  me, pigs.  I will finish you off as well.

22          "Tomorrow will be an F'ing bloodbath at Plainfield

23  High.  I will open fire on all you sickening pieces of shit.

24          "I have in my possession three home-made pipe bombs,

25  two handguns, and a semiauto rifle.  I will be targeting this

1  whore," insert the victim's real name, "personally.

2         "I know her exact schedule.  I will slaughter every

3  single person who happens to have class with her.  After I

4  finish killing this whore...I will turn my sights on her

5  friends.  I will methodically pick you off as you all run for

6  your lives in crowds.  Those that I miss will be blown to hell

7  with pipe bombs I set around campus.  I plan on leaving no

8  survivors.

9         "If you ever talk to Victim 1, I swear to God I

10  will put a bullet in your F'ing skull.  I suggest you stay

11  home tomorrow if you value your life.  If you think this is a

12  joke, then go to class tomorrow.  I dare you.  If you think

13  the police have enough time to stop me this late at night then

14  you know nothing about IP addresses.

15         "After I kill her friends, I will begin to erase all

16  the," F word and N word, "at Plainfield.  You sucking" --

17         THE COURT:  That's not the F word.

18         MS. PRESTON:  I'm sorry.  It's not.  The

19  F-A-G-G-O-T-S word, Your Honor, which is written down in the

20  stipulated basis.  And that was the exact text from the post.

21         "You," it says, "sucking" here, "subhumans are

22  ruining everything for everyone.  The world will thank me for

23  removing you all.  You F-A-G-G-O-T-S will have to answer to

24  God for your sins.

25         "If you want the nudes of Victim 1, now is the

1 time to get them.  I will be gone from this earth tomorrow and

2 so will hundreds of Plainfield students."

3         On December 17, 2015, Hernandez, using the name

4 Brian Kil, posted, "Danville is still open.  Maybe I'll settle

5 on some F-A-G-G-O-T-S and the," N word, "at Danville."

6         On or about December 17th, 2015, and as a result of

7 Hernandez's threats, school administrators evacuated and

8 closed Plainfield and Danville high schools.  Between

9 December 18th, 2015, and December 20th, 2015, Hernandez

10 continued to threaten to kill Victim 1 and Victim 1's

11 family, friends, and classmates via the Internet.

12         On December 20, 2015, Hernandez, using the name

13 Brian Kil, posted the following threat on Facebook to firebomb

14 The Shops at Perry Crossing and Walmart and to kill Victim

15 1, patrons, and first responders.

16         And, Your Honor, I can either read the post or

17 summarize it that's in the stipulated factual basis.

18         THE COURT:  Why don't you summarize it.

19         MS. PRESTON:  Your Honor, what's set forth in the

20 post that Mr. Hernandez posted is that he was going to kill a

21 large number of individuals at The Shops at Perry Crossing at

22 Perry Crossing.  He specifically referenced killing police and

23 first responders.  He specifically referenced shooting people,

24 killing people, and he also specifically targeted and

25 mentioned in his post Walmart.  Again, both of those places

1  are within the Southern District of Indiana.  And as a result,

2  first responders arrived at those scenes and evacuated the

3  buildings, including the movie theater.

4          Subsequently, Mr. Hernandez used Facebook to post

5  the following posts again.  It's set forth in the stipulated

6  factual basis, but as summarized, he tagged Plainfield Police

7  Department and the FBI and said, "You guys are clueless, no

8  possibility of stopping me.  I'll just continue to waste your

9  resources in the meantime.  It's not the mall after all, it's

10  Plainfield High School."

11          Hernandez then posted a video of Victim 1 engaging

12  in sexually explicit conduct that he obtained via sextortion,

13  and commented on the videos as follows:  "I want a new rifle

14  so I can catch Victim 1 at Plainfield High School.  Brian."

15          And I can stop -- well, actually, I can continue to

16  read, but all this relates --

17          THE REPORTER:  I'm sorry --

18          MS. PRESTON:  -- to additional threats.

19          I'm -- I'll condition -- I'll continue to read, Your

20  Honor, but just for the record, some of what I'm reading is

21  also the factual basis that we are using to establish

22  additional counts later on.  I just wanted that to be clear.

23          THE COURT:  All right.  You may.

24          MS. PRESTON:  On January 3rd, 2016, Victim 10, a

25  Plainfield High School board member, received the following

 1  threat from Hernandez on his publicly available e-mail

 2  account:  "Hello, Mr.," insert victim name, "Want to see a

 3  bunch of people slaughtered like pigs in the slaughterhouse?

 4  You should pay close attention to your schools because I'm

 5  coming mother F'er.  Why has Victim 1 been given a free pass?

 6  Unacceptable.  I will make this right."  I will -- "I would

 7  love to murder you and Victim 10's wife before I go on my

 8  killing spree.  I'm looking you up, your address, as we speak.

 9  Bye."

10          Your Honor, based on those facts, and as set forth

11  in Counts 18 through 21, it is stipulated that between in or

12  about December 17 and December 20, 2015, within the Southern

13  District of Indiana and elsewhere, the defendant used an

14  instrument of interstate or foreign commerce to willfully make

15  threats or maliciously convey false information, knowing the

16  same to be false, concerning an attempt or alleged attempt

17  being made or to be made to kill, injure, or intimidate any

18  individual or unlawfully damage or destroy any building,

19  vehicle, or other real or personal property by means of fire

20  or an explosive.

21          We would have shown, Your Honor, as set forth in

22  Counts 18, 19, 20, and 21 of the superceding indictment, the

23  following, which is beginning on that next page, Your Honor.

24  Taking each one at a time, on December 17, 2015, the defendant

25  posted on Facebook a threat to bomb Plainfield High School.

 1  That was located at 1 Red Pride Drive in Plainfield,

 2  Indiana, in the Southern District of Indiana.

 3          THE COURT:  All right.  Mr. Hernandez, did you hear

 4  the factual basis for Count 18?

 5          THE DEFENDANT:  Yes.

 6          THE COURT:  And is that the truth?

 7          THE DEFENDANT:  Yes.

 8          THE COURT:  Count 19.

 9          MS. PRESTON:  Yes, Your Honor.  Thank you.

10  December 17, 2015, the evidence would show that on

11  December 17, 2015, the defendant used the Internet, namely

12  Facebook, to threaten to bomb Danville Community High School

13  located at 100 Warrior Way in Danville, Indiana, within the

14  Southern District of Indiana.

15          THE COURT:  Mr. Hernandez, did you hear the factual

16  basis for Count 19?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And is that the truth?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Count 20?

21          MS. PRESTON:  December 20th, 2015, the defendant

22  used the Internet, namely Facebook, to threaten to bomb The

23  Shops at Perry Crossing, located at 2499 Perry Crossing Way in

24  Plainfield, Indiana, in the Southern District of Indiana.

25          THE COURT:  And, Mr. Hernandez, did you hear the

1   factual basis for Count 20?

2           THE DEFENDANT:  Yes.

3           THE COURT:  And is that the truth?

4           THE DEFENDANT:  Yes.

5           THE COURT:  Count 21?

6           MS. PRESTON:  December 20th, 2015, the evidence

7   would show and is stipulated that the defendant used the

8   Internet, namely Facebook.com, to threaten to bomb Walmart

9   located in Plainfield, Indiana, in the Southern District of

10  Indiana.

11          THE COURT:  And did you hear the factual basis for

12  Count 21?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And is that the truth?

15          THE DEFENDANT:  Yes.

16          THE COURT:  All right.  So we've got Counts 18

17  through 21.  The next counts are -- there's one count of

18  sextortion, Count 22, and I will give him the elements for

19  Count 22.  The elements for Count 22, threats and extortion

20  are:  One, that you, the defendant, knowingly sent a message

21  or communication containing a threat to kill, injure, or

22  kidnap Victim 3; two, that you, the defendant, sent that

23  communication with intent to extort something of value from

24  Victim 3; and, three, that the communication was sent in

25  interstate commerce.  Did you hear the elements for Count 22?

1            THE DEFENDANT:  Yes.

2            THE COURT:  And would you give us a factual basis

3    for that count?

4            MS. PRESTON:  Yes, Your Honor.  In September 2014,

5    Victim 3 was 18 years old and --

6            THE COURT:  What page are you on?

7            MS. PRESTON:  Oh, I'm sorry.  It's right after --

8            THE COURT:  On page 15?

9            MS. PRESTON:  The page above, but if you skip

10   forward two pages from where we were, there's a header

11   entitled "Hernandez Obtains Pornography from Victim 3

12   through Coercion."

13           THE COURT:  Okay.

14           MS. PRESTON:  It's at the top.

15           THE COURT:  All right.  It's docket 131, page 17.

16   You may.

17           MS. PRESTON:  Thank you, Your Honor.

18           On September 2014, Victim 3 was 18 years old and

19   resided in Indianapolis, in the Southern District of Indiana.

20   Beginning sometime in 2014, Hernandez, using the means and

21   methods we've already discussed here today, Your Honor,

22   coerced Victim 3 to produce and distribute sexually explicit

23   images and videos of Victim 3.

24           From at least 2014 to on or about August 3rd, 2017,

25   Hernandez sexually extorted Victim 3.  Hernandez first

1  contacted Victim 3 via the Internet using the same account he

2  used to contact Victim 1, and falsely claimed to already

3  possess sexually explicit images of Victim 3.  Hernandez

4  then threatened to post the sexually explicit images of

5  Victim 3 on the Internet if she refused to produce additional

6  pornography of herself and distribute it to Hernandez.

7          For nearly three years, Hernandez sexually extorted

8  Victim 3.  Throughout that time period, Hernandez threatened

9  to post Victim 3's pornography or to murder, injure, or

10  harm Victim 3 and her family if she either refused or

11  expressed reluctance or hesitation -- excuse me, hesitation to

12  comply with his demands.

13          We would have proven that, as set forth in Count 22,

14  between on or about September 11, 2014, and on or about

15  August 3rd, 2017, in the Southern District of Indiana and

16  elsewhere, that Buster Hernandez, the defendant, extorted

17  Victim 3, using a facility of interstate commerce to threaten

18  to kill, injure, or kidnap Victim 3 and her family to extort

19  from Victim 3 a thing of value, namely images and videos of

20  Victim 3 engaged in sexually explicit conduct, and that it

21  was done in violation of Title 18 United States Code, Section

22  875(b).

23          THE COURT:  Okay.  Is that it for that count?

24          MS. PRESTON:  Your Honor, I probably should go ahead

25  and read --

1          THE COURT:  Read the rest?

2          MS. PRESTON:  Yes, Your Honor.

3          THE COURT:  Is this going into Count 23, or this is

4   all for Count 22?

5          MS. PRESTON:  It concerns Victim 3, so it should

6   probably be read with respect to Count 22.  But, to be clear,

7   it's part of the entirety of the offense conduct, so it will

8   apply to multiple counts.

9          THE COURT:  All right.  Go ahead and read.

10          MS. PRESTON:  On January 5th, 2016, Hernandez used

11   the Internet to communicate with Victim 3 about his

12   sextortion of Victim 1 in a series of messages.  In one

13   message, he stated that, "Victim 1 was cool, but a little

14   difficult to work with, which is understandable.  She was

15   snobby most of the time, which I understand, and she blew off

16   dates a bunch, as well.  But at the end of the day, I knew I

17   could trust her and she was cool whenever we did talk about

18   stuff."

19          Another message sent approximately 40 minutes later

20   continued the conversation about Victim 1 and ended with,

21   "I've been in this situation a billion times with people.  I

22   blackmail for money/info or girls for nudes.  A lot of times

23   they just fake pretend to be a cop or family member to try and

24   scare you, so I had to test it out."

25          Additionally, Hernandez wrote, "Nah, I hope not

48

1  LMAO.  I still a lot more stealing and blackmailing to do.  I

2  want to become the worst cyber terrorist that ever lived."

3          On January 6th, Hernandez sent a message to Victim

4  3 that said, "Yeah.  Well, I deserve to be thrown in jail

5  tbh.  If I ever do get caught, just don't come forward with

6  our stuff.  That will add another 10 years x.x."

7          On January 12th, 2016, Hernandez sent the following

8  messages via the Internet to Victim 3 relating to the

9  community forum that was about to be held on January 19th,

10 2016, at Plainfield High School, organized by the

11 administration and law enforcement.

12         He said, "There's gonna be a community forum/meeting

13 at Plainfield High next.  I need you to go to it. n-__n.  I

14 need you to go and tell me what they say.  It's Tuesday night

15 at 7:30.  I need to know what the feds have to say.  I can't

16 go.  I fit the profile for the suspect.  They will be looking

17 for me.  No one's gonna notice a black girl with an afro.  You

18 just gotta sit there for an hour and look pretty.  Laugh at

19 all the angry moms and drive home.  I 1,000 percent need you

20 to go.  Don't say 'help' because then you become an

21 accomplice.  You're being forced to do what I say or else.

22 Always remember that."

23         On January 19, 2016, law enforcement held a

24 community forum at Plainfield High School.  Members of the

25 FBI, the United States Attorney's Office, and Plainfield

1   school administrators spoke at the forum.  Some -- subsequent

2   to the community forum, Hernandez, using the name Brianna

3   Killian and Brian Mil, posted the following messages via the

4   Internet about what occurred during the forum and who

5   attended.

6        He said, "Only 200 subpoenas.  What have you been

7   doing for nearly two months?  Only 200.  LMAO.  I'm going to

8   kill Victim 1 and unload on her friends, and you only did

9   200?" with a series of Zs.  "Searching for the lady with the

10  nine-year-old who talked.  Red scarf.  Short hair.  Another

11  interesting thing before I go to bed.  The fat blonde lady

12  with the glasses on top of her head and the tie-die shirt

13  underneath a white vest, 'How do we know he's not here?'  I

14  was, and I learned a lot.  Only 200 subpoenas."

15       "'What happens if he's not caught?'  Charity, I was

16  shaking my damned head when you asked that, Charity.  If I'm

17  not found, then I go on to make more threats and then kill

18  your kids.  Dumb bitch.  You had an entire week to think of a

19  question and that's what you ask, 'What if he's not caught?

20  I'm so stupid please tell me what happens if he's not

21  caught.'"

22       "Chicago lady spoke after him.  She said nothing of

23  importance.  She's useless.  She's coming back here to talk to

24  us about staying safe on-line.  She also lied about why they

25  are so tight lipped.  She said it's because, 'They know best.'

50

1  Later someone asks a question like this and they flip flop.

2  The real answer is, they don't know shit 200 court orders

3  later.  They are incompetent.  Arrested poor Patrick for no

4  reason."

5          Your Honor, those are the facts that would establish

6  Count 22, among other counts in the indictment.

7          THE COURT:  What's happening there?  So Victim 3

8  actually goes to the forum?

9          MS. PRESTON:  Your Honor, what happened, that we

10  would have shown, is that for a long time, Mr. Hernandez had

11  been sextorting Victim 3.  After Mr. Hernandez had started to

12  threaten Victim 1 in the Plainfield community, we publicly

13  announced that forum.

14          He then asked Victim 3 to attend personally.  We

15  weren't allowing TV cameras inside.  If she attended

16  personally, what we asked her to do, in messaging that we

17  would have presented to the jury, was to sit there and not

18  only record the whole thing so that he could hear it later on,

19  but to take notes on what people were wearing, so that it

20  would appear as though he was actually there.  Of course, we

21  learned this all later on.  So when he was describing in those

22  publicly-posted messages, it made people believe that he had

23  actually been present at the forum when he actually was not.

24          THE COURT:  Okay.  All right.

25          And, Mr. Hernandez; is that correct?  Is that what

1  you did?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Okay.  Counts 23, 24, 25, 26, 27, 28,

4  29, 30, 31, and 32 are each a count of threats to kill,

5  kidnap, and injure.  And the elements of those counts are:

6  One, that you, the defendant, transmitted communications

7  containing threats to kidnap or injure the person of another

8  as described in Counts 14 through 26 of the indictment; two,

9  you, the defendant, Mr. Hernandez, acted knowingly; and,

10 three, you -- the defendant's communications were transmitted

11 in interstate or foreign commerce.  Do you understand the

12 elements of Counts 23 through 32?

13         THE DEFENDANT:  Yes.

14         THE COURT:  And you may give us a factual basis.

15         MS. PRESTON:  Yes, Your Honor.  As the Court is

16 aware, I've already read into the factual basis the specifics

17 of some of the threats made to bomb certain locations and kill

18 certain people who were inside of those locations, so many of

19 the facts that I've already read into the record will be used

20 to establish these counts, so I won't repeat them here.

21         What the evidence would show, through those Facebook

22 posts and through other messages using facilities of

23 interstate commerce and as set forth in Counts 23 through 32,

24 is that between on or about December 15, 2015, and

25 January 3rd, 2016, within the Southern District of Indiana and

1  elsewhere, the defendant transmitted in interstate or foreign

2  commerce communications containing threats to kidnap or injure

3  the person of another as described below.  Starting with

4  Count 23, December 15, 2015, the defendant, using a facility

5  of interstate commerce, threatened to kill Victim 1's

6  mother, who is identified as Victim 7.

7          THE COURT:  Is that correct, Mr. Hernandez?

8          THE DEFENDANT:  Yes.

9          MS. PRESTON:  Count 24, December 15, 2015, the

10 defendant, using a facility of interstate commerce, threatened

11 to kill Victim 1 and to kidnap Victim 1's minor sibling

12 identified in the superceding indictment as Victim 8.

13         THE COURT:  And is that correct, Mr. Hernandez?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Count 25?

16         MS. PRESTON:  December 17th, 2015, the defendant,

17 using an account on Facebook, threatened to kill Victim 1.

18         THE COURT:  Is that accurate?

19         THE DEFENDANT:  Yes.

20         THE COURT:  All right.  Count 26?

21         MS. PRESTON:  December 17th, 2015, Defendant, using

22 an account on Facebook, threatened to kill students at

23 Plainfield High School in Plainfield, Indiana, in the Southern

24 District of Indiana.

25         THE COURT:  And with respect to Count 26, is what

1  she stated the truth?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Count 27?

4          MS. PRESTON:  December 17th, 2015, the defendant,

5  using Facebook, threatened to kill students at Danville High

6  School, located in Danville, Indiana, in the Southern District

7  of Indiana.

8          THE COURT:  And is that accurate, Mr. Hernandez?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Count 28?

11          MS. PRESTON:  December 20, 2015.  On or about

12  December 20, 2015, the defendant, using an account on

13  Facebook, threatened to kill Victim 1 and Victim 1's

14  former significant other, who's identified as Victim 9.

15          THE COURT:  And is that correct?

16          THE DEFENDANT:  Yes.

17          THE COURT:  You may move on to Count 29.

18          MS. PRESTON:  December 20, 2015, the defendant,

19  using Facebook, threatened to kill patrons at The Shops at

20  Perry Crossing in Plainfield, Indiana, in the Southern

21  District of Indiana.

22          THE COURT:  And is that correct, Mr. Hernandez?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Count 30?

25          MS. PRESTON:  On December 20, 2015, the defendant,

54

1   using Facebook, threatened to kill police and first responders

2   at The Shops of Perry Crossing in the Southern District of

3   Indiana.

4           THE COURT:  Is that correct, sir?

5           THE DEFENDANT:  Yes.

6           THE COURT:  Count 31?

7           MS. PRESTON:  December 21, 2015, the defendant,

8   using an account --

9           THE REPORTER:  I'm sorry.  I lost you.

10          MS. PRESTON:  I'm sorry.

11          December 21, excuse me, 2015, the defendant, using

12  an account on Facebook, threatened to kill Victim 1 with a

13  rifle.

14          THE COURT:  And, Mr. Hernandez, is that true?  Did

15  you do that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  32?

18          MS. PRESTON:  On January 3rd -- on January 3rd,

19  2016, the defendant, using an account on Yandex.com, that

20  being cop-killer-pipeb@yandex.com, an e-mail account,

21  threatened to kill Victim 10 via e-mail, who was a high

22  school board member, and threatened to kill Victim 10's

23  family, as well as students from Plainfield High School.

24          THE COURT:  And is that true?  Did you do that,

25  Mr. Hernandez?

55

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.  Court reporter, do you need

3   a minute?

4          THE REPORTER:  Probably so.

5          THE COURT:  Okay.  He needs a minute.

6          MS. PRESTON:  Yes, Your Honor.

7          THE COURT:  Let's give him two minutes.  Let's take

8   a three-minute break and all stand up.

9          THE COURTROOM DEPUTY:  All rise.

10          (Recess at 5:13, until 5:18.)

11          THE COURT:  We're back on the record.

12          And we are now on Count -- Counts 33 through 38, and

13   those are each counts of witness tampering.  And the factual

14   basis for those counts is as follows -- I'm sorry.  The

15   elements of those counts.

16          Mr. Hernandez, with respect to Counts 33 through 38,

17   the elements are:  One, that you, the defendant, used or

18   attempted to use, intimidation or threats or corruptly

19   persuaded or engaged in misleading conduct toward the victim

20   identified in each count of the superceding indictment; two,

21   that you, the defendant, acted knowingly; three, that you, the

22   defendant, acted with the intent to hinder, delay, or prevent

23   the communication of information to a law enforcement officer

24   of the United States; and, four, such information related to

25   the commission or possible commission of a federal offense,

1  namely production, distribution, and possession of child

2  pornography, and coercion and enticement of a minor.

3          And if you would give us the factual basis for those

4  counts.

5          MS. PRESTON:  Yes, Your Honor.  Again, I've already

6  read much of the factual basis associated with these counts.

7  In addition to that, the United States would have shown, and

8  it is stipulated as set forth in Counts 33 through 38 of the

9  superceding indictment, that between on or about 2012 to

10 August 3rd, 2017, within the Southern District of Indiana and

11 elsewhere, the defendant used a threat of physical force

12 against Victims 1, 3, 4, 5, 6, and 7 by threatening to kill,

13 injure, kidnap, or disseminate images and videos depicting

14 minors engaged in sexually explicit conduct with the intent to

15 hinder, delay, or prevent the communication to a state or

16 federal law enforcement officer relating to the commission of

17 a federal offense, namely production, distribution, and

18 possession of child pornography.  As to Count 33, the United

19 States would have proven witness -- excuse me.  The United

20 States would have proven those elements and that he knowingly

21 did so with respect to Victim 1.

22          THE COURT:  All right.  And did you hear what she

23 stated, Mr. Hernandez, between 2012 to August 3rd of 2017 --

24          THE DEFENDANT:  Yes.

25          THE COURT:  -- with respect to Victim 1?

1          THE DEFENDANT:  Yeah.

2          THE COURT:  All right.  Count 34?

3          MS. PRESTON:  With respect to Count 34, between 2012

4   and August 3rd, 2017, that he knowingly committed witness

5   tampering as against Victim 3 as previously described.

6          THE COURT:  And do you agree with that,

7   Mr. Hernandez?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Count 35?

10         MS. PRESTON:  As set forth in Count 35, between 2012

11  and August 3rd, 2017, the defendant committed the offense of

12  witness tampering as previously described, knowingly, as to

13  Victim 4.

14         THE COURT:  Do you agree?

15         THE DEFENDANT:  Yes.

16         THE COURT:  And 36?

17         MS. PRESTON:  Between 2012 and August 3rd, 2017, the

18  defendant committed the offense of witness tampering as to

19  Victim 5, that he did so knowingly as previously described.

20         THE COURT:  And do you agree?

21         THE DEFENDANT:  Yes.

22         MS. PRESTON:  Count 37, between 2012 and August 3rd,

23  2017, that the defendant committed the offense of witness

24  tampering as against Victim 6, that he did so knowingly and

25  as previously described.

1          THE COURT:  And do you agree?

2          THE DEFENDANT:  Yes.

3          MS. PRESTON:  Finally, with respect to Count 38,

4    between 2012 and August 3rd, 2017, that the defendant

5    committed the offense of witness tampering as to Victim 7,

6    that he did so knowingly as previously described.

7          THE COURT:  And do you agree?

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right.  So we've got a factual basis

10   for Counts 30 -- let's see, Counts 33 through Count 38?

11         MS. PRESTON:  Yes, Your Honor.

12         THE COURT:  I'm going to give you the elements for

13   Count 39.  Count 39 is obstruction of justice.  The elements,

14   Mr. Hernandez, are:  One, that you, the defendant, attempted

15   or did alter, destroy, mutilate, or conceal a record,

16   document, or other object; two, that you, the defendant, acted

17   knowingly; three, you, the defendant, acted corruptly; and,

18   four, you, the defendant, acted with the intent to impair the

19   object's integrity or availability for use in an official

20   proceeding.

21         So what happened on this one?

22         MS. PRESTON:  Your Honor, during Mr. Hernandez's

23   August 3rd arrest, and just as law enforcement officers

24   entered his room, Mr. Hernandez intentionally removed the

25   thumb drive containing the operating system, that was designed

1  to erase itself upon removal from the computer, in an

2  intentional effort to destroy evidence.

3         Therefore, and as set forth in Count 39, on or about

4  August 3rd, 2017, in Bakersfield, California and elsewhere,

5  the defendant, Buster Hernandez, to conceal the criminal acts

6  that have been previously described here today committed

7  within the Southern District of Indiana, corruptly altered,

8  destroyed, mutilated, or concealed a record, document, or

9  other object, that is evidence of his criminality, or

10  attempted to do so, with the intent to impair the object's

11  integrity or its availability for use in an official

12  proceeding, namely the federal criminal investigation of his

13  conduct occurring in the Southern District of Indiana.

14         THE COURT:  What did he do?  What did he destroy?

15         MS. PRESTON:  So, Your Honor, he destroyed evidence

16  of his crimes.  The way that he was committing these offenses

17  is through an operating system called Tails.  As law

18  enforcement entered his residence, Mr. Hernandez was already

19  using the Tails operating system by plugging in -- his thumb

20  drive into a gutted, or brained, laptop system.

21         When Mr. Hernandez realized that law enforcement had

22  entered his residence, he pulled out that thumb drive from the

23  laptop.  And he did so knowing -- because this is how the

24  operating system, as I described earlier, works -- that when

25  you pull out that thumb drive, it is volatile memory, meaning

1    everything he was doing during that session was erased

2    immediately, thereby knowingly destroying evidence of his

3    criminal conduct.

4              THE COURT:  Okay.  All right.

5              And did you hear the factual basis with respect to

6    that count?  This is 39.

7              THE DEFENDANT:  Yes.

8              THE COURT:  And is that what happened?  Is that what

9    you did?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Okay.

12             All right, the next counts are 40 through 41, and

13   those are each a count of retaliation against a witness or

14   victim.  The elements of Counts 40 and 41 are:  One, that you,

15   the defendant, took any action harmful to the victim or

16   witness identified in each count of the superceding

17   indictment, including interference with the lawful employment

18   or livelihood of any victim or witness identified in each

19   count of the superceding indictment; two, that you acted

20   knowingly; and, three, that you did so for the victim or

21   witness providing to any law enforcement officer any truthful

22   information relating to the commission or possible commission

23   of any federal offense.

24             And if you could give us a factual basis as to what

25   happened in Counts 40 and 41.

1          MS. PRESTON:  Yes, Your Honor.  As I said before,

2   Victims 1 and 7 lived in Plainfield, Indiana, at the time.

3   And in retaliation for Victim 1 and Victim 7 reporting this

4   conduct to law enforcement, Mr. Hernandez threatened to kill

5   them through the posts on Facebook and other social media that

6   I've already described.

7          The evidence would show that he knew Victims 1 and 7

8   had reported this conduct to the police and that, in

9   retaliation for that, what he did, as I've already described,

10  was to post sexually explicit images of Victim 1 for the

11  community to see, as well as threaten to kill her, and Victim

12  7.

13         So, through those facts, and as set forth in

14  Counts 40 through 41, between on or about December 12, 2015,

15  and on or about August 3rd, 2017, in the Southern District of

16  Indiana and elsewhere, the defendant, Buster Hernandez, did

17  knowingly, with intent to retaliate, take an action harmful

18  to Victims 1 and 7 for providing to a law enforcement

19  officer truthful information relating to the commission of a

20  federal offense, and that he did so in violation of Title 18,

21  Section 1513(e).

22         THE COURT:  All right.  So, Mr. Hernandez, did you

23  hear the factual basis for Counts 40 and 41?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Count 41 is Victim 1; do you agree --

1          THE DEFENDANT:  Yes.

2          THE COURT:  -- that you did those things?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And Count 41 is Victim 7.  Do you

5    agree that you did those things?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Okay.  All right.  Those are all of the

8    counts, but you have some more facts you need to put in?

9          MS. PRESTON:  Yes, Your Honor, just a few, if I may.

10          THE COURT:  Would you, please.

11          MS. PRESTON:  Your Honor, as set forth in the

12    stipulated factual basis, Hernandez also obtained child

13    pornography through -- excuse me, from Victim 2 through

14    coercion.  Between 2012 and August 3rd, 2017, Victim 2 was a

15    minor who resided in Brownstown Charter Township in Michigan.

16    Beginning sometime in 2012 and continuing until August 3rd,

17    Hernandez, using the means and methods I've already described,

18    coerced Victim 2 to produce and distribute images and videos

19    that depicted Victim 2 engaging in sexually explicit

20    conduct, knowing that Victim 2 was a minor.  This extortion

21    continued past her age of majority until -- and included after

22    she turned 18, which was in 2015.

23          Hernandez first contacted Victim 2 via the Internet

24    after searching for publicly available information regarding

25    Victim 2 and falsely claimed to already possess sexually

1  explicit images of Victim 2.  Hernandez then threatened to

2  post the sexually explicit images of Victim 2 on the

3  Internet if she refused to produce additional child

4  pornography of Victim 2 and distribute it to Hernandez.

5        For nearly five years, Hernandez sexually extorted

6  Victim 2.  Throughout that time period, Hernandez threatened

7  to post Victim 2's child pornography or to murder, rape, or

8  injure Victim 2 and her family if she either refused or

9  expressed reluctance or hesitation to comply with his demands.

10        Between in or about 2012 and on or about August 3rd,

11  2017, Hernandez distributed images and videos of other minors

12  to Victim 2, as well as agents of the FBI who were acting in

13  an undercover capacity as Victim 2, in order to coerce

14  Victim 2 to produce child pornography of herself.

15        Hernandez also sent the following messages to

16  Victim 2:  "I know where you live.  I come at night.  I come

17  at night for all of my slaves eventually.  Have I ever made

18  you cry?"  Hernandez then sent Victim 2 images depicting

19  several unknown victims, who appeared to be minors engaging in

20  sexually explicit conduct as they cried.

21        Hernandez messaged Victim 2 stating, "I make girls

22  cry."  Hernandez then distributed a sexually explicit image,

23  constituting child pornography, of an unidentified victim who

24  was a minor, crying as she took the image or a selfie in the

25  mirror.

1          Victim 2 said, "Stop.  I don't want to see that."

2    But Hernandez continued sending additional images depicting

3    other minors -- excuse me, other minor victims, nude or

4    partially nude, who were crying, and said, "Look at this one.

5    She had a nervous breakdown knowing that I was going to tell

6    mommy or daddy," I believe.  I'm looking for the next page.

7          I'm sorry, Your Honor.  Give me one minute.

8          THE COURT:  Sure.  Yes.  It says, "would tell mommy

9    and daddy."

10          MS. PRESTON:  And I'm trying to find, I'm sorry,

11    that --

12          THE COURT:  It's page 17.  But then, after it says,

13    "would tell mommy and daddy," it says, "Hernandez Obtains

14    Pornography from victim 3 though" --

15          MS. PRESTON:  Thank you, Your Honor.  I'm now moving

16    to the portion of the factual basis that begins with -- it's

17    after Count 32, and it says, "Hernandez Threatens to Kill and

18    Rape Victim 2 and Victim 2's Family."

19          THE COURT:  Okay.  For the record, that's on docket

20    131, page 21.

21          MS. PRESTON:  On or about June 9, 2017, law

22    enforcement interviewed Victim 2.  Hernandez was still

23    extorting Victim 2 and had been instructing Victim 2 to

24    upload images and videos to a Dropbox.com account known to

25    investigators.  The Dropbox.com account was not publicly

1   accessible.

2            On June 9, 2017, United States Magistrate Judge

3   Debra McVicker Lynch entered an order permitting the

4   government to use an "employ" to identify the IP address

5   associated with Hernandez, who was presently extorting Victim

6   2.  With the consent of Victim 2, law enforcement began

7   communicating with Hernandez as Victim 2 in an undercover

8   capacity.

9            During law enforcement's undercover communications

10   with Hernandez, and under the lawful authority given to them

11   by the Court's order, the FBI uploaded a small piece of code

12   to a video file produced by Victim 2, which did not contain

13   any visual depictions of a minor engaged in sexually explicit

14   activity.  As authorized, the FBI then uploaded the video file

15   containing the code to the Dropbox.com account known only to

16   Hernandez and Victim 2.

17            When Hernandez viewed the video containing the code

18   on the computer, the code disclosed the true IP address

19   associated with the computer used by Hernandez.  The

20   stipulated factual basis is then -- includes the screenshot

21   showing what occurred afterwards, which would have proven that

22   Mr. Hernandez did, indeed, open up that video file that

23   exposed his true IP address.

24            After receiving the video, and in retaliation for

25   not sending Hernandez the desired sexually explicit images,

1    Hernandez began sending messages to the family of Victim 2,

2    stating that Hernandez was going to murder and rape them.

3    Using the true IP address, law enforcement officers were able

4    to locate Hernandez at his residence in Bakersfield.

5          I then can move on to finish by discussing the

6    stipulated factual basis with respect to Victims 11 and 12.

7              THE COURT:  If you would.

8              MS. PRESTON:  The United States would have shown,

9    and it is stipulated, that Hernandez --

10             THE COURT:  These are uncharged victims; correct?

11             MS. PRESTON:  That is correct, Your Honor.

12             THE COURT:  All right.

13             MS. PRESTON:  As is Victim 2, Your Honor.

14             THE COURT:  All right.  This is all relevant

15   conduct?

16             MS. PRESTON:  Yes.

17             THE COURT:  Okay.

18             MS. PRESTON:  Hernandez further admits that between

19   in or about 2013 and on or about August 3rd, 2017, Victims 11

20   and 12 were minors who resided in Florida and Virginia

21   respectively.  Beginning sometime in 2013 and continuing until

22   August 3rd, 2017, Hernandez, using the means and methods we've

23   already discussed here today, coerced Victims 11 and 12 to

24   produce and distribute images and videos depicting Victims 11

25   and 12 engaging in sexually explicit conduct, knowing that

1  Victims 11 and 12 were minors.  Hernandez continued to

2  sexually extort Victim 11 after she turned 18.

3          The devices, as I said before, that were used to

4  create the child pornography of all of these victims we've

5  discussed today were manufactured outside of the state of

6  Indiana or contain parts that were manufactured outside of the

7  state of Indiana and, therefore, traveled in interstate or

8  foreign commerce.  And, as I've previously said, Hernandez

9  used the Internet, a facility of interstate commerce, to

10 extort adult and minor victims; threatened to use explosive

11 devices; and threatened to rape, kidnap, and injure his

12 victims.

13         And for the record, Your Honor, as I read earlier,

14 there is an addendum to the factual basis.  It includes 196

15 social media and e-mail accounts that, through the stipulated

16 factual basis, the defendant has acknowledged to using to

17 commit the subject offenses, namely sexual exploitation of

18 children; threats to injure, kill, or kidnap; threats to use

19 explosive devices; and coercion and enticement of minors.

20         THE COURT:  Is this Exhibits -- Trial Exhibits 1

21 through 199 --

22         MS. PRESTON:  So --

23         THE COURT:  -- some of those?

24         MS. PRESTON:  The three that are missing.  So

25 Government Exhibits 1 through 199 included three accounts that

1   were relevant to our proof, but that were not -- and the

2   evidence of his IP address, but were not used by Hernandez to

3   commit -- himself, to commit the subject offenses, so I

4   removed those --

5           THE COURT:  Okay.

6           MS. PRESTON:  -- from this addendum.

7           THE COURT:  All right.

8           MR. GARCIA:  And we would stipulate to the -- and we

9   would stipulate to those, as we did and attached to our

10  factual basis and incorporated into it, Your Honor.

11          THE COURT:  Okay.  Do you agree, sir?

12          THE DEFENDANT:  Yes.

13          THE COURT:  All right.  Okay.  Mr. Hernandez, did

14  you hear everything that the government attorney read into the

15  record as the factual basis?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And is everything she said about what

18  happened the truth?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Is there anything you need to change or

21  correct about the factual basis?

22          THE DEFENDANT:  No.

23          THE COURT:  Mr. Garcia?

24          MR. GARCIA:  No, Your Honor.

25          THE COURT:  The Court will find that a factual basis

1   exists for the plea of guilty, an independent record of the

2   factual basis has been made, and the factual basis contains

3   each of the essential elements of the 41 counts that Defendant

4   is pleading to.

5          So we're going to go ahead and continue with your

6   plea agreement.  So, by pleading guilty, sir, you are

7   admitting that the government could prove each of the elements

8   of the 41 counts against you beyond a reasonable doubt; do you

9   understand?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Because there's no plea agreement, I

12  will use my discretion to fashion a sentence within the

13  statutory range that we talked about earlier.  And I need to

14  advise you about consecutive and concurrent sentences, because

15  you're pleading guilty to multiple counts.  A consecutive

16  sentence would mean you would serve a penalty one after the

17  other, as opposed to concurrent, where all of your time runs

18  together.  Do you understand that that possibility exists?

19         THE DEFENDANT:  Yes.

20         THE COURT:  And, Government, what is the possible

21  penalty?

22         MS. PRESTON:  Your Honor, the mandatory --

23         THE COURT:  Is there a mandatory and --

24         MS. PRESTON:  Yes, Your Honor.  The mandatory

25  minimum sentence of imprisonment here would be 15 years.  The

1   maximum sentence is life imprisonment.

2           THE COURT:  Okay.  Do you understand that, sir?

3           THE DEFENDANT:  Yes.

4           THE COURT:  Okay.  All right.  So, to -- so I'm

5   going to use my discretion to fashion a sentence within that

6   range, a mandatory minimum of 15 and a maximum of up to life.

7   And to help me do that, I'm going to consider factors that are

8   set forth in Title 18 United States Code, Section 3553(a).

9   The 3553(a) factors are things such as the nature and

10  circumstances of the offense, your criminal history if you

11  have one, your characteristics, the need for the sentence to

12  reflect the very seriousness of these offenses, to promote

13  respect for the law, to provide just punishment, and to

14  provide adequate deterrence.  So I will consider all of those

15  factors; do you understand?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And, Mr. Garcia, did you go through the

18  3553(a) factors with your client?

19          MR. GARCIA:  We've discussed them, as well, Your

20  Honor.

21          THE COURT:  All right.  So, in addition to the

22  3553(a) factors, I will consult and take into account the

23  United States Sentencing Guidelines, but you should understand

24  that the guidelines are not mandatory or binding.  Rather,

25  they're advisory in nature; do you understand that, sir?

1           THE DEFENDANT:  Yes.

2           THE COURT:  And, Mr. Garcia, did you go through the

3   guideline calculations in the chart?

4           MR. GARCIA:  Yes, Your Honor.

5           THE COURT:  Okay.  Sir, once I have accepted your

6   plea of guilty -- and I'm sure the government is going to ask

7   me to accept it today --

8           MS. PRESTON:  Yes, Your Honor.

9           THE COURT:  -- you'll be bound by the guilty plea;

10  do you understand?

11          THE DEFENDANT:  Yes.

12          THE COURT:  If I impose a sentence higher or lower

13  than any recommendation that you and Mr. Garcia make, or

14  higher or lower than any argument that the government makes,

15  or if I decide to sentence you outside of the advisory

16  guideline sentencing range for any reason, or if I determine

17  that a guideline sentencing range different than what you and

18  your lawyer have calculated or different from what the

19  government attorneys have calculated, or even if I determine a

20  criminal history category that is different, you will not be

21  able to withdraw your plea of guilty for those reasons; do you

22  understand?

23          THE DEFENDANT:  Yes.

24          THE COURT:  And so you'll still be bound by your

25  plea of guilty and not allowed to withdraw; do you understand?

1          THE DEFENDANT:  Yes.

2          THE COURT:  I can order a fine, I can order

3   restitution to the victims, I can order a length of supervised

4   release and determine the conditions of that release; do you

5   understand?

6          THE DEFENDANT:  Yes.

7          THE COURT:  If you are not a United States citizen,

8   pleading guilty and a conviction for these offenses would have

9   consequences on your immigration status.  And if you were an

10  illegal alien, you would likely had been deported after

11  service of any executed sentence; do you understand?

12         THE DEFENDANT:  Yes.

13         THE COURT:  I can also order forfeiture of any

14  right, title, and interest in any property, money, contraband

15  that was used in your criminal offenses, so any computers and

16  cell phones, anything that was seized incident to your arrest

17  in this case; do you understand that?

18         THE DEFENDANT:  Yes.

19         THE COURT:  By pleading guilty, I can still impose

20  the same punishment as if you had maintained your innocence

21  and gone to trial and been found guilty by a jury; do you

22  understand?

23         THE DEFENDANT:  Yes.

24         THE COURT:  You do have both a statutory and

25  constitutional right to appeal the conviction and any sentence

1  that's going to be imposed and the way your sentence will be

2  determined.  You will have a right to have an attorney

3  appointed to represent you in an appeal if you're unable to

4  afford to hire counsel or to pay a filing fee.  And any notice

5  of appeal will have to be filed within 14 days after your

6  judgment is entered in this case.  So 14 days after your

7  sentence, you'll have to file an appeal within that time

8  period; do you understand?

9              THE DEFENDANT:  Yes.

10             THE COURT:  All right.  So we've got a factual

11 basis.  And are there any other questions that you think I

12 need to ask him, Mr. Garcia?

13             MR. GARCIA:  No, Your Honor.

14             THE COURT:  Government?

15             MS. PRESTON:  No, Your Honor.  I believe you've

16 covered it was knowing and voluntary and that there's

17 absolutely no agreement with the government at this time.  So,

18 no, Your Honor.

19             THE COURT:  All right.  So the government is not

20 going to be offering the third level?

21             MS. PRESTON:  Your Honor, the third level, yes.

22 And -- yes, Your Honor, we'll be offering the third level of

23 acceptance.

24             THE COURT:  You're going to still do that?

25             MS. PRESTON:  Yes.

74

1        THE COURT:  Even -- okay.  Even though --

2        MS. PRESTON:  Yes.

3        THE COURT:  -- we have all these jurors waiting for

4    us?

5        MS. PRESTON:  I'm sorry, Your Honor.  Excuse me.  We

6    have no agreement with the defendant regarding the third

7    level.  I'm -- that was completely inaccurate, Your Honor.  So

8    we are reserving the right to challenge acceptance and the

9    third level for acceptance in this case, Your Honor.

10       THE COURT:  Okay.  All right.

11       You understand that, Mr. Garcia?

12       MR. GARCIA:  Yes.  We will continue to be working

13   together on this case towards sentencing, and that, obviously,

14   can mean lots of different things.  So we'll apprise the Court

15   if there's a change in status.

16       MS. PRESTON:  Yes.

17       THE COURT:  Okay.

18       MS. PRESTON:  So I apologize for that, Your Honor.

19       THE COURT:  No problem.

20       All right, Mr. Hernandez, I'm just about done asking

21   you questions and ready to ask you, in a final way, how do you

22   plead to these charges.  Before I do that, do you have any

23   questions for me or Mr. Garcia about anything that we've

24   discussed thus far?

25       THE DEFENDANT:  No.

75

1          THE COURT:  In light of everything that I've

2   explained to you today, and upon advice from your attorney,

3   how do you plead to the charges, Counts 1 through 41,

4   inclusive?  How do you plead to all 41 counts?

5          THE DEFENDANT:  Guilty.

6          THE COURT:  It is the finding of the Court in the

7   case the United States of America versus Buster Hernandez,

8   that Mr. Hernandez is fully competent and capable of entering

9   an informed plea, he is aware of the nature of the charges and

10  the consequences of the plea.  The Court is going to find that

11  the plea of guilty is knowing and it's voluntary, it is

12  supported by an independent basis in fact containing the

13  essential elements of each of the 41 counts.  The plea is

14  therefore accepted and the defendant is now adjudged guilty of

15  Counts 1 through 41 of the superceding indictment.

16             Is there anything further from the government?

17             MS. PRESTON:  No, Your Honor.

18             THE COURT:  Mr. Garcia?

19             MR. GARCIA:  No, Your Honor.  Thank you for the time

20  this afternoon.

21             THE COURT:  So I'm going to go ahead -- we're going

22  to vacate the jury.

23             So you can notify the jury pool.  They're probably

24  gone for the day.

25             And I'm going to order a Presentence Investigation

1  Report.  Mr. Hernandez, someone from the United States

2  Probation Office is going to contact Mr. Garcia first, and he

3  can be present, but they're going to arrange to meet with you.

4  And they're going to prepare a report about you that will

5  assist me in determining what sentence to impose, so you need

6  to cooperate with the Probation Office; do you understand?

7            THE DEFENDANT:  Yes.

8            THE COURT:  Okay.  And so we will -- this is

9  probably going to take a while, because there's a whole bunch

10 of counts.  We will notify you of a sentencing date.

11           Do we -- do we have some dates?

12           (Off the record.)

13           THE COURT:  Oh, she's got some dates, okay.  Let's

14 get some dates since you might have victims.

15           We can do May 21st at 9:00 a.m., which is a

16 Thursday; or Friday, May 15th at 9:00 a.m.  Any preference?

17           MR. GARCIA:  Defense would prefer the 21st, Your

18 Honor.  I'm in a trial scheduled in another matter here on the

19 15th.

20           THE COURT:  Can --

21           MS. PRESTON:  I'm -- I'm sorry, Your Honor.

22           THE COURT:  Can you be available on those dates,

23 Government?

24           MS. PRESTON:  Yes, Your Honor, we can.  Now, I

25 should say that with a caveat.  I do have other trials

1  scheduled that week, but I don't expect that they are going

2  forward on that week.

3           THE COURT:  Okay.

4           MS. PRESTON:  I truly believe they will be moved, so

5  I'd like to schedule the date if it's possible.

6           THE COURT:  All right.  Thursday, May 21st.

7           (Off the record.)

8           THE COURT:  Okay, she says I have a meeting.  Can we

9  do it at 11:00?  You think you're going to need more than two

10 hours?

11          MS. PRESTON:  Yes.

12          THE COURT:  Okay.  Well, we can do it at 1:00.  You

13 can have the entire afternoon.

14          MS. PRESTON:  I think that's -- there are several

15 victims, I know, who will wish to speak, and I want to make

16 sure that we don't bleed into the next day, because they'll be

17 traveling, so I believe we should at least reserve four hours

18 to be safe.

19          THE COURT:  Okay.  The marshals are going to say,

20 "Judge, don't be starting that at 1:00."

21          MR. GARCIA:  And, obviously, we would intend to

22 offer a number of pieces of evidence, too.

23          THE COURT:  Okay.  All right.

24          (Off the record.)

25          THE COURT:  We'll have to do it on Friday -- can you

1  do it Friday, May 22nd?  We have that whole -- no, that's

2  not --

3          MR. GARCIA:  I can't either, Your Honor.

4          THE COURT:  All right.  We can start at 12:00.  You

5  want to start at 12:00 on the 22nd?

6          MS. PRESTON:  Yes, Your Honor.

7          THE COURT:  12:00.  One, two, three, four.

8          MR. GARCIA:  On the 21st?

9          THE COURT:  Yeah, the 21st.  We can do it on that

10 Thursday.  We can start at 12:00.

11         MS. PRESTON:  Yes, Your Honor, I think that will be

12 sufficient.

13         THE COURT:  And then, hopefully, we can -- we won't

14 be here too late.

15         MS. PRESTON:  Yes, Your Honor.

16         THE COURT:  Okay.  We'll do it on Thursday, May

17 22nd, at noon.  We'll start at noon and go until we finish.

18         MS. PRESTON:  Yes, Your Honor.

19         THE COURT:  All right.  Anything further today,

20 lawyers?

21         MS. PRESTON:  No, Your Honor.  Thank you.

22         THE COURT:  All right.  Thank you for working it

23 out.

24         MR. GARCIA:  Yes.

25         THE COURT:  And we can all be very productive over

1    the next two weeks on other things.

2              We are adjourned.  The defendant is remanded to the

3    custody of the United States Marshals.

4              And, Marshals, I'll need him back on May 21st.

5              A DEPUTY U.S. MARSHAL:  Yes, Your Honor.

6              THE COURT:  Thank you.

7              THE COURTROOM DEPUTY:  All rise.

8              (Proceedings adjourned at 5:49 p.m.)

9

10   ------------------------------------------------------------

11

12                   CERTIFICATE OF COURT REPORTER

13

14        I, David W. Moxley, hereby certify that the

15   foregoing is a true and correct transcript from

16   reported proceedings in the above-entitled matter.

17

18

19

20   /S/ David W. Moxley                 January 27, 2021
     DAVID W. MOXLEY, RMR/CRR/CMRS
21   Official Court Reporter
     Southern District of Indiana
22   Indianapolis Division

23

24

25